Montgomery Blair Sibley,

                    Plaintiff,                    Case No.: 6:19-cv-06517-FPG

vs.                                               **SIBLEY'S RESPONSE TO DEFENDANT
                                                  CHAUNCEY J. WATCHES'S MOTION TO
Chauncey J. Watches, *et al.*,                    DISMISS THE FIRST AMENDED COMPLAINT**

                    Defendants.

_____/

    Plaintiff , Montgomery Blair Sibley ("Sibley"), responds to the Motion to Dismiss the

First Amended Complaint of Defendant Chauncey J. Watches ("Defendant Licencing Officer")

and states as follows:

### SUMMARY OF RESPONSE

    The Defendant Licencing Officer repeatedly raises structural obstacles in an attempt to

prevent Sibley asserting his protecting fundamental rights to self-protection.  Staring with an *Ad

Hominem* screed, the Defendant Licencing Officer's argument of Standing, Absention, and

Failure to State Claims all <u>fail</u> for the reasons stated *infra*.  Moreover, Sibley's well-plead and

"first impression" issues survive the Defendant Licencing Officer's arguments for

Constitutionality.

    In essence, the Defendant Licencing Officer arguest in *toto* that the legal indeterminacy

of New York's handgun licencing scheme does <u>not</u> violate Sibley's fundamental, Second

Amendment and due process rights.  Such an argument supporting legal indeterminacy violates

"the principle that litigants in similar situations should be treated the same, a fundamental

component of *stare decisis* and the rule of law generally." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544 (1991).

LEGAL ARGUMENT

**I.  THIS COURT MUST AFFIRMATIVE REJECT MR. LEVINE'S *AD HOMINEM* ATTACK ON SIBLEY AND CENSURE MR. LEVINE**

Perhaps sensing the weakness of his legal arguments, Mr. Levine, counsel for Defendant Licencing Officer, commences his Memorandum with *ad hominem* attacks against Sibley to the end of inflaming this Court's passion rather than its reason. As this Court well knows, "*ad hominem*" is from the Greek meaning "to the man" and raises a fallacious argument directed at one's prejudices rather than one's intellect.

How low will the Court allow the bar of professionalism to go before it responds? Mr. Levine commences his Memorandum with an irrelevant, gratuitous, *ad hominem* attack on Sibley which has no bearing on the arguments raised in his legal memorandum. As did the Court in *Ford Motor Co. v. EEOC*, 458 U.S. 219, f/n #1 (1982), this Court also must decide this matter "correctly and fairly" and <u>expressly</u> "decline the opportunity to address further this *ad hominem* argument" in order to confirm to Sibley that such an argument has not <u>wormed</u> its way into this Court's reasoning.  Otherwise, Sibley will wonder if this Court's ultimate decision was <u>not</u> based upon the law but rather this Court being swayed against Sibley by Mr. Levine's *ad hominem* attack .  At its core, Mr. Levine's presently unrebutted slur on Sibley is a *non sequitur* to his legal argument, addressed *infra*, related to (i) Standing, (ii)  . . .

Accordingly, to affirmatively demonstrate its rejection of Mr. Levine's *ad hominem* argument, this Court must censured Mr. Levine.  Alternatively, if this Court does <u>not</u> expressly

2

reject Mr. Levine's *ad hominem* declaration by way of censure, Sibley requests leave to file a detailed response to that declaration allowing Sibley to put the cases cited by Mr. Levine in proper context.

## II.    SIBLEY HAS STANDING

As Justice Douglas wrote in *Branzburg v. Hayes*, 408 U.S. 665, 725 (1972): "As the years pass, the power of government becomes more and more pervasive. It is a power to suffocate both people and causes. Those in power, whatever their politics, want only to perpetuate it." Hence, the genesis of the government's motion to dismiss for lack of "standing" at its core is an attack upon Sibley's efforts to stop the government suffocating Sibley's Second Amendment rights. This Court, if true to its Article III genesis, must <u>not</u> be a party to this insidious *coup d'Citoyens* through the judicially-fabricated-out-of-whole-cloth doctrine of standing which the Ninth and Tenth Amendments prohibit.

### A.    STANDING IS A CANARD

If only to preserve for subsequent appellate review, Sibley first challenges the darling-of-the-government argument that citizens may <u>not</u> challenge the wrongdoing of government actors as they no longer have "standing". Sibley asserts that the judicial fiat of "irreducible constitutional minimum" found first in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) has <u>no</u> Constitutional basis and – if this Court is to be true to its oath and <u>not</u> its judicial overlords – this Court must state such. Simply stated, a system of law that fails to satisfy certain moral *minima* is not to be considered a legal system. An unjust positive law – such as the doctrine of "standing" – can be refused the character of law if its injustice is so great that it no

longer deserves the title of law. Here, that injustice is the notion that Sibley has <u>no</u> standing to challenge the State of New York declaring criminal that which the Second and Fourteenth Amendments characterize as a "fundamental right". A review of the growth of the grotesque doctrine of "standing" reveals its uncertain historical roots and the real basis for its cancer-like spreading through the judicial system.[1] The explosion of judicial interest in "standing" as a distinct body of constitutional law is an extraordinarily recent phenomenon. Its rise can be seen as part of the continued expansion of state power unchecked by the judiciary which has <u>ignored</u> the Second, Ninth, Tenth and Fourteenth Amendments expressly raised by Sibley here as the Constitutional authority to bring this suit.

Unlike "case or controversy" which the Framers understood and expressly employed in Article III, "standing" is <u>not</u> mentioned in our Constitution, <u>nor</u> was it in the records of the several conventions. Thus it can be fairly said that "standing" was <u>neither</u> a legal term-of-art <u>nor</u> a familiar doctrine at the time the Constitution was adopted.[2] Nowhere in English common law practice can be found the requirement that a plaintiff must show an actual or threatened direct personal injury in order to have his or her "case or controversy" heard in a court of law. Hence, Sibley calls into question the validity of *Lujan v. Defenders of Wildlife* and its noxious progeny given its invalid historical roots and the <u>failure</u> of the courts to reconcile such a doctrine with the overriding authority of the Ninth and Tenth Amendments. Those Amendments, since they are

---

[1]    The first reference to "standing" as an Article III-limitation can be found in *Stark v. Wickard*, 321 US 288 (1944). The next reference does not appear until eight years later in *Adler v. Board of Education*, 342 U.S. 485 (1952). Not until the *Data Processing v. Camp*, 397 U.S. 150 (1970) did a large number of cases emerge on the issue of "standing".

[2]    Raoul Berger, *Standing to Sue in Public Actions: Is It a Constitutional Requirement?*, 78 Yale L.J. 816, 818 (1968).

largely confirmatory of rights created elsewhere in the Constitution, were intended to declare the standing of individual citizens to contest the validity of governmental activities.

## B.  THE ALLEGATIONS OF THE COMPLAINT CONFIRM SIBLEY HAS STANDING

The Defendant Licencing Officer first asserts that Sibley lacks "standing" stating that: "A plaintiff lacks standing to challenge New York State's licensing laws if he fails to apply for a firearms license in New York. *United States v. Decastro*, 682 F.3d 160,164 (2d Cir. 2012). (Def. Memo, p. 8). The Defendant Licencing Officer is wrong.

### 1.    THE FIRST & SECOND CLAIMS OF THE COMPLAINT

Notably, in the First Claim of the Complaint, Sibley did not seek review of New York's approval for home possession of a handgun (and cane sword) – indeed Sibley did not apply for such license as the Defendant Licencing Officer points out. (Def. Memo, p. 12).  Rather, Sibley sought relief from the criminalization of his home-possession of his handgun stating in First Claim for Declaratory Relief a Declaration from this Court:

- That Sibley has, under the Second Amendment, a Federal Constitutional right – not a privilege – to possess handguns held and used for self-defense in his home and a fundamental right to possess his cane sword both in his home and in public;

- That  Federal law preempts New York law regarding possessing a handgun in the home; and

- That N.Y. Penal Law §265.01(1) violates Sibley's Second Amendment right to possess handguns held and used for self-defense in his home and Sibley's Fundamental right to possess a cane sword both in his home and in public.

(Complaint, p. 7).  Hence, Sibley indisputably has "standing" as:

- Sibley has suffered an injury-in fact, which is a "concrete and particularized" harm to a "legally protected interest", to wit the loss of his right to possess his

handguns in his home as conferred by action of *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010)[3];

- Causation in the form of a "fairly traceable" connection between the asserted injury-in fact and the alleged actions of the defendant, here the County of Steuben which threatened criminal prosecution unless Sibley surrendered his handguns;

- Redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief, to wit, that which was given in *Heller*[4] by ordering the Defendant Licencing Officer to issue Sibley a home handgun license.

As such, assuming *arguendo* that "standing" is a legitimate part of the jurisprudence of the United States, Sibley has "standing" to contest the unconstitutionality of N.Y. Penal Law §265.01(1), which criminalizes possession of a handgun by Sibley in Sibley's home and seek injunctive relief to protect that Fundamental and Second Amendment right.

### 2. THE THIRD AND FOURTH CLAIMS OF THE COMPLAINT

In the Third Claim of the Complaint, Sibley sought a declaratory decree that N.Y. Penal Law §400.00(1)(b) & (n) on their face and as applied discriminated against Sibley in the denial of his Application thereby violating the First and Fourteenth Amendments to the Federal Constitution. In the Fourth Claim of the Complaint, Sibley sought a Declaratory Decree that N.Y. Penal Law §400.00 et seq. and/or N.Y. Admin. P. Act, §100 et seq. on their face and/or as applied violated Sibley's due process rights protected by the Fifth and Fourteenth Amendments

---

[3] "We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." *Id.*

[4] In *Heller*, the Supreme Court was unequivocable: "In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense. Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home." *Heller* at 683.

to the Federal Constitution, the New York State Constitution, Article I, §6 and the tenets of New

York Administrative Law.

Sibley <u>indisputably</u> has "standing" to raise his Third and Fourth Claims:

- Sibley has suffered an injury-in fact, which is a "concrete and particularized" harm to a "legally protected interest", to wit the due process adjudication of his right to concealed carry license §400.00(2)(f)[5] for his Nuisance Wildlife Control business and personal safety arising from his legal activities, prior clients and the data set he singular possesses which implicates public figures in illegal activities, some of which he is enjoined from revealing by federal court order;

- Causation in the form of a "fairly traceable" connection between the asserted injury-in fact and the alleged actions of the defendant, here the Defendant Licencing Officer adjudication of his Application in violation of the First Amendment;

- Redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief, to wit, that Defendant Licencing Officer is ordered to conduct his Licencing Hearing in accordance with Due Process guarantees.

Again, assuming *arguendo* that "standing" is a legitimate part of the jurisprudence of the United

States, Sibley has "standing" to seek a Declaratory Decree as to: (i) whether N.Y. Penal Law

§400.00(1)(b) & (n) violate Sibley's Constitutional rights and (ii) N.Y. Penal Law §400.00 *et seq.*

and/or N.Y. Admin. P. Act, §100 et seq. on their face and/or as applied violated Sibley's due

process rights.

### 3.    THE FIFTH CLAIM OF THE COMPLAINT

In the Fifth Claim of the Complaint, Sibley sought a declaratory decree that N.Y. CPLR

Article 78 review of Sibley's Application on its face and/or as applied would violate Sibley's due

---

[5]     New York presently has <u>no</u> provision for a handgun license for Nuisance Wildlife Control Officers who are required in exercising their New York State mandated duties to "take", i.e. "kill", certain species under certain conditions. *See*: N.Y. Environmental Conservation Law, §11-0103(13).

process rights protected by the Fourteenth Amendment to the Federal Constitution, N.Y. State

Constitution, Article I, §6 and the tenets of N.Y. Administrative Law.

Sibley <u>indisputably</u> has "standing" to raise his Fifth Claim:

- Sibley has suffered an injury-in-fact, which is a "concrete and particularized" harm to a "legally protected interest", to wit the judicial-review of the procedural and substantive due process provided by the Article 78 review of the administrative adjudication of his right to concealed carry license §400.00(2)(f) for his Nuisance Wildlife Control business and personal safety arising from his legal activities, prior clients and the singular data set he possesses as a result which implicates public figures in illegal activities;

- Causation in the form of a "fairly traceable" connection between the asserted injury-in fact and Article 78 review of the administrative adjudication of the Defendant Licencing Officer, here the lack of (i) objective standards or (ii) availability of other determinations, neither of which are available in an Article 78 proceeding;

- Redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief, to wit, by a declaratory decree that any Article 78 review of Sibley's Application on its face and/or as applied would violate Sibley's due process rights protected by the Fourteenth Amendment to the Federal Constitution, N.Y. State Constitution, Article I, §6 and the tenets of N.Y. Administrative Law.

Again, assuming *arguendo* that "standing" is a legitimate part of the jurisprudence of the United

States, Sibley has "standing" to contest whether N.Y. CPLR Article 78 review of Sibley's

Application on its face and/or as applied would violate Sibley's due process rights.

## III.   ABSTENTION WOULD BE ABDICATION

Defendant Licencing Officer next argues that this Court should abstain from addressing

Sibley's Claims until <u>after</u> the "State Court[6] process has been completed." (Def. Memo, p. 8).

---

[6]     Sibley takes issues with the Defendant Licencing Officer's claim that the Licencing Procedure is a "State Court process". Rather it is an Administrative process. Defendant Licensing Officer's authority to issue a Pistol/Revolver license arises first from N.Y. Penal Law §400.00 which states in pertinent part: "Licenses to carry, possess, repair and dispose of firearms.

"[I]f [Defendant Licencing Office] grants the plaintiff a pistol permit, that decision would dispose of all of plaintiff's claims presented in the federal case as moot." (Def. Memo, p. 10). This is simply <u>wrong</u>. As Sibley did <u>not</u> seek a "premises" handgun license in the Administrative Licencing Proceeding before Defendant Licencing Officer, that issue will <u>not</u> be addressed in that proceeding and hence that determination would <u>not</u> render "moot" this issues raised by Sibley before <u>this</u> Court. Tellingly, the Defendant Licencing Officer admits as much stating: "Although plaintiff has not moved before Judge Watches to address the constitutionality of the statutes which are the subject of the lawsuit before the Court, if raised, the state procedures would be adequate to protect the plaintiffs federal rights." (Def. First Memo, p. 10)

---

1.      Eligibility. No license shall be issued or renewed pursuant to this section  except  by the licensing officer . . ." The legal-term-of-art "licensing officer" is defined in N.Y. Penal Law §265.00(10) which states: "Licensing officer"  means  in  the  city of New York  the  police commissioner of that city; in the county of Nassau the  commissioner  of police  of that  county; in  the  county of Suffolk the sheriff of that county except in the towns of Babylon, Brookhaven, Huntington, Islip and Smithtown, the commissioner of police of that county; for  the  purposes of section  400.01  of this chapter the superintendent of state police; **and elsewhere in the state a judge or justice of  a  court  of  record   having his office in the county of issuance.** (Emphasis added).

 It is significant that N.Y. Penal Law §400.00 falls under Part Four of the N.Y. Penal law which is entitled "Administrative Provisions" separating it from the three preceding judicially-governed sections. Moreover, it would be an anathema to equal protection if the Downstate applicants had their applications decided by executive branch actors in an administrative hearing yet the Upstate New York applicants had their applications decided by judicial branch actors in a judicial hearing.  Last, the Courts of New York have consistently recognized that a "licencing officer" is acting in an executive, <u>not</u> judicial capacity. *Accord*: *County of Westchester v D'Ambrosio*, 663 N.Y.S.2d 886, (N.Y. App. Div. 2d Dep't 1997)("Appropriate procedure to seek review of determination of **County Court Judge, acting in his administrative capacity** as firearms licensing officer for Westchester County under CLS Penal §§ 400.00(11) and 265.00(10), was not by direct appeal but by commencement of CLS CPLR Art 78 proceeding in Appellate Division.")(Emphasis added).

Indeed, adopting Defendant Licencing Officer's six factors test stated in W*oodford v. Cmtv. Action Agency of Greene County. Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) unswervingly points to the requirement not to abstain:

1. Whether the controversy involves a res over which one of the courts has assumed jurisdiction: Here, the Administrative Licencing Proceeding has not "assumed jurisdiction" as the constitutionality of N.Y. Penal Law §265.01(1) for a premises licence was not intentionally been raised by Sibley in that proceeding.

2. Whether the federal forum is less inconvenient than the other for the parties: A non issue.

3. Whether staying or dismissing the federal action will avoid piecemeal litigation. Here, the two actions raises legally separate questions and hence no piecemeal litigation will arise.

4. The order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other. While the Administrative Licencing Proceeding was commenced first, they are both at the pleading stage as no factual matter has been presented for resolution.

5. Whether federal law provides the rule of decision. Here, there is no question that federal law found in the U.S. Constitution and Sibley's fundamental rights will provide the rule of decision.

6. Whether the state procedures are adequate to protect the plaintiffs federal rights. Here, it is plain that the state procedures as grossly inadequate to protect Sibley's federal rights. In particular, as detailed in the Complaint, the Defendant Licensing Officer denied Sibley's Application: (i) upon evidence the Defendant Licensing Officer *ex parte* received from the Steuben County Sheriff's Office which the Defendant Licensing Officer refused to disclose to Sibley, (ii) upon the Defendant Licensing Officer own *ex parte* communications with Sibley's employer, (iii) before receiving Sibley's factual and legal contentions in opposition, (iv) by an Order which failed to articulate the factual and legal basis for the decision and (v) in violation of the six (6) month statutory time constraint for determining Sibley's Application contained in N.Y. Penal Law §400.00(4-a). (Complaint, ¶30).

In sum, abstention here would undermine the very reason for this Article III Court's existence:

To determine "federal questions" as required by 28 U.S. Code §1331.

## IV. PLAINTIFF HAS AMENDED THE COMPLAINT TO ADDRESS THE FAILURE OF THE FIRST CLAIM TO STATE A CAUSE OF ACTION ARGUMENT

Defendant Licencing Officer next argues that: "Accordingly, any issue involving the possession of handguns and cane sword in plaintiffs home (or the cane sword in public) pursuant to Penal Law §265 had nothing to do with Judge Watches and should be dismissed for failure to state a cause of action.." (Def. Memo, p. 13). Sibley disagrees.

Sibley's First Claim seeking declaratory relief requests this Court to hold that: "Sibley has, a Fundamental right and, under the Second Amendment, a Federal Constitutional right – not a privilege – to possess handguns held and used for self-defense in his home and a fundamental right to possess his cane sword both in his home and in public." Any ruling by this Court in response to the First Claim will implicate Defendant Licencing Officer as he may thereby be compelled to issue Sibley an "at home" permit for Sibley's handguns.

Accordingly, Sibley has stated a cause of action against the Defendant Licencing Officer in his First Claim.

## V. PLAINTIFF HAS STATED A CAUSE OF ACTION IN THE THIRD CLAIM

In the Third Claim, Sibley raises the "first impression" issue of whether N.Y. Penal Law §400.00(1)(b) & (n) "on their face and as applied disfavors and punishes Sibley upon Sibley's ideas and viewpoints as expressed in his litigations and petitions and thus discriminates against Sibley in the denial of his Application thereby violating the First and Fourteenth Amendments to the Federal Constitution." (Complaint, ¶33).

Notably, in none of the cases cited by Defendant Licencing Officer, is this particular issues addressed. In *Toussaint v. City of New York*, 2018 U.S. Dist. LEXIS 152985, 2018 WL

4288637, (E.D.N.Y. Sept. 7, 2018), the issue was whether Plaintiff's "brushes with the law took place over ten years ago, none of them led to a criminal conviction" precluded his being issued a carry concealed permit as he worked as an employee of Brink's, a security organization that provides armed guards to private clients." Sibley raises <u>no</u> similar claim here nor does he have prior "brushes with the law".

Likewise, in *Kachalskv v. County of Westchester*, 701 F.3d, 81, 85-86 (2d Cir. 2012) cited by the Defendant Licencing Officer, the issue was whether limiting handgun possession in public to those who showed a special need for self-protection was not inconsistent with the Second Amendment. Here, the issue is at-home possession of handguns and cane-swords for self protection. In stark contrast, here Sibley is raising the issue of whether N.Y. Penal Law §400.00(1)(b) & (n) impermissible punishes Sibley upon Sibley's ideas and viewpoints.

Last, the Defendant Licencing Officer cites *Libertarian Party of Erie Ctv. v. Cuomo*, 300 F. Supp. 3d 424 (W.D.N.Y. 2018) which as this Court well knows, addressed issues related to: (i) the Fourteenth and Second Amendment rights to possess firearms in their homes; (ii) whether New York's firearms licensing laws on their face violate Plaintiffs' Fourteenth and Second Amendment rights to possess firearms in public; and (iii) whether the standards of "good moral character," "proper cause," and "good cause" outlined in N.Y. Penal Law §400.00 are vague and violate the Due Process Clause of the Fourteenth Amendment. Here again, <u>nowhere</u> in

*Libertarian Party of Erie Ctv. v. Cuomo*.[7] did this Court address whether N.Y. Penal Law § 400.00 infringed upon the First Amendment.

As such, Sibley "first impression" issue in this regard is due to be addressed by this Court. In particular, Sibley challenges two provisions both facially – and as applied to him – as being void-for-vagueness and encouraging arbitrary and discriminatory enforcement. N.Y. Penal Law §400.00(1) states that "No [firearm] license shall be issued or renewed except for an applicant": (i) "of good moral character" (§400.00(1)(b)) and (ii) "concerning whom no good cause exists for the denial of the license." (§400.00(1)(c)).

In *Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983), the Court stated:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. . . Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine – the requirement that a legislature establish minimal guidelines to govern law enforcement. . . **Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections**." (Citations omitted, emphasis added).

First, both terms are so vague and standardless that they "leaves the public uncertain as to the conduct it prohibits . . . ." and as such fail to meet the requirements of the Due Process Clause. *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-403 (1966). Patently, New York does <u>not</u>

---

[7] In *Libertarian Party v. Cuomo*, this Court held: "Specifically, they state that Plaintiffs have not alleged factual or legal arguments to support an as-applied vagueness claim. *Id*. The Court agrees." *Id*. at 439. Here, by <u>stark</u> contrast, Sibley has pled in the Complaint the "as-applied" vagueness violation.

define "good moral character", nor could it. Once the definition leaves the defined areas of "immoral behavior" codified in the criminal law, the term "good moral character" becomes impossible to define because the definition is "viewpoint-based". Indeed, the Supreme Court recognized this very problem in a Lanham Act case:

> So the key question becomes: Is the "immoral or scandalous" criterion in the Lanham Act viewpoint-neutral or viewpoint-based? **It is viewpoint-based**. The meanings of "immoral" and "scandalous" are not mysterious, but resort to some dictionaries still helps to lay bare the problem. When is expressive material "immoral"? According to a standard definition, when it is "inconsistent with rectitude, purity, or good morals"; "wicked"; or "vicious." *Webster's New International Dictionary* 1246 (2d ed. 1949). Or again, when it is "opposed to or violating morality"; or "morally evil." *Shorter Oxford English Dictionary* 961 (3d ed. 1947). So the Lanham Act permits registration of marks that champion society's sense of rectitude and morality, but not marks that denigrate those concepts. . . . There are a great many immoral and scandalous ideas in the world (even more than there are swearwords), and the Lanham Act covers them all. **It therefore violates the First Amendment**. (Emphasis added).

*Iancu v. Brunetti*, 139 S. Ct. 2294, 2019 U.S. LEXIS 4201(June 24, 2019, Decided). Likewise, requiring a citizen to exhibit "good moral character" in order to be eligible for a pistol permit allows the Defendant Licencing Officer to engage in "viewpoint-based" definition of "good moral character" which <u>violates</u> the First Amendment. What the good Defendant Licencing Officer may consider "immoral" about Sibley may well be considered "moral" to Sibley and others of his ilk.

Likewise, the phrase "concerning whom no good cause exists for the denial of the license" is similarly vague on its face and as applied as "no good cause" is equally as impossible to define without reverting to viewpoint-based decision making <u>prohibited</u> by the First Amendment.

Finally, Defendant Licencing Officer raises repeatedly the January 10, 2020, hearing on Sibley's pistol permit application as potentially disposing of some or all of Sibley's claims. In response, Sibley has distinguished his claims from those pending in his Pistol Permit proceeding. Moreover, and of seminal import, this suit raises procedural and substantive questions which, is Sibley were to be granted his requested pistol permit, would leave unanswered significant legal questions that are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).

Accordingly, Sibley has stated a cause of action on the Third Claim of the Complaint.

## VI. PLAINTIFF HAS STATED A CAUSE OF ACTION IN THE FOURTH CLAIM

In the Fourth Claim, Sibley raised the issue of whether N.Y. Penal Law §400.00 *et seq.* and/or N.Y. Admin. P. Act, §100 *et seq.* on their face and/or as applied violate Sibley's due process rights protected by the Fifth and Fourteenth Amendments to the Federal Constitution, the New York State Constitution, Article I, §6 and the tenets of New York Administrative Law. (Complaint, ¶38). In response, Defendant Licencing Officer, argues that: "Plaintiff is not owed due process" citing the *obiter dicta* found in *Corbett v. City of New York*, 2019 U.S. Dist. LEXIS 100657 (S.D.N.Y. June 17, 2019) for the proposition that: "Due to the fact that Plaintiff does not have a protected property interest in a "business carry" license – and therefore no process is due – the remainder of Plaintiff's briefing on the issue is moot." (Def. Memo, p. 15).

Citation to *Corbett* is inapposite for two reasons. First, Sibley is seeking a license to carry both for his business and for personal protection. Notably, the latter is <u>not</u> addressed in *Corbett.* Importantly, in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the "fundamental right" to self-defense was left undefined <u>outside</u> the home. Hence, Sibley's right to public

self-defense cannot be spirited away by the claim that he has no right to that "fundamental right" just because the State of New York has created a licencing scheme which <u>denies</u> basic due process rights in its implementation.

Second, *Corbett* cites for its holding *Ace Partners, LLC v. Town of E. Hartford*, 883 F.3d 190, 195 (2d Cir.), in which the court stated:

> To succeed on a procedural due process claim that one has been denied adequate notice of an adverse action or a meaningful opportunity to be heard, a plaintiff must first establish that the challenged action "deprived him of a protected property interest." To show such a protected interest, a plaintiff must demonstrate more than an "abstract need or desire" for the matter at issue, or a "unilateral expectation" as to its receipt. . . . Rather, a plaintiff must establish "a legitimate claim of entitlement," one "created and . . . defined by existing rules or understandings that stem from an independent source," including, as pertinent here, state law. (Citations omitted).

Certainly, a pistol permit is analogous to a driver's licence and this cannot be refused save after due process has been satisfied.Notably, in *Bell v. Burson*, 402 U.S. 535 (1971), the United States Supreme Court held that a person could not be deprived of his driver's license without procedural due process. It is "well established that many state-created privileges, such as a license to drive, are <u>not</u> to be taken away without that procedural due process required by the Fourteenth Amendment." *Gudema v. Nassau Cty.*, 163 F.3d 717, 724 (2nd Cir. 1998).

Here, *Ace Partners, LLC*'s "independent source" is Sibley's fundamental and Second Amendment right to possess a handgun <u>outside</u> the home for self–defense.  Under its original meaning, the Second Amendment protects a right to carry arms for self-defense in public. *See*: *Palmer v. District of Columbia,* No. 14-7180, 2015 U.S. App. LEXIS 6414 (D.C. Cir. Apr. 2, 2015)("This Court agrees with the Ninth Circuit's statement in *Peruta* that '[t]hese passages

alone, though short of dispositive, strongly suggest that the Second Amendment secures a right to carry a firearm in some fashion outside the home.'") The Court of Appeals panels that have directly addressed the issue have also reached the same conclusion. *See Moore v. Madigan,* 702 F.3d 933, 936 (7th Cir. 2012)("A right to bear arms thus implies a right to carry a loaded gun outside the home."); quoting *Peruta v. Cnty. of San Diego,* 742 F.3d 1144, 1166 (9th Cir. 2014)("[T]he carrying of an operable handgun outside the home for the lawful purpose of self-defense, though subject to traditional restrictions, constitutes bear[ing] Arms within the meaning of the Second Amendment."); *Wrenn v. District of Columbia,* 864 F.3d 650, 667 (D.C. Cir. 2017)("At the Second Amendment's core lies the right of responsible citizens to carry firearms for personal self-defense beyond the home.") *Accord: Bonidy v. U.S. Postal Serv.,* 790 F.3d 1121, 1125 (10th Cir. 2015): *Woollard v. Gallagher,* 712 F.3d 865, 876 (4th Cir. 2014); *Drake v. Filko,* 724 F.3d 426, 431 (3d Cir. 2013); *Kachalsky v. County of Westchester,* 701 F.3d 81, 89 (2d Cir. 2012).

New York's procedure for granting a licence to carry a pistol <u>outside</u> the home reduces that "fundamental" right to a privilege – one New York grants only to the rare citizen who can demonstrate to a bureaucrat's unreviewable satisfaction that he or she is in dire-enough straits to warrant carrying a handgun outside of the home. This procedure <u>violates</u> Sibley's substantive due process rights. The right to self-defense necessarily extends beyond the four walls of Sibley's home. This conclusion is compelled by the text and structure of the Second Amendment, by the history of the right it protects, and by any fair reading of *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008)("[T]he enshrinement of constitutional rights necessarily **takes certain policy choices off the table**.")(Emphasis added).

Consistent with that understanding, the vast majority of states protect the right of their citizens to carry handguns outside the home for self-defense[8]. But New York persists in <u>denying</u> that right to typical, law-abiding citizens, instead reserving it to only a small subset of individuals who can demonstrate that they have a particularized need to exercise the right that the Second Amendment guarantees to all people. Stated plainly, a citizen's ability to exercise that right should <u>not</u> turn on whether she can persuade a bureaucrat that the right is really worth having as New York now requires.

Although increasing safety and reducing crime are compelling government interests, the Supreme Court has made clear that "the very enumeration of the [Second Amendment] right takes out of the hands of government ... the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634. Yet this is precisely what New York's "good cause" regime seeks to do. That regime leaves it up to a "licensing officer" to determine on a case-by-case basis whether a citizen's reasons for carrying a handgun are good enough (in the licensing officer's view) for a citizen to do so, and they deny the vast majority of citizens the right to bear arms outside the home. Such regimes "seem almost uniquely designed to defy" any plausible reading of the Second Amendment, which at a minimum guarantees the right of "the typical citizen to carry a gun." *Wrenn*, 864 F.3d at 668. And it is telling that most States – who share New York's interests in public safety – have <u>not</u> found the elimination of the Second Amendment right to bear arms necessary to ensure public safety.

---

[8]     As one scholar put it, "the bottom line is pretty clear: Since permit holders commit virtually no crimes, right-to-carry laws can't increase violent crime rates." John R. Lott, Jr., *Concealed Carry Permit Holders Across the United States: 2017*, Crime Prevention Research Ctr., Jul. 2017, at 23.

Hence, Sibley indisputably has a right to self defense and as such possesses a due process interest which this Court is duty-bound to recognize and protect.

Last, in this regard, Defendant Licencing Officer's argument that Sibley can have his issues addressed in an Article 78 proceeding begs the very question raised in Sibley's Fifth Claim, to wit, whether as presently configured, an Article 78 proceeding allows Sibley meaningful judicial review given: (i) the grotesque proceeding before Defendant Licencing Officer and (ii) the judicially-created delay of over eighteen (18) months during which Sibley has been deprived of his fundamental and Second Amendment rights. To condemn Sibley to an Article 78 proceeding which will take another year of his life waiting for resolution which at best will only send the proceeding back to the Defendant Licencing Officer for further delay in adjudication confirms that while Sibley may have a fundamental and Second Amendment right, he has no meaningful "remedy" for the State of New York's trespassing on those "rights". This Court cannot stand idly by and allow such a perversion of Sibley's rights to continue.

## VII.   PLAINTIFF HAS STATED A CAUSE OF ACTION IN THE FIFTH CLAIM

In the Fifth Claim, Sibley raised the issue that insomuch as the New York Secure Ammunition and Firearms Enforcement Act of 2013 allows the holders of handgun permits: "to request that their application information be made exempt from disclosure under state Freedom of Information Law", there is no way to determine whether handgun licencing in New York comports with Equal Protection guarantees. In response, Defendant Licensing Officer argues

that "Since plaintiff has not commenced a CPLR Article 78 action to review the final decision by Judge Watches and therefore lacks standing to challenge it." (Def. Memo, p. 17, footnote omitted). For the reasons stated *supra*, Sibley has standing to challenge the Article 78 proceeding.

CONCLUSION

WHEREFORE, Sibley respectfully requests that this Court deny Defendant Licensing Officer's Motion to Dismiss for the reasons aforesaid.

**MONTGOMERY BLAIR SIBLEY**
Plaintiff
189 Chemung Street
Corning, N.Y. 14830
(607) 301-0967
montybsibley@gmail.com

By: _____
                   MONTGOMERY BLAIR SIBLEY

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing will be sent via the Court's CM/ECF filing system when docketed by the Clerk to Gary Levine, Assistant Attorney General, NYS Office of the Attorney General, 144 Exchange Boulevard, Suite 200, Rochester, NY 14614.

By: _____
                   MONTGOMERY BLAIR SIBLEY

# Montgomery Blair Sibley

189 Chemung Street
Corning, N.Y. 14830
607-301-0967
montybsibley@gmail.com

January 14, 2020

Office of the Clerk
2120 United States Courthouse
100 State Street
Rochester, New York 14614-1387

       Re:    *Montgomery Blair Sibley vs. Chauncey J. Watches*
              Case No.: 19-CV-6517

Greetings:

    Please find enclosed for filing: (i) Sibley's Response to Defendant Chauncey J. Watches's Motion to Dismiss the First Amended Complaint and (ii) Notice of Filing Proof of Service Of Summons and First Amended Complaint on Defendants His Excellency Andrew Mark Cuomo, James L. Allard, Brooks Baker and Keith M. Corlett.

    Let me know if you have any questions or concerns.

Yours,