IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

Montgomery Blair Sibley,

                Plaintiff,

vs.

Chauncey J. Watches, *et al.*,

                Defendants.

_____/

Case No.: 6:19-cv-06517-FPG

SIBLEY'S SUPPLEMENTAL MEMORANDUM

Plaintiff, Montgomery Blair Sibley ("Sibley"), files this, his Supplemental Memorandum based upon changed factual circumstances to the: (i) Memorandum in Opposition to Sibley's Motion for Partial Summary Judgment made by Defendants Chauncey J. Watches, His Excellency Andrew Mark Cuomo and Keith M. Corlett ("New York State") and (ii) Cross-Motion to Dismiss of Defendants Brooks Baker and James L. Allard ("Steuben County") and states as follows:

SUMMARY OF ARGUMENT

Both New York State and Steuben County argue that Sibley's failure to apply for a license to possess a pistol in his home pursuant to N.Y. Penal Law §400.00(2)(a)[1] is a bar to jurisdiction in this Court and/or to granting Sibley's relief requested in the First Amended Complaint. Those arguments are now <u>moot</u> as Sibley's Application for a pistol license was <u>denied</u> on **March 9, 2020**.

---

[1] Section 400.00(2)(a) is the only section that specifically authorizes such possession stating: "A license for a pistol or revolver, other than an assault weapon or a disguised gun, shall be issued to: (a) have and possess in his dwelling by a householder."

1

**LEGAL ARGUMENT**

I.   SIBLEY'S FAILURE TO APPLY FOR A "HOUSEHOLDER" LICENSE IS <u>IMMATERIAL</u>

On **March 9, 2020,** Defendant Watches issued his Decision <u>denying</u> to Sibley a pistol license. A copy of the **March 9, 2020,** Decision is attached hereto as Exhibit "A". In that Decision, Defendant Watches rested his <u>sole</u> reason for denying Sibley's Application that he "has failed to demonstrate his good moral character." Notably, Defendant Watches did <u>not</u> find that Sibley has <u>failed</u> to demonstrate "good cause" for such a license. Leaving aside for another Court at another time to review the factual record to determine if there is basis for such a conclusion – which Sibley will hotly contest as the summary conclusions of the cited courts are baseless when forensically examined – this Decision makes clear that had Sibley applied for a §400.00(2)(a) " householder" license, the result would have been the same: Sibley's Application would have been <u>denied</u> for the same reason. Patently, in New York Penal Law §400.00 there is <u>no</u> gradient in the necessary "moral character" between " householder" and "carry" pistol licenses.

Additionally, for Sibley to re-apply for a "householder" licence and to be put through another **six hundred (600)** day <u>delay</u> in the determination of his Fundamental and Second Amendment right to possess a pistol in his home for self-defense would be <u>futile</u>. The same <u>denial</u> of a license would occur if only for the law of the case doctrine and *res judicata*.

Finally where, as here, Sibley has <u>indisputably</u> demonstrated structural and systemic failures in New York's pistol licencing procedures and seeks by this suit not only relief for himself but system-wide reforms, to compel Sibley back to the same system as the Defendants have argued would be pointless in addressing Sibley's Fundamental and Second Amendment

2

rights. *Accord*: *A.F. v. Española Pub. Schs*, 2014 U.S. Dist. LEXIS 186470 (U.S. Dist. Ct., New Mexico 2014)("The first two prongs of the futility inquiry ask whether exhaustion would be futile or fail to provide adequate relief.)

Accordingly, the arguments of Defendants regarding Sibley's failure to check the §400.00(2)(a) box on his Application are due to be <u>discarded</u> by this Court.

### II. THE COURT MUST <u>NOW</u> FISH OR CUT BAIT:

#### CAN NEW YORK *DE FACTO* EVISCERATE SIBLEY'S AT-HOME FUNDAMENTAL & SECOND AMENDMENT RIGHT TO SELF-DEFENSE?

Given the allegations contained in Sibley's contemporaneously filed Motion to Expedite, this Court must <u>now</u> promptly make a ruling on Sibley's First and Second Claims to discharge its highest purpose: to protect Citizens from the impairment of their fundamental rights. *Accord*: *Wesberry v. Sanders*, 376 U.S. 1, 6-7 (1964)("[S]ince our decision in *Marbury v. Madison*", it has been recognized that federal courts have the "power . . . to protect the constitutional rights of individuals from legislative destruction," including the destruction of constitutional rights.); *Burns v. Wilson*, 346 U.S. 137 (1953)(Duty of a federal court to protect individual constitutional rights.) For two reasons, this Court must invalidate New York's pistol licencing scheme and issue a mandatory injunction directing Defendant Watches to issue to Sibley his requested Pistol License for possession in his home for self-defense.

#### A. "GOOD MORAL CHARACTER" IS <u>NO</u> LONGER SUSTAINABLE AGAINST SIBLEY'S VAGUENESS AND OVERBROAD CHALLENGES

In *District of Columbia v. Heller*, 554 U.S. 570, 626-627 (2008), the Court recognized only <u>two</u> exceptions to the Fundamental and Second Amendment right to possession of a pistol in the home for self-defense: "Although we do not undertake an exhaustive historical analysis

3

today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . .". Here, without doubt, Sibley is <u>neither</u> a felon <u>nor</u> mental ill; both of which represent objective, concrete legislative definitions.

In contrast, the term "good moral character" is so laden with subjective context as to render it too vague and overbroad to be sustained, particularly in the context of *Heller*'s recognition that: "The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute." *Id.* at 628. To allow such view-point based decision making <u>robs</u> Sibley of equal protection and violates his First Amendment right to petition by punishing his right to self-defense for doing so.

In the seminal case of *Brown vs. Board of Education*, 347 US 483, 495 (1954), the Court recognized that: "Whatever may have been the extent of psychological knowledge at the time of *Plessy v. Ferguson*, this finding [that separate but equal is unconstitutional] is amply supported by modern authority. Any language in *Plessy v. Ferguson* contrary to this finding is rejected." (Footnote omitted). In the same vein, Sibley now claims that whatever may have been the extent of psychological knowledge in 1911 when New York's Sullivan law was enacted, such language can <u>no</u> longer be supported by modern authority. As such, New York's "good moral character" language must be rejected as it <u>cannot</u> be consistently applied.[2]

---

[2] Layered over this view-point standard of "good moral character" is the law of New York that all the files related to pistol licence applications are "sealed" from public view by action of N.Y. Penal Law §400.00(5) and N.Y. Public Officers Law §87(2)(b). Hence, the "secret" nature of New York's pistol licencing scheme violates equal protection guarantees by permitting disparate treatment of similarly-situated pistol licence applicants.

In particular, "good morals" are no longer a monolithic standard upon which all agree. Moral Foundations Theory recognizes five moral domains, each with its own set of associated virtues and vices. These are:

- Purity-based morality, which is rooted in ideas of sanctity and piety. When standards of purity are violated, the reaction is disgust, and violators are seen as unclean and tarnished;

- Authority-based morality, which prizes duty, deference, and social order. It abhors those who show disrespect and disobedience;

- Fairness-based morality, which stands in opposition to authority-based morality. It judges right and wrong using values of equality, impartiality and tolerance, and disdains bias and prejudice;

- Ingroup-based morality, which esteems loyalty to family, community or nation, and judges those who threaten or undermine them as immoral; and

- Harm-based morality, which values care, compassion and safety, and views wrongness in terms of suffering, mistreatment and cruelty.[3]

As such, "People of different ages, genders, personalities, and political beliefs employ these moralities to different degrees. People on the political right, for instance, are more likely to endorse the moralities of purity, authority and ingroup loyalty. Those on the left rely more on the morality of harm and fairness. Women tend to endorse harm-based morality more than men." *Id.*

Thus, for example, the dominant forces in the anti-gun movement see self-defense as a moral wrong indistinguishable from criminal violence and they want to impose that belief on the American people by enacting laws to effectively preclude armed self-defense.[4] Hence, when

---

[3]    Retrieved from: https://theconversation.com/changing-morals-were-more-compassionate-than-100-years-ago-but-more-judgmental-too-112504

[4]    For example, pending in Congress are HR 5717 as S. 3254, which would: (i) Ban gun ownership without a government license, (ii) Ban nearly all semi-automatic rifles and any large magazines, (iii) Ban home builds, (iv) Create a national gun registry, (v) Set up a nationwide gun

Sibley made his Application he was thrown to the lottery of being assigned to a single arbiter whose personal morals could greatly affect the ultimate, virtually unreviewable, decision as to whether Sibley could have the right to self-defense in his home. This, of course, offends the requirement of American jurisprudence that: "[L]itigants in similar situations should be treated the same, a fundamental component of *stare decisis* and the rule of law generally." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544 (1991)(

Of course, it is nowhere more apparent than in the instant decision where Defendant Watches – obviously falling on the "purity/authority" end of the morality spectrum – finds moral repugnance in Sibley's aggressive litigation style. In contrast, a Licencing Officer more concerned with morality of "harm" and "fairness" would applaud Sibley's litigation efforts protecting the right to family and employment from which his sanctions arose.[5] Hence to allow

---

confiscation scheme, (vi) Tax guns at 30% and ammo at 50%, (vii) Ban Patriots under 21 from exercising their Second Amendment rights, (viii) Ration guns by making it illegal to purchase more than one firearm in a 30-day period, (ix) Force "Safe Storage" requirements on gun owners, and (x) Force Federal Firearms Licenseesto spend massive amounts of money to comply with new "security" requirements.

[5]  It goes without saying that as Western culture evolved people's ways of thinking about what was "moral" and what was "immoral" transformed. The persecution of homosexuals, miscegnation and discrimination based upon race, gender, religion, national origin, disability, sexual orientation, age were once all thougth of as morally-compelled actions. Yet today, each of those categories has been *de jure* protected and few 21st Century Citizens would find those who fit in those categories to have "bad morals."

Particularly relevant to Sibley's situation is the history of the vindictiveness of magistrates towards John Lilliburne who, following a trip to Holland in 1637, was arrested on suspicion of importing "factious and scandalous books" into England. When the authorities and the Star Chamber tried to interrogate him, he asserted the right of a freeborn Englishman not to accuse himself; what we now have enshrined in the Fifth Amendment. He suffered **whippings, the pillory, imprisonment and massive fines** none of which could neither force answers from his lips nor **silence his eloquence** against self-incrimination. As noted by Justice Black in his dissent in *Adamson v. California*, 332 U.S. 46, 72, f/n #14 (1947) "Actually it appears that the practice of the Court of Star Chamber of compelling an accused to testify under oath in Lilburn's

6

lack of "good moral character" as a basis for denying Sibley his home self-defense rights <u>cannot</u> stand as it permits view-point determination of whether Sibley can exercise his Fundamental and Second Amendment rights thus creating unequal treatment before the law.

    **B.   NEW YORK'S PISTOL LICENSING PROCEDURE <u>CANNOT</u> BE BEATIFIED, CONSECRATED AND MADE SACROSANCT BY THIS COURT**

A denial by this Court of the relief requested by Sibley in the First Amended Complaint would be to <u>explicitly</u> approve as Constitutionally acceptable New York's Pistol Licencing scheme which permits:

> - *Ex Parte* Communications by the Defendant Licencing Officer Watches;
>
> - <u>Secret</u> evidence which is <u>not</u> part of the Application record and which is <u>hidden</u> from Sibley;
>
> - Determination of Sibley's Application <u>before</u> receiving Sibley's factual and legal contentions in opposition;
>
> - A decision <u>denying</u> Sibley's Application <u>without</u> articulation of the reasons for the denial;
>
> - An evidentiary hearing <u>without</u> "notice" of the procedural and evidentiary rules for the hearing <u>nor</u> the nature of the evidence Sibley was expected to rebut;
>
> - <u>Refusing</u> to Sibley the ability to subpoena witnesses or documents to the evidentiary hearing; and
>
> - <u>Without</u> consequence – a delay of **six hundred (600)** days in the determination of Sibley's Application notwithstanding the **one hundred eighty (180)** day apparently aspirationally-only requirement of N.Y. Penal Law §400.00(4-a).

Hence this Court must fish or cut bait on New York's pistol licencing scheme and declare either:

- That singularly and/or collectively this scheme causes <u>no</u> offense to Sibley's Fundamental, Due Process, Equal Protection and Second Amendment rights or,

---

trial, 3 Howell's State Trials 1315, had helped bring to a head the popular opposition which brought about the demise of that engine of tyranny [self-incrimination]."

- That indeed, New York's scheme <u>impermissibly</u> trespasses upon those aforesaid rights and thus must be struck down for the reasons aforesaid.

New Yorkers have a right to an expeditious decision in this regard from this **appointed-for-life** Magistrate.

### CONCLUSION

WHEREFORE, Sibley respectfully requests that this Court grant Sibley's Motion for Partial Summary Judgment forthwith and restore to Sibley his "pre-existing right [which] . . . the very text of the Second Amendment implicitly recognizes . . . 'shall not be infringed.'" *District of Columbia v. Heller*, 554 U.S. 570, 658 (2008).

**MONTGOMERY BLAIR SIBLEY**
Plaintiff
189 Chemung Street
Corning, N.Y. 14830
(607) 301-0967
montybsibley@gmail.com

By: _____
**MONTGOMERY BLAIR SIBLEY**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing will be sent via the Court's CM/ECF filing system when docketed by the Clerk to: (i) Gary Levine, Assistant Attorney General, NYS Office of the Attorney General, 144 Exchange Boulevard, Suite 200, Rochester, NY 14614 and (ii) David H. Fitch, Underberg & Kessler LLP, 300 Bausch & Lomb Place, Rochester, NY 14604.

By: _____
**MONTGOMERY BLAIR SIBLEY**

STATE OF NEW YORK COUNTY COURT

COUNTY OF STEUBEN

---

In the Matter of the Pistol Permit of

                                                DECISION

                                                Index No. 2019-7PP

Montgomery Sibley,                         Pistol Permit #C35494

        Applicant.

---

Appearances:   Montgomery Sibley, Corning, New York

      Montgomery Sibley submitted a pistol permit application dated July 18, 2018 to the Steuben County Clerk's Office. The application was forwarded to the Steuben County Sheriff's Office for review and received by the Court May 8, 2019. The Court denied the application May 29, 2019. The denial was based on: 1) concern about Mr. Sibley's ability to responsibly possess and care for a pistol; and, 2) concern that Mr. Sibley's history demonstrates that he puts his own interests above the interests of society. The Court informed Mr. Sibley that he could request a hearing to allow him to testify and present any witnesses to address the Court's concerns. Upon receipt of Mr. Sibley's request, the Court scheduled the hearing for July 31, 2019. The Court received further correspondence from Mr. Sibley objecting to the July date and requesting that the hearing be scheduled for January 10, 2020 in the morning for 90 minutes. The Court accommodated Mr. Sibley's request and the hearing was held on January 10, 2020.

      At the hearing, the Court provided Mr. Sibley the opportunity to present witnesses, testify and introduce written evidence. Mr. Sibley chose to testify and submit a binder

                                                                                                        Exhibit "A"

consisting of 45 documents totaling 250 pages, marked and admitted as Petitioner's Exhibit 1. At the end of his testimony, Mr. Sibley indicated he had nothing further to add and the Court noted that a written decision would be issued.

Penal Law § 400 governs the issuance of pistol permits. The relevant requirement in this matter is that the applicant be "of good moral character". Penal Law § 400 1. (b). Good cause exists to deny a permit where the applicant lacks "the essential temperament or character which should be present in one entrusted with a dangerous [weapon]..., or that he or she does not possess the maturity, prudence, carefulness, good character, temperament, demeanor and judgment necessary to have a pistol permit." *Matter of Gurnett v. Bargnesi*, 147 AD3d 1319 [4th Dept. 2017] [internal quotation marks omitted].

Western civilization has long recognized that good moral character is the ideal state of a person's beliefs and values that provides the most benefit to a healthy and worthy society. Good moral character is more than having an unblemished criminal record. A person of good moral character behaves in an ethical manner and provides the Court, and ultimately society, reassurance that he can be trusted to make good decisions. Aldo Leopold said that "ethical behavior is doing the right thing when no one else is watching – even when doing the wrong thing is legal." Given the nature of the responsibility involved with the handling of a dangerous weapon, the Court must be assured of the applicant's ability to follow the law and abide by rules and regulations necessary to protect the safety of the individual and society. The Court must also have a basis to trust that the applicant's character is such that he will behave in an ethical manner where there are no written rules. The evidence presented does not provide the Court with assurance that Mr. Sibley can follow specific laws, rules and regulations let alone behave in an ethical and responsible manner necessary to be granted a pistol permit. In short, Mr. Sibley has failed to demonstrate his good moral character.

The Court first notes that Mr. Sibley has been suspended from the practice of law in the State of Florida, the District of Columbia and the State of New York as well as various federal courts. This gives the Court pause in considering Mr. Sibley's application. The Preamble to the New York Rules of Professional Conduct notes that a lawyer, as a member of the legal profession, is an officer of the legal system with special responsibility for the quality of justice. A lawyer has a duty to uphold the legal process and demonstrate respect for the legal system as well as further the public's understanding of and confidence in the rule of law and the justice system. Because Mr. Sibley has failed to maintain these duties as an officer of the legal system, the Court lacks confidence that Mr. Sibley will follow both the explicit and implicit rules inherent in the responsibility of a pistol permit holder.

Even assuming, arguendo, that Mr. Sibley has somehow rehabilitated himself from the circumstances that led to his disbarment, his testimony at the hearing belies any such notion. During his testimony, Mr. Sibley argued that although his actions as an attorney may have been vexatious and meritless they were not frivolous. This is a distinction without a difference[1] and factually incorrect. In 2006, the Florida Supreme Court held that Mr. Sibley's "frivolous and abusive filings must immediately come to an end" and found sanctions appropriate. *Sibley v. Fla. Judicial Qualifications Comm'n*, 973 So.2d 425, 427 [2006]. Even after his disbarment, Mr. Sibley has continued to pursue frivolous litigation in various courts. As recently as 2018, Mr. Sibley was sanctioned by the United States District Court for the District of Maryland for his "frivolous and vexatious litigation strategy." *CarMax Auto Superstores, Inc. v. Sibley*, 2018 U.S. Dist. LEXIS 169864, *9 [Md. October 2, 2018].

---

[1] *See also In Re Sibley*, 2010 D.C. App. LEXIS 89, **26 [2010] ["We reject the distinction that respondent seeks to draw between "meritless" claims and "frivolous" claims."]

Finally, this Court agrees with the Fourth Department's assessment of Mr. Sibley: "Respondent, by his conduct, has demonstrated his disregard and disrespect for the judiciary as well as his absence of remorse." 61 A.D.3d 85, 87 [4th Dept. 2009]. Given these circumstances, the Court is unable to find Mr. Sibley to be of good moral character.

Based on Mr. Sibley's application, the testimony presented to the Court, the evidence received and upon due deliberation, the Court confirms the denial of the pistol permit application of Montgomery Sibley. Upon his readmission to the bar of New York, Mr. Sibley may submit a new application for a pistol permit.

This constitutes the decision of the Court.

Dated: March 9, 2020

Bath, New York

ENTER:

HON. CHAUNCEY J. WATCHES
County Court Judge