UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MONTGOMERY BLAIR SIBLEY,

                                  Plaintiff,                    Case # 19-CV-6517-FPG
                                                               DECISION AND ORDER
v.

CHAUNCEY J. WATCHES, solely in his
official capacity as a New York Consolidated
Laws, Penal Law 265.00(10) Licensing Officer;
ANDREW MARK CUOMO, solely in his official
capacity as the Chief Administrative Officer of the State
of New York; JAMES L. ALLARD, solely in his official
capacity as Sheriff of Steuben County, New York;
BROOKS BAKER, solely in his official capacity as
District Attorney of Steuben County; and KEITH M.
CORLETT, solely in his official capacity as
Superintendent of the New York State Police;

                                  Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff Montgomery Blair Sibley brings this action under 42 U.S.C. § 1983

challenging the constitutionality of New York State's handgun licensing laws.  ECF No. 18.

Several motions are pending before the Court: (1) Defendant Chauncey J. Watches' Motion to

Dismiss the Amended Complaint (ECF No. 27); (2) Defendants Keith M. Corlett and Andrew

Mark Cuomo's Motion to Dismiss the Amended Complaint (ECF No. 32); (3) Sibley's Motion for

Partial Summary Judgment (ECF No. 38); (4) Defendants James L. Allard and Brooks Baker's

Cross Motion to Dismiss[1] the Amended Complaint (ECF No. 40); and (5) Sibley's Motion for Oral

Argument and Ratio Decidendi (ECF No. 47).

_____

[1]  This motion is styled as a Cross-Motion to Dismiss, but it cites Federal Rule of Civil Procedure 12(c), which governs
motions for judgment on the pleadings.

Because the substance of the motions substantially overlap, the Court considers all of the parties' arguments and motions together.  *See Schreiber v. Friedman*, No. 15-CV-6861 (CBA) (JO), 2017 U.S. Dist. LEXIS 221610, at *15 (E.D.N.Y. Mar. 31, 2017); *United States v. Jones*, No. 5:05-CR-322 (NAM), 2006 U.S. Dist. LEXIS 105628, at *7 (N.D.N.Y. Sep. 26, 2006) (both considering overlapping motions together).  For the reasons stated below, all Defendants' Motions to Dismiss are GRANTED and Sibley's Motion for Partial Summary Judgment is DENIED. Additionally, Sibley's Motion for Oral Argument is DENIED, but his Motion for Ratio Decidendi (written decision) is GRANTED.

## BACKGROUND

The following facts are taken from the Amended Complaint unless otherwise noted.  ECF No. 18.  In November 2017, Sibley moved from Washington, D.C. to Corning, New York, and brought two handguns and a cane sword with him.  On July 18, 2018, Sibley applied for a "carry concealed" handgun license in Steuben County, New York.  *Id.* at 17-19.  He disclosed the possession of his two handguns on the application.  The application triggered an investigation, including a series of background checks.  To the best of Sibley's knowledge, these all came back negative for any criminal or mental health history.

On December 28, 2018, as part of the investigation, Sibley was interviewed by a Steuben County Sheriff's Deputy.  Following the interview, the Deputy told Sibley that possessing his handguns in his home without a license was illegal under N.Y. Penal Law § 265.01(1) and advised Sibley to get rid of them pending the application process.  Accordingly, Sibley removed his handguns (and cane sword) from New York.  In March 2018, he legally purchased a shotgun.

On May 29, 2019, Defendant Chauncey J. Watches, a Steuben County judge and handgun licensing officer, sent Sibley a letter denying his handgun license application.  ECF No. 18 at 20.

2

The denial letter stated that "the decision [was] based upon concerns expressed in the Sheriff's investigation," specifically "concerns about your being sufficiently responsible to possess and care for a pistol" and concerns "that your history demonstrates that you place your own interest above the interests of society." *Id.* The letter advised Sibley that he had the right to request a hearing at which he could testify and present witnesses. *Id.*

On June 14, 2019, Sibley requested a hearing. *Id.* at 21. He also requested copies of all reports and communications that Watches received in the course of the investigation and copies of any legal or educational authorities he used to guide his decision to deny Sibley's application. *Id.* On June 25, 2019, Watches set a hearing for July 31, 2019 but denied Sibley's document requests as lacking a legal basis. *Id.* at 22.

Before the hearing could take place, on July 9, 2019, Sibley brought the instant action in this Court challenging Watches' initial denial of his handgun license application and the constitutionality of New York's handgun licensing laws. ECF No. 1. Sibley later filed an Amended Complaint, which is the operative pleading. ECF No. 18.

The hearing was continued until January 10, 2020. On December 17, 2019, Sibley moved for a preliminary injunction in this Court to stop the hearing. ECF No. 23. This Court denied his motion on January 6, 2020. ECF No. 29. The January 10, 2020 hearing went forward as scheduled.

While Sibley awaited Watches' final decision after the hearing, the parties engaged in extensive motion practice before this Court. On March 26, 2020, Sibley filed a Supplemental Memorandum based on "changed circumstances," informing the Court and the parties that Watches had denied Sibley's handgun license application on March 9, 2020. ECF No. 44-1. Sibley submitted Watches' decision, in which Watches found that Sibley had failed to demonstrate "good moral character" as required by N.Y. Penal Law § 400.00(1)(b). His decision explained:

3

Western civilization has long recognized that good moral character is the ideal state of a person's beliefs and values that provides the most benefit to a healthy and worthy society. Good moral character is more than having an unblemished criminal record. A person of good moral character behaves in an ethical manner and provides the Court, and ultimately society, reassurance that he can be trusted to make good decisions. Aldo Leopold said that "ethical behavior is doing the right thing when no one else is watching—even when doing the wrong thing is legal." Given the nature of the responsibility involved with the handling of a dangerous weapon, the Court must be assured of the applicant's ability to follow the law and abide by rules and regulations necessary to protect the safety of the individual and society. The Court must also have a basis to trust that the applicant's character is such that he will behave in an ethical manner where there are no written rules. The evidence presented does not provide the Court with assurance that Mr. Sibley can follow specific laws, rules and regulations let alone behave in an ethical and responsible manner necessary to be granted a pistol permit. In short, Mr. Sibley has failed to demonstrate his good moral character.

The Court first notes that Mr. Sibley has been suspended from the practice of law in the State of Florida, the District of Columbia and the State of New York as well as various federal courts. This gives the Court pause in considering Mr. Sibley's application. The Preamble to the New York Rules of Professional Conduct notes that a lawyer, as a member of the legal profession, is an officer of the legal system with special responsibility for the quality of justice. A lawyer has a duty to uphold the legal process and demonstrate respect for the legal system as well as further the public's understanding of and confidence in the rule of law and the justice system. Because Mr. Sibley has failed to maintain these duties as an officer of the legal system, the Court lacks confidence that Mr. Sibley will follow both the explicit and implicit rules inherent in the responsibility of a pistol permit holder.

Even assuming, arguendo, that Mr. Sibley has somehow rehabilitated himself from the circumstances that led to his disbarment, his testimony at the hearing belies any such notion. During his testimony, Mr. Sibley argued that although his actions as an attorney may have been vexatious and meritless they were not frivolous. This is a distinction without a difference and factually incorrect. In 2006, the Florida Supreme Court held that Mr. Sibley's "frivolous and abusive filings must immediately come to an end" and found sanctions appropriate. *Sibley v. Fla. Judicial Qualifications Comm'n*, 973 So.2d 425, 427 [2006]. Even after his disbarment, Mr. Sibley has continued to pursue frivolous litigation in various courts. As recently as 2018, Mr. Sibley was sanctioned by the United States District Court for the District of Maryland for his "frivolous and vexatious litigation strategy." *CarMax Auto Superstores. Inc. v. Sibley*, 2018 U.S. Dist. LEXIS 169864, *9 [Md. October 2, 2018].

Finally, this Court agrees with the Fourth Department's assessment of Mr. Sibley: "Respondent, by his conduct, has demonstrated his disregard and disrespect for the judiciary as well as his absence of remorse." 61 A.D.3d 85,87 [4th Dept.

4

2009]. Given these circumstances, the Court is unable to find Mr. Sibley to be of good moral character.

Based on Mr. Sibley's application, the testimony presented to the Court, the evidence received and upon due deliberation, the Court confirms the denial of the pistol permit application of Montgomery Sibley. Upon his readmission to the bar of New York, Mr. Sibley may submit a new application for a pistol permit.

ECF No. 44-1 at 11-13.

## LEGAL STANDARDS

### I.      Federal Rule of Civil Procedure 12(b)(6)

A complaint will survive a motion to dismiss when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct.  *Id.*  In considering the plausibility of a claim, the Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

### II.     Federal Rule of Civil Procedure 12(c)

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Cleveland v. Caplaw*, 448 F.3d 518, 521 (2d Cir. 2006).

### III.    Federal Rule of Civil Procedure 56

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes concerning material

facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## DISCUSSION

### I.    New York's Handgun Licensing Laws

"New York maintains a general prohibition on the possession of 'firearms'[2] absent a license." *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012). Thus, "[i]n New York State, it is illegal to possess a handgun without a valid license, even if the handgun remains in one's residence." *Kwong v. Bloomberg*, 723 F.3d 160, 162 (2d Cir. 2013).

N.Y. Penal Law §§ 265.01(1) and 265.20(a)(3) criminalize the unlicensed possession of handguns, while § 400.00 establishes "the exclusive statutory mechanism for the licensing of firearms in New York State." *Kachalsky*, 701 F.3d at 85 (citation and quotation marks omitted). To obtain a handgun license under § 400.00, applicants must be over 21 years old, have "good moral character," have no history of crime or mental illness, and demonstrate no "good cause" to deny the license. *Id*. at 86 (citing N.Y. Penal Law § 400.00(1)(a)-(d), (g)). The types of licenses available include "premises" licenses for at-home possession and "concealed carry" licenses for possession in public. *See* N.Y. Penal Law § 400.00(2)(a), (f). An applicant seeking a concealed

---

[2] "Firearms" include pistols and revolvers ("handguns"), shotguns and rifles less than certain lengths, and assault weapons. Rifles and shotguns over certain lengths ("longarms") do not require a license. N.Y. Penal Law § 265.01(3).

carry license must show "proper cause," *i.e.*, a special need for self-protection.  *Kachalsky*, 701 F.3d at 86 (citing N.Y. Penal Law § 400.00(2)(f)).

The application process is administered locally and triggers a police investigation into the applicant's mental health and criminal history, moral character, and, for concealed carry licenses, representations of proper cause.  *Id.* at 87.  The investigation includes a series of background checks whose results are reported to the local licensing officer.  *Id.*

"Licensing officers, often local judges, are vested with considerable discretion in deciding whether to grant a license application[.]"  *Id.* (citation and quotation marks omitted).  "An applicant may obtain judicial review of the denial of a license in whole or in part by filing a proceeding under Article 78 of New York's Civil Practice Law and Rules.  A licensing officer's decision will be upheld unless it is arbitrary and capricious."  *Id.*

## II.   Sibley's Claims

Sibley raises five claims challenging New York's handgun licensing laws and prohibition against cane swords.

First, although Sibley applied for a "carry concealed" license and not a "premises" license (and was thus never denied a premises license), he claims that he should not have to apply for a license *at all* to possess a handgun in the home.  He maintains that under the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), he has a fundamental Second Amendment right to possess handguns for self-defense in the home, and that N.Y. Penal Law § 265.01(1)[3] violates that right.  He also claims that his Second Amendment rights entitle him to possess a cane sword both at home and in public

---

[3] N.Y. Penal Law § 265.01(1) criminalizes the possession of handguns (and cane swords), while § 265.20(3) provides an exemption from criminalization for those who obtain a handgun license.  Sibley does not explicitly challenge § 265.20(a)(3) but the two sections work together to criminalize the possession of handguns without a license (and the possession of cane swords completely).

without a license.  He seeks a judicial declaration that N.Y. Penal Law § 265.01(1) violates the Second Amendment.  ECF No. 18 at 9.

Sibley's second claim seeks an injunction to stop Defendants from enforcing N.Y. Penal Law § 265.01(1) against him so that he can possess a handgun at home, and a cane sword at home and in public, without a license.  ECF No. 18 at 10.

Sibley's third claim challenges N.Y. Penal Law § 400.00's licensing criteria.  Specifically, Sibley challenges §§ 400.00(1)(b) and (n), which require applicants to have "good moral character" and show no "good cause" to deny a handgun license.  He seeks a judicial declaration that these provisions, both facially and as applied, are void for vagueness and overbroad; encourage arbitrary and discriminatory enforcement; and violate his First Amendment, Fourteenth Amendment, and Equal Protection rights, as well as his rights under the Privileges and Immunities clause.

Sibley's fourth claim challenges N.Y. Penal Law § 400.00's licensing process.  He claims that § 400.00 improperly allows evidentiary hearings without any established procedures, ignores New York's Administrative Procedures Act, and prohibits applicants from subpoenaing witnesses and documents.  He also claims that the licensing process was deficient as applied to him because Watches considered *ex parte* information and communications, denied Sibley's application before giving him a chance to submit evidence and legal argument in his favor, failed to sufficiently articulate the reasons for the denial of Sibley's application, and failed to timely adjudicate Sibley's application.  He seeks a judicial declaration that N.Y. Penal Law §§ 400.00(1)(b) and (n), both facially and as applied to him, violate the due process guarantees of the Fifth and Fourteenth Amendments, the New York State Constitution, and New York administrative law.  ECF No. 18 at 12-13.

Finally, Sibley's fifth claim alleges that an Article 78 proceeding would be a "meaningless" avenue for review of Watches' decision because it sets forth no objective standards against which to measure a licensing officer's decision. He seeks a judicial declaration that Article 78, both facially and as applied to him, violates the Fourteenth Amendment due process guarantees, the New York Constitution, and New York administrative law. ECF No. 18 at 14-15.

## III.   Handgun Analysis

In this section, the Court addresses each of Sibley's five claims as they relate to handguns. The Court addresses Sibley's claims related to cane swords in Section IV below.

### A.   First Claim: Constitutionality of N.Y. Penal Law § 256.01(1)

Sibley's first claim challenges the constitutionality of N.Y. Penal Law § 265.01(1), which criminalizes the unlicensed possession of handguns. This claim has multiple aspects. First, Sibley argues that § 265.01(1) is unconstitutional because it requires licensure of handguns even for possession at home, where the Second Amendment right to bear arms in self-defense is at its "zenith." *Kachalksy*, 701 F. 3d at 89. Second, Sibley argues that § 265.01(1) is unconstitutional because it fails strict scrutiny. Third, he argues that § 265.01(1) violates due process.

#### 1.   Standing to Challenge N.Y. Penal Law § 256.01(1) as to In-Home Possession

Defendants argue that Sibley lacks standing to challenge New York's handgun licensing laws as they relate to in-home possession because he did not apply for a premises license. Indeed, this Court has held "[a] plaintiff lacks standing to challenge [New York State's] licensing laws if he fails to apply for a firearms license in [New York]." *Libertarian Party v. Cuomo*, 300 F. Supp. 3d 424, 433 (W.D.N.Y. 2018). There is an exception to the rule, however, when a plaintiff makes a substantial showing that his application would have been futile. *Id.*

9

Sibley argues that this exception applies to him here: he claims that a premises application would be futile because his concealed carry application has already been denied based on his lack of "good moral character," which is a requirement for both premises and concealed carry licenses.

The Court is not persuaded.  The Second Circuit has recognized that home and public possession of firearms are "very different context[s]."  *Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012); *see also id.* at 94 (holding that "[t]he state's ability to regulate firearms . . . is qualitatively different in public than in the home" and that "the state's ability to regulate firearms [in the home] is circumscribed."); *Toussaint v. City of New York*, No. 17-CV-5576 (NGG) (VMS), 2018 U.S. Dist. LEXIS 152985, *12 (E.D.N.Y Sept. 7, 2018) (explaining that the "core of the Second Amendment right is the use of firearms by law-abiding citizens 'in defense of hearth and home,'" whereas "regulations on the use of handguns in public fall outside the core Second Amendment protections.") (quoting *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 259 (2d Cir. 2015)); *Corbett v. City of N.Y.*, No. 18 Civ. 7022 (KPF), 2019 U.S. Dist. LEXIS 100657, at *2-3 (S.D.N.Y. June 17, 2019) (describing a "premises license" as "not difficult to come by," in contrast with a "concealed carry" license).  Thus, while the "good moral character" criterion applies to both premises and concealed carry licenses, it is not clear that Watches would find Sibley unfit to possess a handgun in his home just because he decided he is unfit to possess a handgun in public.  Nevertheless, the Court considers Sibley's arguments on the merits below.

## 2. Constitutionality of N.Y. Penal Law § 265.01(1)'s Licensure Requirement for Handgun Possession in the Home

Sibley claims that he "'has a problem' with New York's licensing procedure" because it violates his Second Amendment right bear arms in his home, where the "need for defense of self, family, and property is most acute."  ECF No. 46 at 3 (quoting *Heller*, 544 U.S. at 628).  He therefore argues that pursuant to *Heller*, "New York cannot unilaterally criminalize all handgun

possession in the home . . . and then impose an obtuse licensing procedure that *de facto* denies possession of a handgun in the home."  ECF No. 46 at 3 (emphasis omitted).  The Court understands this argument to suggest that New York may not require licenses at all for handgun possession in the home.  The Court disagrees.

*Heller* and *McDonald* indeed held that the Second Amendment right to keep and bear arms is strongest when exercised for self-defense in the home.  *See Kachalsky*, 701 F.3d at 93 (explaining that under *Heller*, "the 'core' protection of the Second Amendment is the 'right of law-abiding, responsible citizens to use arms in defense of hearth and home'").

However, *Heller* and *McDonald* also made clear that "the right is not unlimited" and does not entitle citizens "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'"  *Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786.  Courts have thus read *Heller* and *McDonald* to say "that only law-abiding persons enjoy [Second Amendment] rights, even at home."  *Berron v. Ill. Concealed Carry Licensing Review Bd*., 825 F.3d 843, 847 (7th Cir. 2016); *see also United States v. Jimenez*, 895 F.3d 228, 234-35 (2d Cir. 2018) (rejecting argument that law banning firearm possession by individuals dishonorably discharged from the military violated the Second Amendment because the ban applied even in the home).  *Heller* and *McDonald* thus do not foreclose all restrictions on handgun ownership in the home.

Further, as this Court previously observed in *Libertarian Party*, *Heller* and *McDonald* "did not hold that a state's firearms licensing laws were unconstitutional[.]"  300 F. Supp. 3d at 434.  Rather, in *Heller*, "the plaintiff conceded that licensure is constitutional, and the Court did not question that concession."  *Berron*, 825 F.3d at 847 (internal citation omitted).  The *Heller* Court thus declined to address the constitutionality of a handgun licensing requirement.  *Libertarian Party*, 300 F. Supp. 3d at 434 (citing *Heller*, 554 U.S. at 631).  Accordingly, in *Libertarian Party*,

11

this Court rejected the argument that New York State's firearms licensing laws were unconstitutional under *Heller* and *McDonald*, concluding that so holding "would stretch the conclusions of both decisions well beyond their scope." *Id.* at 435. Sibley offers no reason for revisiting that conclusion here.

Moreover, other courts have rejected similar challenges to firearm licensure laws since *Heller* and *McDonald* were decided. *See, e.g.*, *United States v. Focia*, 869 F.3d 1269, 1283 (11th Cir. 2017) (rejecting claim that federal statute was "an impermissible prior restraint in violation of the Second Amendment because it criminalizes dealing in firearms without a license," and collecting cases from the First, Second, Third, Fourth, and Seventh Circuits rejecting similar claims); *Kachalsky,* 701 F.3d at 92 (rejecting argument that "just as the First Amendment permits everyone to speak without obtaining a license, New York cannot limit the right to bear arms to only some law-abiding citizens," and declining to apply First Amendment prior restraint principles to Second Amendment context); *Berron*, 825 F.3d at 847 ("If the state may set substantive requirements for ownership, which *Heller* says it may, then it may use a licensing system to enforce them. . . . Courts of appeals uniformly hold that some kind of license may be required."); *Powell v. Tompkins*, 926 F. Supp. 2d 367, 379 (D. Mass. 2013) ("[T]he requirement of prior approval by a government officer, or a licensing system, does not by itself render [a firearms] statute unconstitutional on its face.") (internal quotation marks omitted), *aff'd*, 783 F.3d 332 (1st Cir. 2015). Thus, Sibley has not shown that N.Y. Penal Law § 256.01(1) is unconstitutional under *Heller* and *McDonald* merely because it requires a license for possession of handguns in the home.

### 3. Intermediate Scrutiny Applies to Challenges to N.Y. Penal Law § 265.01(1), and §265.01(1) Satisfies that Standard

Taking a different tack, Sibley also argues that N.Y. Penal Law § 265.01(1) violates the Second Amendment because it fails strict scrutiny. ECF No. 38-1 at 10. *See Abrams v. Johnson*,

521 U.S. 74, 82 (1997) (explaining that strict scrutiny requires a law to be "narrowly tailored to achieve a compelling governmental interest").  This argument fails.

The Second Circuit and "district courts in this Circuit have continually chosen to apply 'intermediate scrutiny' to general challenges under the Second Amendment, even when reviewing statutes or laws that may restrict the possession of [weapons] in the home." *Avitabile v. Beach*, 277 F. Supp. 3d 326, 334 (N.D.N.Y. 2017) (applying intermediate scrutiny to blanket ban on stun guns and tasers, which applied even in the home); *see also Jimenez*, 895 F.3d at 234-35 (applying intermediate scrutiny to ban on possession of all firearms by individuals dishonorably discharged from the military, even in the home); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 260-61 (2d Cir. 2015), *cert. denied sub nom. Shew v. Malloy*, 136 S. Ct. 2486 (2016) (applying intermediate scrutiny to ban on semiautomatic assault weapons and large-capacity magazines, even in the home); *Doe v. Putnam Cty.*, 344 F. Supp. 3d 518, 536 (S.D.N.Y. 2018) (applying intermediate scrutiny to evaluate N.Y. Penal Law § 400.00(5)(b), which requires individuals to furnish personal information to obtain a handgun license, even for in-home possession); *Aron v. Becker*, 48 F. Supp. 3d 347, 271-72 (N.D.N.Y. 2014) (applying intermediate scrutiny to N.Y. Penal Law § 400.00(1)(b)'s "good moral character" licensing requirement, which applies even for at-home possession). [4]

This Court has likewise previously determined that intermediate scrutiny is appropriate to analyze challenges to New York's handgun licensing laws and has found that the laws satisfy that standard.  *See Libertarian Party*, 300 F. Supp. 3d at 441-45.   In *Libertarian Party*, this Court found that intermediate scrutiny was appropriate to analyze New York's firearm licensing laws

---

[4] Sibley's first claim does not explicitly attack N.Y. Penal Law § 400.00; it only references § 265.01.  But these laws work together: § 265.01(1) criminalizes handguns, § 265.20(a)(3) provides an exemption to criminalization for those who possess a license, and § 400.00 governs the licensing criteria and procedures.  *See Aron*, 48 F. Supp. 3d at 371 n.13.  Thus, cases analyzing the constitutionality of § 400.00 are relevant to an analysis of § 265.01(1).

because they do not substantially burden the "core" Second Amendment right to bear arms in defense of the home for law-abiding, responsible citizens. *Id.* at 442; *see also Jimenez*, 895 F.3d at 234-35 (explaining that *Heller* "identified the core of Second Amendment protections by reference not only to particular uses and particular weapons but also to particular persons, namely, those who are 'law-abiding and responsible'"). The Court explained that "law-abiding, responsible citizens face nothing more than time, expense, and questioning of close friends or relatives" and that "only 'the narrow class of persons who are adjudged to lack the characteristics necessary for the safe possession of a handgun' . . . face a substantial burden on the core Second Amendment protection via [New York's] firearms licensing laws." *Libertarian Party*, 300 F. Supp. 3d at 443 (quoting *Aron*, 48 F. Supp. 3d at 371). The Court concluded that New York's handgun licensing laws satisfy intermediate scrutiny because they are substantially related to the state's interest in ensuring that only law-abiding, responsible citizens are allowed to possess firearms and that "classes of individuals who do not have the necessary character and qualities to possess firearms are not able to do so." *Id.* at 444 (citing *Aron*, 48 F. Supp. 3d at 372).

Sibley presents no reason for this Court to depart from its holding in *Libertarian Party* here. Accordingly, the Court finds that intermediate scrutiny applies to Sibley's challenge to N.Y. Penal Law § 265.01(1), and that §265.01(1) satisfies that standard. Sibley's claim that strict scrutiny is required fails.

### 4. Due Process

Finally, Sibley argues that N.Y. Penal Law § 265.01(1) is "akin to a complete ban without a scintilla of due process" because it "criminalizes the entire adult population of . . . New York without any prior notice or an opportunity to be heard from possessing a handgun in their home for self-defense." ECF No. 38-1 at 10 (emphasis omitted). This argument also misses the mark.

Section § 265.01(1) does not deny citizens prior notice or an opportunity to be heard before criminalizing the unlicensed possession of handguns in the home.  "When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process – the legislative process.  The challenges to such laws must be based on their substantive compatibility with constitutional guarantees."  *Richmond Boro Gun Club v. City of N.Y.*, 97 F.3d 681, 689 (2d Cir. 1996) (quoting 2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 17.8 (2d ed. 1992)); *see also id.* ("Procedural due process has not been violated in this case because plaintiffs can (and do) challenge the legislative ordinance in federal or state court on the ground that it violates their substantive state or federal rights.").

Accordingly, Sibley's first claim regarding handguns is dismissed with prejudice.

## B.  Second Claim: Injunctive Relief

Because the Court finds that N.Y. Penal Law § 265.01(1) does not violate the Second Amendment as to handguns, Sibley's request for an injunction prohibiting the Defendants from enforcing it against him is denied and his second claim is dismissed with prejudice.

## C.  Third Claim: Constitutionality of N.Y. Penal Law § 400.00(1)(b) and (n)

In his third claim, Sibley challenges N.Y. Penal Law §§ 400.00(1)(b) and (n), which provide that "no license shall be issued . . . except for an applicant . . . (b) of good moral character . . . and (n) concerning whom no good cause exists for the denial of the license."  He argues that these provisions are void for vagueness because they encourage arbitrary and discriminatory enforcement, are overbroad, and violate the First Amendment, the Equal Protection clause, and the Privilege and Immunities clause.  All of these arguments fail.

### 1.  Void for Vagueness

"A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what

conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Clavin v. Cty. of Orange*, 620 F. App'x 45, 48 (2d Cir. 2015) (summary order) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). Here, Sibley argues that N.Y. Penal Law §§ 400.00(1)(b) and (n) permit arbitrary and discriminatory enforcement. ECF No. 38-1 at 14. He challenges these provisions both facially and as applied.

### a) Facial Challenge

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of L.A. v. Patel*, 135 S. Ct. 2443, 2449 (2015). "Facial vagueness challenges are disfavored, and are generally allowed only when a plaintiff asserts that a First Amendment freedom of expression violation has occurred." *Aron*, 48 F. Supp. 3d at 371; *see also Dickerson v. Napolitano*, 604 F.3d 732, 743 (2d Cir. 2010) ("Whether a facial void-for-vagueness challenge can be maintained when, as here, a challenge is not properly based on the First Amendment is unsettled."); *U.S. v. Venturella*, 391 F.3d 120, 134 (2d Cir. 2004) ("[W]hen the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only . . . in light of the specific facts of the case at hand and not with regard to the statute's facial validity."). "Outside of the First Amendment context, a facial challenge generally must show that 'no set of circumstances exists under which the [law] would be valid.'" *Copeland v. Vance*, 230 F. Supp. 3d 232, 248 (S.D.N.Y. 2017) (quoting *Dickerson*, 604 F.3d at 743 (alteration in original)).

Sibley argues that his case raises the "first impression" issue of whether N.Y. Penal Law §§ 400.00(1)(b) and (n) infringe upon his First Amendment rights. ECF No. 30 at 11-14. He asserts that, by denying him a handgun license based on his "ideas and viewpoints as expressed in his litigations and petitions," Watches discriminated against Sibley in violation of his First and Fourteenth Amendment rights. ECF No. 30 at 11.

16

The Court finds that Sibley fails to state a First Amendment violation. Rather, Sibley's argument that Watches discriminated against him falls squarely under a Fourteenth Amendment vagueness claim. *See Clavin*, 620 F. App'x at 48 (holding that a statute can be impermissibly vague if it authorizes or encourages arbitrary or discriminatory enforcement). Sibley also does not state a First Amendment prior restraint claim because "[t]ypically a person possessing a gun has no intent to convey a particular message, nor is any particular message likely to be understood by those who view it." *N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 883 F.3d 45, 67 (2d Cir. 2018). Indeed, Sibley does not allege or argue that the denial of a handgun license restrains or chills his speech. And although Sibley suggests that Watches discriminated against him based on his previously expressed viewpoints, he asserts no First Amendment retaliation claim in his Amended Complaint. *See Aron*, 48 F. Supp. 3d at 358, 373, 375 n.16 (holding that plaintiff failed to state a facial constitutional vagueness claim or a First Amendment freedom of expression claim where she appeared to allege that the pistol licensing officer denied her application under § 400.00 in retaliation for plaintiff's criticism of the pistol permit process).

Accordingly, the Court finds that Sibley has not raised a First Amendment claim that would permit him to assert a facial vagueness challenge to N.Y. Penal Law §§ 400.00(1)(b) and (n). Even if he had, this Court and others in this Circuit have previously held that §§ 400.00(1)(b) and (n) are not facially vague. *See, e.g.*, *Libertarian Party*, 300 F. Supp. 3d at 440; *Aron*, 48 F. Supp. 3d at 373. Accordingly, Sibley's facial challenge is dismissed.

### b) As-Applied Challenge

"[A]n as-applied challenge requires that a plaintiff show that the challenged statute is unconstitutional when applied to the particular facts of his or her case" *Copeland*, 230 F. Supp. 3d at 248; *see also Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). Sibley's

as-applied challenge fails because it depends on facts not alleged in his pleadings.  Because he

filed this action (and his Amended Complaint) prior to the January 10, 2020 hearing and Watches'

March 9, 2020 decision, Sibley did not—and could not—include any facts about these events in

his Amended Complaint.  Sibley filed a supplemental memo attaching Watches' decision and

challenging the same, but "it is axiomatic that a complaint cannot be amended by the briefs in

opposition to a motion to dismiss."  *Reinschmidt v. Exigence LLC (Del)*, No. 08-5368-CV, 2019

U.S. Dist. LEXIS 29596 at *26 (W.D.N.Y. Feb. 25, 2019) (internal quotation marks omitted);

*Palmer v. Safetec of Am., Inc*., No. 11-CV-00702A(F), 2012 U.S. Dist. LEXIS 101302 at *27 n.7

(W.D.N.Y. May 31, 2012) ("[T]he allegations contained in Plaintiff's Response cannot correct the

deficiencies of his Complaint.").

Unsurprisingly given this procedural posture, Sibley's as-applied challenge has not been

sufficiently briefed.  In an as-applied challenge, "[f]actual context and [the challenger's]

circumstances are critical."  *United States v. Laurent*, 861 F. Supp. 2d 71, 93 (E.D.N.Y. 2011).

Additionally, courts look to "the words of the [law] itself, to the interpretations the court below

has given to analogous statutes, and perhaps to some degree, to the interpretation of the statute

given by those charged with enforcing it."  *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179,

187 (2d Cir. 2010) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)).  Here, the

parties do not analyze Sibley's specific circumstances, nor do they analyze the meaning of "good

moral character" or "good cause" in the context of New York's handgun licensing scheme.  *See*

*Aron*, 48 F. Supp. 3d at 374 (explaining that, while "good moral character" is not defined in N.Y.

Penal Law § 400.00, the statute's context indicates that the criterion is "clearly cabined by" public

safety concerns and "is not some esoteric standard devoid of parameters, but rather is a measure

used to assess the suitability of the applicant to gain licensure to possess a potentially deadly

weapon like a pistol.  While the good moral character criteria is not defined with meticulous specificity, the standard contains the flexibility and reasonable breadth necessary to achieve the objective of N.Y. Penal Law Article 400."); *see also Matter of Zedek v. Kelly*, 37 Misc 3d 1208(A), 2012 N.Y. Misc. LEXIS 4834, *5 (Sup. Ct., NY County 2012) ("The 'good moral character' standard under Penal Law § 400.00(1) . . . thus is interpreted as 'moral character and fitness to possess a firearm,' and repeatedly applied in the firearm licensing context without questioning the requirement's constitutionality.") (internal citations omitted).

Accordingly, Sibley's as-applied challenge to N.Y. Penal Law §§ 400.00(1)(b) and (n) is dismissed without prejudice.

### 2.   Overbreadth, Equal Protection, and Privileges and Immunities

While Sibley's Amended Complaint conclusorily alleges that N.Y. Penal Law §§ 400.00(1)(b) and (n) are overbroad and violate his Equal Protection and Privileges and Immunities rights, these allegations are boilerplate and Sibley advances no argument on these claims.  The Court finds that they are meritless.

"Under the First Amendment doctrine of overbreadth, a statute is invalid when it brings within its scope—and thus threatens to chill—conduct protected by the First Amendment." *U.S. v. Sattar*, 314 F. Supp.  2d 279, 304 (S.D.N.Y. 2004).  As discussed above, Sibley has not established that N.Y. Penal Law §§ 400.00(1)(b) and (n) threatens to chill expressive conduct protected by the First Amendment.  Accordingly, his overbreadth claim is dismissed.  *See Libertarian Party*, 300 F. Supp. 3d at 439 n.11 (holding that plaintiff's overbreadth challenge to § 400.00 failed because "there is no overbreadth argument in the Second Amendment context" (citing *United States v. Decastro*, 682 F.3d 160, 169 (2d Cir. 2012)).

As for his Equal Protection claim, Sibley has not alleged that he was treated differently than similarly situated individuals, or that he was discriminated against "based on impermissible considerations such as 'race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Mishtaku v. City of N.Y.*, No. 14-CV-839 (VSB), 2015 U.S. Dist. LEXIS 193797, at *14 (S.D.N.Y. May 4, 2015) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)).  Further, although an Equal Protection analysis can be used to examine a law that burdens a fundamental right, courts have generally "'concluded that the Second Amendment analysis is sufficient to protect these rights and have either declined to conduct a separate equal protection analysis or have subjected the equal protection challenge to rational basis review.'" *Jones v. Bermudez*, No. 15-CV-8527 (PKC) (BCM), 2019 U.S. Dist. LEXIS 25371, at *26 (S.D.N.Y. Feb. 14, 2019) (quoting *Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 261 n.13 (S.D.N.Y. 2012), *aff'd*, 723 F.3d 160 (2d Cir. 2013)).

Finally, the Privileges and Immunities Clause deals with the right to travel from state to state.  *See Bach v. Pataki*, 408 F.3d 75, 87 (2d Cir. 2005).  Sibley makes no allegations or arguments addressing how N.Y. Penal Law §§ 400.00(1)(b) and (n) infringe on this right.

Accordingly, Sibley's Overbreadth, Equal Protection, and Privileges and Immunities claims are dismissed without prejudice.

### D.  Fourth Claim: Procedural Due Process Challenge to N.Y. Penal Law § 400.00

In his fourth claim, Sibley argues that New York's procedure for adjudicating handgun license applications fails to satisfy due process rights under the Fourteenth Amendment.  ECF No. 38-1 at 19.  He complains that New York's procedure was deficient because Watches considered *ex parte* information and communications, denied Sibley's application before giving him a chance to submit evidence and legal argument in his favor, failed to sufficiently articulate the reasons for

the denial of Sibley's application, failed to timely adjudicate Sibley's application, and violated New York's Administrative Procedure Act.   ECF No. 38-1 at 19-26.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To assert a claim under Section 1983 based on an alleged violation of procedural due process, plaintiff must plead (1) he possesses a liberty or property interest protected by the Constitution or a federal statute, and (2) he was deprived of that liberty or property interest without due  process."  *Clavin*, 620 F. App'x at 47-48.

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted).  Conversely, "[p]roperty interests are not created by the Constitution; rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Here, Defendants argue that Sibley cannot show a liberty or property interest in a concealed carry license under the authority in this circuit.

As to property interests, "[c]ourts within this Circuit have held that because a New York State government official's issuance of a pistol permit is a discretionary act, an individual has no property interest in holding such a permit."  *El ex rel. Letite v. DeProspo,* No. 1:19-CV-8426 (CM), 2019 U.S. Dist. LEXIS 204672, at *9 (S.D.N.Y. Nov. 22, 2019); *see also Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 234-35 (E.D.N.Y. 2019) ("[T]here is no protectible interest in a New York

State-issued handgun license, which is subject to the broad discretion of the licensing official."); *Corbett v. City of N.Y.*, No. 18 Civ. 7022 (KPF), 2019 U.S. Dist. LEXIS 100657, at *19 (S.D.N.Y. June 17, 2019) (finding no protectable interest in "business carry" license due to License Division's broad discretion); *Toussaint*, 2018 U.S. Dist. LEXIS 152985, *16 (dismissing case because the plaintiff could not show a protected liberty or property interest in a possible future handgun license); *Moore v. City of New York*, No. 15-CV-6600, 2018 U.S. Dist. LEXIS 137412, *14-15 (S.D.N.Y. Aug. 7, 2018) (holding that the possession of a handgun license is a privilege, not a right, in New York); *Perros v. Cty. of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017) (same); *Kuck v. Danaher*, 600 F.3d 159, 165 (2d Cir. 2010) (suggesting that, while a Connecticut plaintiff has a liberty interest in a firearm permit which is "tied to the right to bear arms recognized by [Connecticut] law," a New York plaintiff may not have such an interest because New York licensing officers have broader discretion in issuing firearm licenses); *Boss v. Kelly*, 306 F. App'x 649, 650 (2d Cir. 2009) (summary order) ("Under New York law, [i]t is well settled that the possession of a handgun license is a privilege, not a right, which is subject to the broad discretion of a firearms licensing officer.").

However, as to liberty interests, at least one court from this circuit has recognized that, "[t]o the extent . . . that the Second Amendment creates an individual right to possess a firearm unrelated to any military purpose, it also establishes a protectible liberty interest." *United States v. Arzberger*, 592 F. Supp. 2d 590, 602 (S.D.N.Y. 2008); *see also Doe I v. Evanchick*, 355 F. Supp. 3d 197, 219 (E.D. Pa. 2019) (recognizing a protected liberty interest in the right to bear arms); *Doe v. Wolf*, No. 16-6039, 2017 U.S. Dist. LEXIS 134853, at *35 (E.D. Pa. Aug. 23, 2017) (explaining that, while neither *Heller* nor *McDonald* classified Second Amendment rights as either "liberty" or "property" interests, the First Circuit has held that "the right to possess arms (among those not

properly disqualified) is no longer something that can be withdrawn by [the] government on a permanent and irrevocable basis without due process") (quoting *United States v. Rehlander*, 666 F.3d 45, 48 (1st Cir. 2012)).

The Court need not decide whether Sibley has a liberty or property interest protected by the Fourteenth Amendment because in any event, "[w]hatever level of process was due in this case, it was available in the form of an Article 78 proceeding before the New York State Supreme Court." *Montalbano v. Port Auth. of N.Y. & N.J.*, 843 F. Supp. 2d 473, 485 (S.D.N.Y. 2012). "It is settled law in this Circuit that '[a]n Article 78 proceeding provides the requisite post-deprivation process—even if [a plaintiff] failed to pursue it.'" *Id.* (quoting *Anemone v. Metropolitan Transp. Authority*, 629 F.3d 97, 121 (2d Cir. 2011)); *see also Osterweil v. Bartlett*, 819 F. Supp. 2d 72, 89 (N.D.N.Y. 2011) ("[B]ecause  plaintiff was entitled to challenge the denial of his firearms license application in an Article 78 proceeding, plaintiff had available to him a meaningful post-deprivation remedy under state law."); *Aron*, 48 F. Supp. 3d at 370 ("An aggrieved pistol permit applicant has well-established appellate recourse under N.Y. CPLR Article 78."); *Corbett*, 2019 U.S. Dist. LEXIS 100657, at *20 n.3 ("Any due process issues would be protected by an Article 78 proceeding."); *DeProspo*, 2019 U.S. Dist. LEXIS 204672, at *10 (S.D.N.Y. Nov. 22, 2019) ("Courts have held that a proceeding under Article 78 of the New York Civil Practice Law and Rules is an adequate remedy to challenge decisions with respect to firearms licenses." ); *Torcivia v. Suffolk Cty.*, 409 F. Supp. 3d 19, 41 (E.D.N.Y. 2019) (holding that Article 78 proceeding afforded sufficient due process for pistol license revocation claims).

Accordingly, Sibley's fourth claim is dismissed with prejudice.

### E.  Fifth Claim: Constitutionality of Article 78 Proceedings

For the reasons discussed directly above, the Court finds that an Article 78 Proceeding provides a constitutionally adequate avenue for Sibley to seek review of Watches' decision.  Sibley

has not sought review of Watches' decision in an Article 78 proceeding.  However, his claim that he should not be required to do so because such a procedure would be meaningless is dismissed with prejudice.

## IV.  Cane Sword Analysis

In his first and second claims, Sibley asserts that the Second Amendment protects his right to possess a cane sword both at home and in public, and that N.Y. Penal Law § 265.01(1) unconstitutionally infringes on that right by completely banning the possession of cane swords.

The question is whether the Second Amendment protects the possession of cane swords. "The Second Amendment protects only the 'sorts of weapons' that are (1) 'in common use' and (2) 'typically possessed by law-abiding citizens for lawful purposes.'" *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) (quoting *Heller*, 554 U.S. at 625, 627).  But there is a prima face presumption that the Second Amendment applies "to all instruments that constitute bearable arms." *Heller*, 554 U.S. at 582.  The State has the burden of rebutting this presumption. *N.Y. State Rifle*, 804 F.3d at 257 n.73.  To do so, the State must show, at a minimum, that the weapon in question is "not typically possessed by law-abiding citizens for lawful purposes"; it is not enough to simply show that the weapon is not in "common use." *Maloney v. Singas*, 351 F. Supp. 3d 222, 233 n.16 (E.D.N.Y. 2018).  "While 'common use' is an objective and largely statistical inquiry, 'typical[] possess[ion]' requires [the court] to look into both broad patterns of use and the subjective motives of gun owners." *N.Y. State Rifle*, 804 F.3d at 256.

Here, Defendants ask the Court to dismiss Sibley's claims as to cane swords because that weapon is not in common use today.  ECF No. 40 at 9-10; ECF No. 50 at 9-10.  Defendants argue that Sibley has failed to plead that cane swords are in common use today, and that he only asserts

that cane swords were commonly used in the Eighteenth Century. *Id.*  Neither party addresses whether cane swords are typically possessed by law-abiding citizens for lawful purposes.

Even if it were enough to simply show that cane swords are not in common use, that is an issue of fact which is inappropriate for resolution on a motion to dismiss.  And while Sibley filed a motion for summary judgment and a Rule 56 statement asserting that cane swords are in common use, he cites no objective evidence in support.  Similarly, while "there is no defined analytical standard for what constitutes 'typical possession by law-abiding citizens for lawful purposes' and 'reliable empirical evidence' of such possession is 'elusive,'" Defendants must still prove this issue by clear and convincing evidence. *Maloney*, 351 F. Supp. 3d at 234-35 (quoting *N.Y. State Rifle*, 804 F.3d at 257).

Accordingly, Defendants' motions to dismiss Sibley's claims as to the cane sword (claims 1 and 2) are denied.  Sibley's motion for summary judgment as to the cane sword claims are likewise denied.

## V.  Dismissal of Certain Parties

As a final matter, three of the Defendants seek dismissal of the claims against them for reasons independent of the merits of the claims.

First, Defendants Watches seeks dismissal of Sibley's first and second claims against him because he has nothing to do with Sibley's possession of a handgun or cane sword in the home. The Court agrees.  Watches only denied Sibley's concealed carry license application.  Sibley's allegation that N.Y. Penal Law § 265.01(1) is unconstitutional because it criminalizes the unlicensed possession of handguns in the home and all possession of cane swords fails to state a claim against Watches.

25

Next, Defendant Allard, the Steuben County Sheriff, and Defendant Baker, the Steuben County District Attorney, seek dismissal of all the claims against them.  Sibley sued these Defendants in their official capacities only.  "A claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself[.]'"  *Lore v. City of Syracuse,* 670 F.3d 127, 164 (2d Cir. 2012).  Defendants Allard and Baker therefore argue that the claims against them equate to claims against Steuben County itself, and that, as a municipality, Steuben County[5] "cannot be held liable simply for choosing to enforce the entire Penal Law."  *Vives v. City of New York*, 524 F.3d 346, 356 (2d Cir. 2008) (holding that a municipality can only be liable for enforcing state law if (1) the municipality had a meaningful choice as to whether it would enforce a particular state law, and (2) it made a discrete, conscious choice to enforce that law, or to enforce it in an unconstitutional manner).

Here, Sibley only alleges that Allard "is responsible for enforcing the State of New York's customs, policies, practices and laws related to the enforcement of N.Y. Penal Law § 265.00" and that Baker "has a duty to conduct all prosecutions for crimes and offenses cognizable by the courts of Steuben County, including all crimes under N.Y Penal Law § 265.00"  ECF No. 18 ¶¶ 6-7.  He does not allege that any of Steuben County's own policies caused him constitutional harm, that Steuben County had a meaningful choice as to whether it would enforce N.Y. Penal Law § 265.00, that Steuben County made a conscious choice to enforce it, or that Steuben County made a policy to enforce it in an unconstitutional manner.  *Vives*, 524 F.3d at 353, 356; *see also generally Schnitter v. City of Rochester*, 556 F. App'x 5, 9 (2d Cir. 2014) (summary order) (affirming dismissal of claims against Monroe County and the City of Rochester where the plaintiff merely named Monroe County as a defendant without making specific allegations against it and only made

---

[5] Municipalities include counties.  *See Silver Star Ass'n v. Cty. of Oswego*, 56 F. Supp. 2d 263, 266 (N.D.N.Y. 1999) ("Municipalities, including counties, can be liable under § 1983 . . . .").

"formulaic recitations that the city's policies contributed to the illegal conduct that allegedly deprived [the plaintiff] of his rights").

The Court accepts this argument with respect to Defendant Allard, the Steuben County Sheriff, and dismisses all claims against him with prejudice.

The Court rejects this argument, however, as to Defendant Baker, the Steuben County District Attorney. This is because, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State and not the county." *Bellamy v. City of N.Y.*, 914 F.3d 727, 757 (2d Cir. 2019)). "When a plaintiff mounts a constitutional challenge against a particular state statute, the proper defendant is typically the state official charged with enforcing the statute." *Aron*, 48 F. Supp. 3d at 379 (citing *Diamond v. Charles*, 476 U.S. 54, 64 (1986)). "It is well established in New York that the district attorney, and the district attorney alone, should decide when and in what manner to prosecute a suspected offender."). *Baez v. Hennessy*, 853 F.2d 73, 76 (2d Cir. 1988).

Courts in this Circuit have held that district attorneys are proper defendants in suits challenging the constitutionality of state laws. *See, e.g.*, *Avitabile*, 277 F. Supp. 3d at 332 (denying district attorney's motion to dismiss in case challenging § 265.01(1)); *Nolan v. Cuomo*, No. 11 CV 5827 (DRH) (AKT), 2013 U.S. Dist. LEXIS 6680, at *34-25 & n.7 (E.D.N.Y. Jan. 16, 2013) (concluding that the Suffolk County District Attorney was proper party to plaintiff's official-capacity claims for injunctive relief against enforcement of and explaining that "prosecutorial immunity does not extend to claims for prospective injunctive relief"); *Maloney v. Cuomo*, 470 F. Supp. 2d 205, 211 (E.D.N.Y. 2007) (dismissing claim challenging constitutionality of § 265.01(1) against the Attorney General and the Governor and citing *Baez* for the proposition that the district

attorney alone decides whether to prosecute).[6]   Accordingly, Baker's motion to dismiss on this basis is denied.

## CONCLUSION

For the foregoing reasons, the Court concludes as follows:

1.      Defendants' motions to dismiss (ECF Nos. 27, 32, and 40) are GRANTED except as otherwise stated herein.  Sibley's motion for summary judgment (ECF No. 38) is DENIED.

2.      All of Sibley's claims are dismissed with prejudice as to Defendant Allard. The Clerk of Court is directed to terminate  Allard as a party.

3.      Sibley's first and second claims are dismissed with prejudice as to Defendant Watches.

4.      Sibley's first and second claims as to handguns are dismissed with prejudice as to all Defendants.

5.      Sibley's third claim is dismissed without prejudice as to Defendants Watches, Baker, Cuomo, and Corlett.[7]

6.      Sibley's fourth and fifth claims are dismissed with prejudice as to all Defendants.

7.      Sibley's Motion for Oral Argument and Ratio Decidendi (ECF No. 47) is GRANTED IN PART AND DENIED IN PART.  Oral argument is denied.  By way of this Decision and Order, the Court has granted the motion for Ratio Decidendi.

---

[6] For this reason, the Court is skeptical that Governor Cuomo is a proper party.  *See Wang v. Pataki*, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001) (dismissing Governor as a defendant in a suit challenging constitutionality of a state statute where there were no allegations that the Governor had any connection with the enforcement of the statute "other than the general duty to take care that the laws be faithfully executed"); *see also Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999) (explaining that, although there is some authority to the contrary, the "vast majority of courts" hold "that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute").  However, Governor Cuomo has not moved to dismiss on this basis and his propriety as a defendant has not been briefed.
[7] It is not clear if Sibley brings this claim against all Defendants.  If Sibley files a second amended complaint, he is directed to state within each claim the Defendants against which he seeks relief and include allegations of their personal involvement.

8.      Sibley may file a second amended complaint by June 19, 2020.

IT IS SO ORDERED.

Dated: May 18, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

29