UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MONTGOMERY BLAIR SIBLEY,

                                    Plaintiff,                    Case # 19-CV-6517-FPG
                                                                  DECISION AND ORDER
v.

CHAUNCEY J. WATCHES, solely in his
official capacity as a New York Consolidated
Laws, Penal Law 265.00(10) Licensing Officer;
ANDREW MARK CUOMO, solely in his official
capacity as the Chief Administrative Officer of the State
of New York; JAMES L. ALLARD, solely in his official
capacity as Sheriff of Steuben County, New York;
BROOKS BAKER, solely in his official capacity as
District Attorney of Steuben County; and KEITH M.
CORLETT, solely in his official capacity as
Superintendent of the New York State Police;

                                    Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff Montgomery Blair Sibley brings this action under 42 U.S.C. § 1983 challenging the constitutionality of New York State's laws banning the unlicensed possession of handguns and the possession of cane swords.  ECF No. 56.  Several motions are pending before the Court: (1) Defendant Brooks Baker's Motion to Dismiss Sibley's Third Amended Complaint, ECF No. 59; (2) Defendants Keith M. Corlett, Andrew Mark Cuomo, and Chauncey J. Watches's Motion to Dismiss Sibley's Third Amended Complaint, ECF No. 60; and (3) Sibley's Motion to Expedite, Request for Judicial Notice, and Motion for Preliminary Injunction.  ECF No. 65.

     Because the substance of the motions substantially overlap, the Court considers all of the parties' motions together.  *See Schreiber v. Friedman*, No. 15-CV-6861 (CBA) (JO), 2017 U.S. Dist. LEXIS 221610, at *15 (E.D.N.Y. Mar. 31, 2017) (considering overlapping motions together).

For the reasons stated below, Defendants' motions to dismiss are GRANTED, and Sibley's motion to expedite, for judicial notice, and for a preliminary injunction is deemed MOOT.

## BACKGROUND

The following facts are taken from the Third Amended Complaint unless otherwise noted. In November 2017, Sibley moved from Washington, D.C. to Corning, New York, and brought two handguns and a cane sword with him.  ECF No. 56 ¶ 10.  On July 18, 2018, Sibley applied for a "carry concealed" handgun license in Steuben County, New York.  *Id.* ¶ 12.  He disclosed the possession of his two handguns on the application.  *Id.*  The application triggered an investigation, including a series of background checks.  *Id.*  To the best of Sibley's knowledge, these all came back negative for any criminal or mental health history.  *Id.*

On December 28, 2018, as part of the investigation, Sibley was interviewed by a Steuben County Sheriff's Deputy.  *Id.* ¶ 13.  Following the interview, the Deputy told Sibley that possessing his handguns in his home without a license was illegal under N.Y. Penal Law § 265.01(1) and advised Sibley to get rid of them pending the decision on his application.  *Id.*  Sibley removed his handguns from New York.  *Id.*  He also removed his cane sword.  *Id.*

On May 29, 2019, Defendant Chauncey J. Watches, a Steuben County judge and handgun licensing officer, sent Sibley a letter denying his "carry concealed" handgun license application. *Id.* ¶ 16.  The denial letter stated that "the decision [was] based upon concerns expressed in the Sheriff's investigation," specifically "concerns about your being sufficiently responsible to possess and care for a pistol" and  concerns "that your history demonstrates that you place your own interest above the interests of society."  *Id.*  The letter advised Sibley that he had the right to request a hearing at which he could testify and present witnesses.  *Id.*

2

On June 14, 2019, Sibley requested a hearing. *Id.* at 17. But before the hearing could take place, on July 9, 2019, Sibley brought the instant action in this Court challenging Judge Watches's initial denial of his handgun license application and the constitutionality of New York's handgun licensing laws. ECF No. 1. The parties engaged in motion practice, and Sibley ultimately filed his Third Amended Complaint, the operative pleading. ECF No. 56.

The hearing before Judge Watches took place on January 10, 2020. ECF No. 56 ¶ 19. On March 9, 2020, Judge Watches issued a written decision confirming his denial of Sibley's handgun license application. ECF No. 56 ¶ 21. In it, Judge Watches found that Sibley had failed to demonstrate "good moral character" as required by N.Y. Penal Law § 400.00(1)(b). ECF No. 56 at 24-27. His decision[1] explained, in relevant part:

> Penal Law § 400 governs the issuance of pistol permits. The relevant question in this matter is that the applicant be of "good moral character." Penal Law § 400 1. (b). Good cause exists to deny a permit where the applicant lacks "the essential temperament of character which should be present in one entrusted with a dangerous [weapon] . . . , or that he or she does not possess the maturity, prudence, carefulness, good character, temperament, demeanor and judgment necessary to have a pistol permit." *Matter of Gurnett v. Bargnesi*, 147 AD3d 1319 [4th Dept. 2017] [internal quotation marks omitted].
>
> Western civilization has long recognized that good moral character is the ideal state of a person's beliefs and values that provides the most benefit to a healthy and worthy society. Good moral character is more than having an unblemished criminal record. A person of good moral character behaves in an ethical manner and provides the Court, and ultimately society, reassurance that he can be trusted to make good decisions. Aldo Leopold said that "ethical behavior is doing the right thing when no one else is watching—even when doing the wrong thing is legal." Given the nature of the responsibility involved with the handling of a dangerous weapon, the Court must be assured of the applicant's ability to follow the law and abide by rules and regulations necessary to protect the safety of the individual and society. The Court must also have a basis to trust that the applicant's character is such that he will behave in an ethical manner where there are no written rules. The

---

[1] Judge Watches's decision was attached to the Third Amended Complaint and thus the Court may consider it on a motion to dismiss. *Chamberlain v. City of White Plains*, 960 F.3d 100, 105 (2d Cir. 2020) ("[D]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered when ruling on a motion to dismiss." (citation and internal quotation marks omitted)). It is also a proper subject of judicial notice. *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order).

evidence presented does not provide the Court with assurance that Mr. Sibley can follow specific laws, rules and regulations let alone behave in an ethical and responsible manner necessary to be granted a pistol permit. In short, Mr. Sibley has failed to demonstrate his good moral character.

The Court first notes that Mr. Sibley has been suspended from the practice of law in the State of Florida, the District of Columbia and the State of New York as well as various federal courts. This gives the Court pause in considering Mr. Sibley's application. The Preamble to the New York Rules of Professional Conduct notes that a lawyer, as a member of the legal profession, is an officer of the legal system with special responsibility for the quality of justice. A lawyer has a duty to uphold the legal process and demonstrate respect for the legal system as well as further the public's understanding of and confidence in the rule of law and the justice system. Because Mr. Sibley has failed to maintain these duties as an officer of the legal system, the Court lacks confidence that Mr. Sibley will follow both the explicit and implicit rules inherent in the responsibility of a pistol permit holder.

Even assuming, arguendo, that Mr. Sibley has somehow rehabilitated himself from the circumstances that led to his disbarment, his testimony at the hearing belies any such notion. During his testimony, Mr. Sibley argued that although his actions as an attorney may have been vexatious and meritless they were not frivolous. This is a distinction without a difference and factually incorrect. In 2006, the Florida Supreme Court held that Mr. Sibley's "frivolous and abusive filings must immediately come to an end" and found sanctions appropriate. *Sibley v. Fla. Judicial Qualifications Comm'n*, 973 So.2d 425, 427 [2006]. Even after his disbarment, Mr. Sibley has continued to pursue frivolous litigation in various courts. As recently as 2018, Mr. Sibley was sanctioned by the United States District Court for the District of Maryland for his "frivolous and vexatious litigation strategy." *CarMax Auto Superstores, Inc. v. Sibley*, 2018 U.S. Dist. LEXIS 169864, *9 [Md. October 2, 2018].

Finally, this Court agrees with the Fourth Department's assessment of Mr. Sibley: "Respondent, by his conduct, has demonstrated his disregard and disrespect for the judiciary as well as his absence of remorse." 61 A.D.3d 85,87 [4th Dept. 2009]. Given these circumstances, the Court is unable to find Mr. Sibley to be of good moral character.

Based on Mr. Sibley's application, the testimony presented to the Court, the evidence received and upon due deliberation, the Court confirms the denial of the pistol permit application of Montgomery Sibley. Upon his readmission to the bar of New York, Mr. Sibley may submit a new application for a pistol permit.

ECF No. 56 at 24-27.

After the Third Amended Complaint was filed, on August 26, 2020, Sibley filed an Article 78 proceeding in the Supreme Court of New York, Steuben County.  ECF No. 60-1.  The Article 78 proceeding remains pending and is set for a hearing in February 2021.  ECF No. 70 at 1.

## LEGAL STANDARD

A complaint will survive a motion to dismiss when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct.  *Id.*  In considering the plausibility of a claim, the Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

## DISCUSSION

I.      **New York's Ban on Unlicensed Handguns and Cane Swords**

New York criminalizes the possession of various weapons, including firearms[2] and cane swords.  N.Y. Penal Law § 265.01(1).  But there is an exemption for licensed handguns.  N.Y. Penal Law § 265.01(3).

N.Y. Penal Law § 400.00 is "the exclusive statutory mechanism for the licensing of firearms in New York State."  *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012). It sets forth several requirements for licensure, including that applicants must be over 21 years old, have no history of crime or mental illness, have "good moral character," and demonstrate no "good

---

[2] "Firearms" include pistols and revolvers ("handguns"), shotguns and rifles less than certain lengths, and assault weapons.  Rifles and shotguns over certain lengths ("longarms") do not require a license.  N.Y. Penal Law § 265.01(3).

cause" to deny the license.  N.Y. Penal Law § 400.00(1)(a)-(d), (g)).  The types of licenses available include "premises" licenses for at-home possession and "concealed carry" licenses for possession in public.  N.Y. Penal Law § 400.00(2)(a), (f).

The application process is administered locally and triggers a police investigation into the applicant's mental health and criminal history, moral character, and, for concealed carry licenses, representations of proper cause.  *Kachalsky*, 701 F.3d at 87.  The investigation includes a series of background checks whose results are reported to the local licensing officer.  *Id.*

"Licensing officers, often local judges, are vested with considerable discretion in deciding whether to grant a license application[.]"  *Id.* (citation and quotation marks omitted).  "An applicant may obtain judicial review of the denial of a license in whole or in part by filing a proceeding under Article 78 of New York's Civil Practice Law and Rules.  A licensing officer's decision will be upheld unless it is arbitrary and capricious."  *Id.*

## II.    Sibley's Claims

Sibley's Third Amended Complaint asserts three claims.  The first two claims relate to the cane sword, while the third claim relates to the handgun license application.

The first claim is brought against Defendants Baker, Cuomo, and Corlett.  Sibley seeks a judicial declaration that N.Y. Penal Law § 256.01(1)'s ban on cane swords violates his Second Amendment right to bear arms.  ECF No. 56 ¶¶ 22-25.

The second claim is related to the first.  Sibley seeks an injunction to prevent Defendants Baker, Cuomo, and Corlett from enforcing N.Y. Penal Law § 265.01(1)'s ban on cane swords against him.  ECF No. 56 ¶¶ 26-29.

The third claim is brought against Judge Watches only. Sibley challenges N.Y. Penal Law § 400.00(1)'s handgun licensing criteria, specifically subsections (b) and (n), which require

applicants to have "good moral character" and present no "good cause"[3] to deny a handgun license. He seeks a judicial declaration that these provisions, both facially and as applied to him, are overbroad, void for vagueness, and violative of his equal protection rights.[4]

### III.   First and Second Claims: Constitutionality of N.Y. Penal Law § 265.01's Ban on Cane Swords

Sibley claims that N.Y. Penal Law § 265.01(1)'s cane sword ban violates his Second Amendment right to bear arms.  Defendant Baker moves to dismiss Sibley's first two claims on the basis that he lacks standing to bring a pre-enforcement challenge to the cane sword ban.  *See* ECF Nos. 59, 64.

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Adam v. Barr*, 792 F. App'x 20, 21 (2d Cir. 2019) (summary order) (citation omitted).  It cannot be "conjectural or hypothetical." *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).  "Where, as here, a plaintiff asserts injury based on the threat of prosecution, he need not 'expose himself to liability before bringing suit to challenge . . . the constitutionality of the law threatened to be enforced,'" *id.* (quoting *Susan B. Anthony List*, 573 U.S. at 159), but he must make plausible allegations that he "intends to engage in conduct proscribed by a statute, and [that] 'there exists a credible threat of prosecution thereunder.'" *Adam*,

---

[3] Although Sibley purports to challenge N.Y. Penal Law § 400.00(1)(n)'s "good cause" requirement, he makes no specific arguments directed at this provision, focusing instead on the "good moral character" requirement.  Further, Judge Watches denied his application on the basis that he failed to demonstrate "good moral character."  *See* ECF No. 56 at ¶ 21.  To the extent Judge Watches mentioned "good cause," it was only to state that good cause exists to deny a permit where the applicant lacks the proper character to possess a weapon.  ECF No. 56 at 25.  Accordingly, the Court focuses its analysis on the "good moral character" standard.

[4] Sibley's Third Amended Complaint also asserts a Privileges and Immunities claim, but he has since withdrawn it. *See* ECF No. 63 at 18.  Additionally, in his opposition papers, Sibley purports to assert a procedural due process claim based on alleged evidentiary and procedural violations that occurred during the application process and hearing.  *See* ECF No. 63 at 9-11.  However, he makes no allegations specific to such a claim in his Third Amended Complaint, and in any case, this Court previously dismissed his procedural due process claim with prejudice.  *See Sibley v. Watches*, No. 19-CV-6517-FPG, 2020 U.S. Dist. LEXIS 88143, at *32 (W.D.N.Y. May 18, 2020).  Accordingly, the Court does not consider this purported claim.

792 F. App'x at 22 (quoting *Susan B. Anthony List*, 573 U.S. at 160).  Here, as Baker argues, Sibley has not made the necessary allegations.

First, Sibley never alleges that he intends to engage in conduct proscribed by N.Y. Penal Law § 265.01(1).  He alleges that he has used and possessed a cane sword since the 1970s, but that he voluntarily removed it from New York during the course of his handgun license application. ECF No. 56 ¶¶ 9, 13.  This demonstrates compliance with—not an intention to violate—N.Y. Penal Law § 265.01(1).

Second, Sibley does not allege a credible threat of prosecution.  Although courts generally presume that the government will enforce its laws, "the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing." *Adam*, 792 F. App'x at 22; *see also id.* at 23 ("[T]hat presumption, in and of itself, is not sufficient to confer standing, as courts also consider the extent of that enforcement in determining whether a credible threat of prosecution exists.").  In *Adam*, the plaintiff asserted "that because he intends to use marijuana, and such usage is against a law that the federal government enforces, he could be prosecuted." *Id.* But he failed to allege any particular circumstances that could support a credible threat of prosecution, such as that the statute had been enforced against him in the past, or that anyone has threatened him with prosecution. *Id.* at 22-23.  The Second Circuit found that he failed to allege standing. *Id.* at 23.

Similarly here, Sibley's assertion of standing rests on the mere existence of N.Y. Penal Law § 265.01(1).  He does not allege that the statute has been enforced against him in the past or that anyone threatened him with prosecution.  To the contrary, he alleges that the Deputy who interviewed him during his background check warned him to get rid of his handguns while his license application was pending, but he never alleges that the Deputy so admonished him as to his

8

cane sword.  *See* ECF No. 56 ¶ 13; *cf. Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (finding credible threat of prosecution where the town announced its intention to enforce an ordinance against the plaintiffs and warned them that failure to comply might be punishable by fine, imprisonment, or both).  Accordingly, the Court finds that Sibley has failed to sufficiently allege standing to challenge the constitutionality of N.Y. Penal Law § 265.01(1)'s cane sword ban.  Consequently, Sibley's first and second claims are DISMISSED.

## IV.    Third Claim: Constitutionality of N.Y. Penal Law § 400.00(1)(b)'s "Good Moral Character" Requirement

In his third claim, Sibley challenges N.Y. Penal Law § 400.00(1)(b)'s "good moral character" requirement as overbroad, void for vagueness, and violative of his equal protection rights.  The Court finds that he fails to state a claim under any of these doctrines.

### A.    Overbreadth Challenge

"Overbreadth challenges are a form of First Amendment challenge" which allow a party to claim that a statute "would violate the First Amendment rights of hypothetical third parties if applied to them."  *United States v. Smith*, 945 F.3d 729, 736 (2d Cir. 2019) (quoting *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006)).  "All overbreadth challenges are therefore facial challenges."  *United States v. Thompson*, 896 F.3d 155, 163 (2d Cir. 2018).  Facial challenges are generally disfavored, but because "the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court," facial overbreadth challenges are permitted in the First Amendment context.  *Dickerson v. Napolitano*, 604 F.3d 732, 742 (2d Cir. 2010); *see also Farrell*, 449 F.3d at 499 ("The purpose of an overbreadth challenge is to prevent the chilling of constitutionally protected conduct, as prudent citizens will avoid behavior that *may* fall within the scope of a prohibition, even if they are not entirely sure whether it does.").

Under the "overbreadth doctrine, a statute is facially invalid if it prohibits a *substantial* amount of protected speech." *United States v. Williams*, 553 U.S. 285, 304 (2008) (emphasis added). An overbreadth challenger "must demonstrate from the text of [the law] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally." *Thompson*, 896 F.3d at 163 (quoting *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)). This substantiality standard is "vigorously enforced," *id*., and because the overbreadth doctrine's purpose is to prevent the chilling of protected speech, "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Here, the statute at issue, N.Y. Penal Law § 400.00, regulates handgun possession, not speech. *See N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 883 F.3d 45, 67 (2d Cir. 2018) ("Typically a person possessing a gun has no intent to convey a particular message, nor is any particular message likely to be understood by those who view it."); *Smith*, 945 F.3d at 735 (rejecting argument that federal laws controlling the import and export of weapons implicate the First Amendment). An overbreadth challenge to N.Y. Penal Law § 400.00 is therefore not likely to succeed. *See Libertarian Party v. Cuomo*, 300 F. Supp. 3d 424, 439 n.11 (W.D.N.Y. 2018) (rejecting overbreadth challenge to a different provision of § 400.00 and noting that the Second Circuit has said that there is no overbreadth argument in the Second Amendment context), *aff'd*, 970 F.3d 106 (2d Cir. 2020).

Sibley attempts to tie in the First Amendment by suggesting that N.Y. Penal Law § 400.00 might chill the protected speech of potential handgun license applicants who anticipate having to demonstrate their "good moral character" but fear that their First Amendment-protected conduct

might be interpreted as reflecting a poor moral character to a licensing officer.[5]  But Sibley fails to allege or argue that any such incidental effect is "substantial" as compared to the statute's "plainly legitimate" purpose of regulating handgun possession.  *See, e.g.*, *Bobbit v. Marzan*, No. 16 Civ. 2042 (AT), 2017 U.S. Dist. LEXIS 161478, at *63 (S.D.N.Y. Sep. 28, 2017) (dismissing overbreadth challenge to law regulating controlled substances because any alleged burden on First Amendment associational rights was "outweighed by the law's legitimate purpose"); *United States v. Hashmi*, No. 06 Crim. 442 (LAP), 2009 U.S. Dist. LEXIS 108321, *35-56 (S.D.N.Y. Nov. 17, 2009) ("Even if it were shown that the law affects some activity that otherwise receives First Amendment protection, [Plaintiff] does not show that these potential interferences are substantial in view of the law's legitimate purpose."); *Condon v. Wolfe*, No. 1:03cv897, 2006 U.S. Dist. LEXIS 113769, at *75 (S.D. Ohio May 25, 2006) (dismissing overbreadth challenge to statute prohibiting abuse of corpses; rejecting argument that the statute's reference to "community mores" would be likely to have a chilling effect because the statute was content-neutral and regulated conduct).

Sibley's lone allegation that the "good moral character" requirement will chill his own future protected conduct, ECF No. 56 ¶ 25, is not enough to state a facial challenge.  "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).  Accordingly, Sibley's First Amendment overbreadth challenge is DISMISSED.

---

[5] This is a generous interpretation of Sibley's allegations, which are in fact limited to his own circumstances and read more as an as-applied challenge.  He makes no allegations and develops no argument that "the statute would violate the First Amendment rights of hypothetical third parties if applied to them," *Smith*, 945 F.3d at 736, let alone substantially so.

### B.      First Amendment As-Applied Challenge

If a facial overbreadth challenge to a law fails, applications of the law "that violate the First Amendment can still be remedied through as-applied litigation." *Hicks*, 539 U.S. 124; *see also Thompson*, 896 F.3d at 165 n.9, 168 (rejecting overbreadth challenge but noting that if an arguably unlawful enforcement of the law were ever pursued, it could be the subject of an as-applied challenge).

Here, Sibley alleges that Judge Watches denied his handgun license application on the basis that the "ideas and viewpoints as expressed in his litigations and petitions" demonstrated his poor moral character.  ECF No. 56 ¶¶ 32-33, 37-38.

The Court is not persuaded that Sibley states a First Amendment claim.  Sibley does not identify—and Judge Watches's decision does not reference—any ideas or viewpoints that Sibley expressed.  Rather, Judge Watches found that Sibley's suspension from the practice of law due to his vexatious litigation practices reflected a disrespect for the legal system and the judiciary.  ECF No. 56 at 26-27; *see generally Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1298 (11th Cir. 2002) ("A vexatious litigant does not have a First Amendment right to abuse official processes . . . ."); *Ringgold-Lockhart v. Cty. of L.A.*, 552 F. App'x 648, 649 (9th Cir. 2014) (unpublished op.) (dismissing § 1983 discrimination claim based on application of vexatious litigation statute where plaintiff alleged no facts pointing to viewpoint discrimination).

Accordingly, the Court finds that Sibley has failed to state a First Amendment as-applied claim, and thus his as-applied challenge is DISMISSED.

### C.      Vagueness Challenge

 "The vagueness doctrine is a component of the right to due process." *Farrell*, 449 F.3d at 485. "It addresses concerns about (1) fair notice and (2) arbitrary and discriminatory prosecutions." *Skilling v. United States*, 561 U.S. 358, 412 (2010).  The vagueness doctrine requires laws affecting

life, liberty, or property interests to "be crafted with sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them.'"  *Piscottano v. Murphy*, 511 F.3d at 280 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)); *see also Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.").

### 1.   As-Applied v. Facial Vagueness Challenges

Whether a party may challenge a law as facially vague or may only challenge the law as applied to his own circumstances depends on whether or not the challenged law infringes on fundamental rights, particularly First Amendment rights.

If the challenged law does not implicate First Amendment or other fundamental rights, a party may only bring a facial challenge if he can first succeed on an as-applied challenge.  *See Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494-95 (1982) (explaining that, if an "enactment implicates no constitutionally protected conduct," courts should "examine the complainant's conduct before analyzing other hypothetical applications of the law" because "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"); *Faisal Nabin Kashem v. Barr*, 941 F.3d 358, 375 (9th Cir. 2019) (explaining that, with respect to statutes that do not threaten fundamental rights, a challenger "who cannot sustain an as-applied vagueness challenge to a statute cannot be the one to make a facial vagueness challenge to the statute").

If a party succeeds on his as-applied vagueness challenge such that he can move forward with a facial challenge, to succeed on the facial challenge, the party must "demonstrate that the

law is impermissibly vague in *all* of its applications." *Farrell*, 449 F.3d at 495 (quoting *Hoffman Estates,* 455 U.S. at 497 (1982)) (emphasis added).  In other words, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Copeland v. Vance*, 893 F.3d 101, 110 (2d Cir. 2018) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).[6]

However, where a law infringes on fundamental rights—particularly First Amendment rights—courts permit standalone facial vagueness challenges.  *Copeland*, 893 F.3d. at 111 & n.2; *see also Farrell*, 449 F.3d at 485 (noting that "vagueness in the law is particularly troubling when First Amendment rights are involved"); *NAACP v. Button*, 371 U.S. 415, 433 (1963) (observing that First Amendment "freedoms are delicate and vulnerable, as well as supremely precious in our society").

To succeed on a facial vagueness challenge of a law that implicates fundamental rights, the challenger must show that the law "reaches a substantial amount of constitutionally protected

---

[6] There is some uncertainty about the "no set of circumstances" standard and the requirement that a facial challenger of a non-fundamental rights law must first bring a successful as-applied challenge.  In *Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court declared a clause of a criminal statute—"which did not plainly implicate a fundamental constitutional right," *United States v. Moss*, No. 18-CR-316 (JCH), 2019 U.S. Dist. LEXIS 118823, at *5 (D. Conn. July 17, 2019)—"to be impermissibly vague without requiring the defendant to first show that the clause was vague as applied to him."  *United States v. Cook*, 914 F.3d 545, 551 (7th Cir. 2019).  The Supreme Court in *Johnson* acknowledged that some of its opinions have used the "no set of circumstances" and "vague in all of its applications" language, but distanced itself from that standard by saying that "although statements in some of our opinions could be read to suggest otherwise, our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp."  *Johnson*, 576 U.S. at 602.  Some courts have interpreted *Johnson* as "put[ting] to rest the notion—found in any number of pre-*Johnson* cases—that a litigant must show that the statute in question is vague in all of its applications in order to successfully mount a facial challenge."  *Cook*, 914 F.3d at 545.  However, since *Johnson* (and a similar, related case, *Sessions v. Dimaya*, 138 S. Ct. 1204, 1207 (2018)), the Second Circuit has adhered to the "no set of circumstances" standard.  *See Copeland*, 893 F.3d at 110, 111 n.2.  In *Copeland*, the Second Circuit interpreted *Johnson* as permitting a statute with some valid applications to be facially invalidated in *exceptional circumstances. Id.* at 111 n.2; *see also Moss*, 2019 U.S. Dist. LEXIS 118823, at *9 (reading *Copeland* to stand for the proposition that any expansion of the availability of facial challenges was limited to cases involving unique circumstances like those in *Johnson*).  *Johnson* was unique because the statute at issue in that case—which allowed sentencing enhancements for defendants with three prior convictions for "violent" felonies—required "courts to look not at the actual conduct underlying the defendant's prior conviction but rather at the archetypal version of the offense and then to consider whether the risk of injury posed by that version was sufficient to render the crime violent."  *Cook*, 914 F.3d at 553.  The Supreme Court found that the "indeterminacy of [this] wide-ranging inquiry" invited arbitrary enforcement and rendered the statute vague.  *Johnson*, 576 U.S. at 596.  Because the instant case does not present the type of unique circumstances present in *Johnson*, the Court applies the "not set of circumstances" standard to the extent that N.Y. Penal Law § 400.00 does not implicate fundamental rights.

conduct." *Farrell*, 449 F.3d at 496 (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983)).

In other words, the law will not be facially invalidated unless its chilling effect on constitutionally

protected conduct is "both real and substantial."  *Id.* (quoting *Young v. Am. Mini Theatres, Inc.*,

427 U.S. 50, 60 (1976)).   In this way, a facial vagueness challenge is similar to an overbreadth

challenge.  *Krukowski v. Swords*, 15 F. Supp. 2d 188, 200 (D. Conn. 1998) (describing facial

vagueness and overbreadth challenges as "logically related").

"A statute can be impermissibly vague for either of two independent reasons.  First, if it

fails to provide people of ordinary intelligence a reasonable opportunity to understand what

conduct it prohibits.   Second, if it authorizes or even encourages arbitrary and discriminatory

enforcement."  *Farrell*, 449 F.3d at 485 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

"Thus, all vagueness challenges—whether facial or as-applied—require [courts] to answer two

separate questions: whether the statute gives adequate notice, and whether it creates a threat of

arbitrary enforcement."  *Id.*

### 2.      As-Applied Vagueness Challenge

"Because [it] must examine the complainant's conduct before analyzing other hypothetical

applications of the law, [the court] turn[s] first to [Sibley's] as-applied challenge."  *Rubin v.

Garvin,* 544 F.3d 461, 468 (2d Cir. 2008) (internal quotation marks and citation omitted)); *see also

Farrell*, 449 F.3d at 485.

### a)      Fair Notice

"The first way that a law may be unconstitutionally vague as applied to the conduct of

certain individuals is 'if it fails to provide people of ordinary intelligence a reasonable opportunity

to understand what conduct it prohibits.'"  *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179,

187 (2d Cir. 2010) (quoting *Hill*, 530 U.S. at 732).

15

In an as-applied challenge, this evaluation "must be made with respect to the litigant's actual conduct." *Id.* at 189 (citation and brackets omitted).   In other words, in an as-applied vagueness challenge, "a court may analyze whether a reasonable person would understand that the litigant's conduct was prohibited," but the court should focus on "the litigant's *actual* conduct, and . . . should not analyze whether a reasonable person would understand that certain hypothetical conduct or situations violate the statute." *Id.*

Additionally, this evaluation must be made with respect to "the context in which the regulation was enforced." *Perez v. Hoblock*, 368 F.3d 166, 175-76 (2d Cir. 2004); *see also Rock of Ages Corp. v. Sec'y of Labor*, 170 F.3d 148, 156 (2d Cir. 1999) (holding that "regulations satisfy due process as long as a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require.").

Sibley ignores both of these principles.

First, he never alleges or argues that the "good moral character" requirement fails to notify reasonable people that conduct *like his* would result in the denial of a handgun license.   He generally argues that the "good moral character" requirement "is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits and as such fails to meet the requirements of the Due Process Clause."   ECF No. 63 at 12.   But this reads like a facial challenge.   An as-applied challenge must address the litigant's *actual conduct*.   *See, e.g.*, *Rothenberg v. Daus*, No. 08-CV-567 (SHS), 2014 U.S. Dist. LEXIS 105598, *28-29 (S.D.N.Y. July 31, 2014) ("[P]laintiffs' vagueness challenge depends upon whether a reasonable person familiar with the 'good moral character' standard,  and with its purpose, would have expected plaintiffs' conduct to prompt their

license revocations. . . . The issue at bar, therefore, is the extent to which *plaintiffs' conduct* fell within the good moral character standard.").

Second, Sibley makes no attempt to construe the "good moral character" standard with respect to the context in which it was enforced.  He merely asserts that the ordinary meaning of "good moral character" is "so imprecise as to render that phrase vague and overbroad thus making it unconstitutional."  ECF No. 63 at 15.  He argues that the concept of morality is subjective and that what a "Licensing Officer may consider 'immoral' about Sibley may well be considered 'moral' to Sibley and others of his ilk."  *Id*. at 13.

But in construing statutory terms, courts are not limited to the ordinary meaning.  *VIP of Berlin*, 593 F.3d at 189.  Courts also look to the statute's "stated purpose," *id.*; "the specific context in which that language is used, and the broader context of the statute as a whole," *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016); and judicial constructions of the statute.  *Copeland*, 893 F.3d at 115.

Here, N.Y. Penal Law § 400.00 is part of New York's handgun licensing scheme and its purpose is to "promote public safety and prevent crime."  *Aron v. Becker*, 48 F. Supp. 3d 347, 374 (N.D.N.Y. 2014); *see also Matter of Corbett v. City of N.Y.*, 73 N.Y.S.3d 568, 570 (App. Div. 1st 2018) (explaining that the purpose of the N.Y Penal Law § 400.00 is to "insur[e] the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument.").

The statutory provisions surrounding the "good moral character" requirement support this purpose.   The "good moral character" requirement is found among numerous other requirements "limiting pistol permits to individuals [with] no criminal or mental health problems."  *Aron*, 48 F.

Supp. 3d at 374; *see also Kuck v. Danaher*, 822 F. Supp. 2d 109, 129 (D. Conn. 2011) ("The principle of 'ejusdem generis' mandates that where a general term follows an enumeration of terms with specific meaning, the general term is expected to apply to matters similar to the specifically enumerated terms."). "When viewed in context, the 'good moral character' requirement is not some esoteric standard devoid of parameters, but rather is a measure used to assess the suitability of the applicant to gain licensure to possess a potentially deadly weapon like a pistol," and "is clearly cabined by concerns for whether the applicant would present a potential risk to the safety and security of the public if granted a license to possess a pistol." *Id.*

Finally, New York courts have interpreted the "good moral character" standard to mean "fitness to possess a firearm." *Matter of Zedek v. Kelly*, 37 Misc 3d 1208(A), 2012 NY Slip Op. 51936(U), *2 (N.Y. Sup. Ct. 2012). New York courts have upheld license denials under the "good moral character" standard in a range of circumstances, from applicants with criminal convictions for offenses involving public safety, to applicants who committed less dangerous offenses. *Compare, e.g.*, *Abekassis v. New York City*, No. 19 Civ. 8004 (PAE), 2020 U.S. Dist. LEXIS 141353, at *37 (S.D.N.Y. Aug. 7, 2020) (explaining that "felony convictions, established mental health or substance abuse problems, or allegations of domestic violence" are "paradigmatic 'red flags' [that] are often cited as a basis for denying a firearms license"), *with Barrett v. O'Neill*, 2019 NY Slip Op. 30497(U), *3 (N.Y. Sup. Ct. 2019) (upholding denial where applicant was convicted of the misdemeanor of petit larceny for commingling attorney escrow funds with personal funds and was consequently disbarred as an attorney).

In short, Sibley fails to allege that the "good moral character" standard—as construed by New York courts—provides insufficient notice that his particularized conduct would result in the

denial of a handgun license.[7]  *See generally Ortiz v. N.Y. State Parole in Bronx, N.Y.*, 586 F.3d 149, 159 (2d Cir. 2009) ("The fair warning principle is violated '[i]f a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'") (quoting *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001)). Accordingly, the Court finds that he has failed to state an as-applied vagueness claim under the "fair notice" requirement.

### b)      Enforcement Standards

> The second way in which a statute can be found unconstitutionally vague is if the statute does not provide explicit standards for those who apply it.  When analyzing this issue, a court may determine that a statute provides adequate guidance if either: (1) the statute as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement; or (2) even in the absence of such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute.

*VIP of Berlin*, 593 F.3d at 191 (citations, internal quotation marks, and brackets omitted).

Here, Sibley alleges that, in denying his license application, Judge Watches discriminated against him based on his "ideas and viewpoints as expressed in his litigations and petitions,"  ECF No. 56 ¶ 37, and that the "good moral character" requirement's vagueness invited this discriminatory enforcement.  *See* ECF No. 63 at 13 (arguing that "requiring a citizen to exhibit 'good moral character' in order to be eligible for a pistol permit allows Defendant Watches to engage in 'viewpoint-based' definition of 'good moral character.'").  Sibley fails to state a claim for three reasons.

First, Judge Watches's written decision refutes Sibley's claim that he engaged in viewpoint discrimination.  Judge Watches found that Sibley's suspension from the practice of law in several

---

[7] Nor has Sibley alleged a freestanding Second Amendment claim that conduct like his cannot constitutionally justify disarmament, and thus the Court makes no comment on the merit of such a claim.

jurisdictions—resulting from his vexatious litigation practices—demonstrated a disrespect for the legal system and the judiciary and cast doubt upon his ability to "follow specific laws, rules and regulations" and "behave in an ethical and responsible manner necessary to be granted a pistol permit." ECF No. 56 at 25. Sibley points to nothing in the decision suggesting that Judge Watches considered any of his ideas or viewpoints.

Second, as explained above, Sibley misconstrues the "good moral character" requirement to be broader than it is. While New York licensing officers are vested with "broad discretion" in evaluating applications, *see, e.g.*, *Parker v. Randall*, 990 N.Y.S. 2d 402 (App. Div. 4th Dep't 2014), the "good moral character" requirement does not give them as much discretion as Sibley suggests. Licensing officers are not vested with discretion to deny handgun licenses based on their idiosyncratic conceptions of morality in general. Rather, according to New York courts, licensing officers are meant to examine an applicant's fitness to possess a dangerous weapon. *See Aron*, 48 F. Supp. 3d at 374; *Matter of Zedek*, 2012 NY Slip Op. 51936(U), *2. Sibley does not articulate how the "good moral character" requirement provides insufficient enforcement standards under the narrower construction New York courts have placed on it.

Third, even in the absence of sufficiently clear enforcement standards, a void-for-vagueness challenge will still fail if the challenger's conduct "falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." *VIP of Berlin*, 593 F.3d at 191 (quoting *Farrell*, 449 F.3d at 494). Here, Sibley fails to allege that his conduct was outside of the core of the "good moral character" standard, and his only allegation of discriminatory enforcement is based on the faulty premise that Watches considered the "ideas and viewpoints." He does not challenge as arbitrary or discriminatory Judge Watches's

finding that his vexatious litigation and resultant bar license suspensions demonstrate a lack of good moral character.  Thus, the Court finds that Sibley fails to state an as-applied vagueness claim under the "enforcement standards" requirement.

Accordingly, Sibley's as-applied vagueness claim is DISMISSED.

### 3.    Facial Vagueness Challenge

As explained above, the standard for succeeding on a facial vagueness challenge is "not entirely settled," *Copeland*, 893 F.3d at 111, and depends on whether the statute infringes on fundamental rights.

In *Libertarian Party*, 300 F. Supp. 3d at 440, this Court recently considered a facial vagueness challenge to N.Y. Penal Law § 400.00's "good moral character" requirement and applied the "no set of circumstances" analysis.  The Court found that there are "many sets of circumstances in which the Section 400.00 standards would be valid if applied."  *Id.* at 440.  The Second Circuit affirmed, holding that the "good moral character" standard could be comprehensibly applied to a variety of circumstances.  *Libertarian Party v. Cuomo*, 970 F.3d 106, 126 (2d Cir. 2020).  Thus, to the extent that the "no set of circumstances" test is applicable here, the Court finds that Sibley fails to state a facial vagueness claim.

However, the plaintiffs in *Libertarian Party* did not claim that N.Y. Penal Law § 400.00 violates the First Amendment, as Sibley does here: he claims that the "good moral character" standard allows licensing officers to viewpoint discriminate.  To mount a facial vagueness challenge to a law implicating First Amendment rights, a party must show that the challenged statute "will have a *substantial* chilling effect on protected conduct."  *Farrell*, 449 F.3d at 497 (emphasis added).  For the same reasons discussed above with respect to the First Amendment overbreadth challenge, the Court finds that Sibley has not done so.  *See id*. at 499 (explaining that

the analysis of an overbreadth challenge is essentially the same as the analysis of a facial vagueness challenge). He makes no allegations or argument that the "good moral character" standard would chill anyone's protected conduct but his own.

"Of course, the First Amendment is implicated if even one person's constitutionally protected conduct is chilled; any injury to First Amendment rights is a matter of profound concern to the courts." *Farrell*, 449 F.3d at 497. And "a plaintiff seeking to bring a vagueness challenge need show only the risk of chilling, not an actual chilling effect." *Id.* at 498. But here, Sibley's only allegations of a risk of chilling effect are based on his misguided notion that Judge Watches engaged in viewpoint discrimination against him. Although it is perhaps conceivable that the "good moral character" requirement could cause a potential applicant to limit some protected speech that he thinks might make him look bad to a licensing officer, or that a licensing officer could consider some protected speech in denying a license, Sibley fails to allege that this risk is "substantial enough to warrant facial invalidation." *United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 184 (E.D.N.Y. 2008) (rejecting facial vagueness challenge where challenger's hypotheticals of applications that could offend the First Amendment were unlikely). Accordingly, the Court finds that Sibley fails to state a claim of facial vagueness, and this claim is DISMISSED.

### D.    Equal Protection Challenge

Sibley asserts two separate equal protection claims.

First, Sibley alleges that New York's Secure Ammunition and Firearms Enforcement ("SAFE") Act seals handgun license application information from public view and thus prevents him from determining whether he was treated differently than other similarly situated applicants.[8]

---

[8] Sibley never alleges that he was treated differently than any other similarly situated individuals and thus fails to state an equal protection claim on that basis. The Court understands that Sibley believes he cannot state such a claim without discovery that is blocked by the SAFE Act, but "discovery is authorized solely for parties to develop the facts

As an initial matter, the Court did not authorize Sibley to bring this claim.  The SAFE Act claim was not included in Sibley's prior complaints, and when the Court granted Sibley leave to amend, it only authorized him to replead existing claims.  *See Sibley v. Watches*, No. 19-CV-6517-FPG, 2020 U.S. Dist. LEXIS 104999, at *3-5 (W.D.N.Y. June 16, 2020)

Additionally, Sibley's SAFE Act claim does not state a cognizable equal protection claim. He does not contend that the SAFE Act treats him differently from other handgun license applicants, only that its disclosure provisions prevent him from *discovering* whether he was treated differently than other applicants.  *See* ECF No. 63 at 17 (arguing that "due to the SAFE Act, it is presently undeterminable as to whether Sibley has been treated 'in the same way by the State' because proof of that requirement is denied to Sibley as the SAFE Act has sealed those records from view"); ECF No. 56 at 12 (alleging that "[u]pon information and belief, and after a reasonable opportunity for discovery, Sibley will establish that New York's Secure Ammunition and Firearms Enforcement (SAFE) Act, prevents Sibley from establishing that he was treated differently than similarly situated individuals as New York has sealed such information from public view.").

Second, Sibley claims that N.Y. Penal Law § 400.00 violates his equal protection rights because "Downstate applicants ha[ve] their applications decided by unelected-executive branch actors in an administrative hearing yet the Upstate New York applicants ha[ve] their applications decided by elected-judicial branch actors in a judicial hearing."  ECF No. 63 at 7.  Further, Downstate applicants with executive branch licensing officers are allowed an administrative

---

in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim."  *Podany v. Robertson Stephens, Inc*., 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004); *see also Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015) (affirming dismissal of defamation claim over plaintiff's argument that it would be impossible to plausibly plead malice without discovery); *Cannioto v. Simon's Agency, Inc*., No. 19-CV-6686-FPG, 2020 U.S. Dist. LEXIS 114279, at *5 (W.D.N.Y. June 30, 2020) (explaining that plaintiffs may allege facts upon information and belief where the facts are peculiarly within defendant's possession and control).

appeal and two Article 78 review proceedings, whereas Upstate applicants with judicial licensing officers are only allowed one Article 78 review proceeding.  *Id.* at 17-18.

Sibley does not make this claim in his Third Amended Complaint; it only appears in his opposition to Defendants' motion to dismiss.  Consequently, the Court will not consider it.  *See, e.g.*, *Hanley v. Zucker*, No. 15-cv-5958 (KBF), 2016 U.S. Dist. LEXIS 95615, at *26 n.14 (S.D.N.Y. July 21, 2016) *Kiryas Joel All. v. Vill. of Kiryas Joel*, 2011 U.S. Dist. LEXIS 137074, at *28 n.8 (S.D.N.Y. Nov. 28, 2011) (both refusing to consider new claims in opposition to motions to dismiss).  Accordingly, the Court finds that Sibley fails to state an equal protection claim, and this claim is DISMISSED.

## V.      Individual Defendants' Motion to Dismiss

Defendants Baker, Cuomo, and Watches each also move to dismiss the claims against them based on immunity.

Defendant District Attorney Baker moves to dismiss Sibley's claims against him based on absolute prosecutorial immunity.  But absolute immunity only bars individual-capacity suits and here, Sibley has only sued Baker in his official capacity.  *See Napolitano v. Saltzman*, 315 F. App'x 351, 351 (2d Cir. 2009) (summary order) (explaining distinction between immunities available in official-capacity and personal-capacity suits); *see also Avitabile v. Beach*, 277 F. Supp. 3d 326, 332 (N.D.N.Y. 2017) (finding that prosecutor was not entitled to immunity in individual-capacity suit challenging N.Y. Penal Law § 265.01).  The Court therefore denies Defendant Baker's motion to dismiss on this basis.

Judge Watches moves to dismiss Sibley's claim against him based on Eleventh Amendment immunity.  "The Eleventh Amendment confirms the sovereign status of the States by shielding them" and their agents from suit in federal court "absent their consent."  *Frew v.*

24

*Hawkins*, 540 U.S. 431, 437 (2004); *see also Caruso v. Zugibe*, 646 F. App'x 101, 104 (2d Cir. 2016) (summary order).  But an exception to this rule, arising from *Ex parte Young*, 209 U.S. 123, 159-60 (1908), "permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew*, 540 U.S. at 437.  "The purpose of this exception is to 'ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law.'" *Blair v. Suny Univ. at Buffalo*, No. 17-CV-1317S, 2020 U.S. Dist. LEXIS 23661, at *10 (W.D.N.Y. Feb. 11, 2020) (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269 (1997)).  Thus, suits against state officials seeking relief "designed to end a continuing violation of federal law" and "vindicate the federal interest in assuring the supremacy of that law" are permitted under *Ex Parte Young*, but those seeking "relief tantamount to an award of damages for a past violation of federal law, even though styled as something else," are not. *Papasan v. Allain*, 478 U.S. 265, 278 (1986) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

To determine whether a suit against a state official is allowed under *Ex Parte Young*, "a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002) (quoting *Coeur d' Alene Tribe*, 521 U.S. at 296) (O'Connor, J., concurring)).  Here, Sibley seeks declaratory relief.  He asks the Court to declare that N.Y. Penal Law § 400.00(1) is unconstitutional on its face and as applied to him.

Judge Watches argues that the relief Sibley seeks is retrospective, since Watches has already denied Sibley's license application.  *See Aron*, 48 F. Supp. 3d 367 (finding that pistol permit applicant had not alleged "viable claims seeking prospective equitable relief sufficient to invoke the doctrine of *Ex Parte Young*" against licensing officer-judge).[9]  The Court disagrees.

---

[9] The *Aron* court did not discuss the effect of plaintiff's constitutional attacks on N.Y. Penal Law § 400.00 in its Eleventh Amendment immunity analysis.

Sibley is not simply asking the Court to declare that Judge Watches violated his constitutional rights in the past, nor is he seeking damages or some other sort of compensatory relief affecting the financial liability of New York State.  *See Verizon Md.*, 535 U.S. 646 (explaining that, while plaintiff's request for declaratory relief sought a declaration of both past and future ineffectiveness of state official's action, it did not impose a monetary loss upon the state and in that sense was indistinguishable from injunctive relief); *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999) ("When the relief sought is 'retroactive,' it usually takes the form of money damages, and thereby significantly implicates the governmental entity itself."); *see also, e.g.*, *Clark v. Dinapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (summary order) (holding that request for injunctive and declaratory relief for due process violations stemming from a retirement benefits hearing did not fall within *Ex Parte Young*); *Doe v. Haas*, 427 F. Supp. 3d 336, 347-48 (E.D.N.Y. 2019) (finding that student's discrimination complaint arising from a disciplinary hearing only sought retroactive relief where it sought a declaration that school violated student's due process rights and rights to be free from gender discrimination, and requested an injunction requiring information regarding the disciplinary proceeding to be removed from his record and transcript); *Trapani v. Dagostino*, No. 9:18-CV-0805 (DNH/CFH), 2019 U.S. Dist. LEXIS 35379, at *13 (N.D.N.Y. Mar. 6, 2019) (characterizing relief as retrospective where plaintiff merely sought a declaration that prosecutor's statements to grand jury violated his First and Fourth Amendment rights); *Kim v. Dep't of Licensing*, No. CV06-1516 MJP, 2007 U.S. Dist. LEXIS 21915, at *7 (W.D. Wash. Mar. 27, 2007) (holding that plaintiff's challenge to the constitutionality of statutes was "more properly characterized as retrospective than prospective" and was "an attempted end-run around the Eleventh Amendment bar" where plaintiff admitted that he believed he would be entitled to a refund if the statutes were overturned).

Rather, here, Sibley seeks a declaration that a state statute, both facially and as applied to him, is unconstitutional.  Courts have considered this type of relief to be prospective.  *See S.F. Cty. Democratic Cent. Comm. v. March Fong Eu*, 826 F.2d 814, 824-25 (9th Cir. 1987) ("[T]he Eleventh Amendment does not bar an action seeking prospective relief from enforcement of an unconstitutional statute. Because plaintiffs do not seek damages, but only declaratory and injunctive relief, *Ex parte Young* is directly controlling." (internal citation omitted)); *Dubuc v. Mich. Bd. of Law Examiners*, 342 F.3d 610 (6th Cir. 2003) (holding that complaint challenging bar admission rules as unconstitutional both facially and as applied alleged an ongoing violation of federal law and "sought only injunctive and declaratory relief, not a money judgment or any other retrospective relief"); *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 912-13 (10th Cir. 2008) (holding that relief sought—"namely, a declaratory judgment that the laws at issue are unconstitutional and cannot be enforced to the detriment of [plaintiff], as well as an injunction prohibiting the defendants from enforcing those laws—is clearly prospective."); *Attwood v. Clemons*, 818 F. App'x 863 (11th Cir. 2020) (unpublished op.) ("An injunction is necessarily prospective, and the Supreme Court has held that declaratory relief is treated the same when it exposes the defendant to no more liability than an injunction." (citing *Verizon Md.*, 535 U.S. at 646)); *see also, e.g.*, *Morin v. Leahy*, 189 F. Supp. 3d 226, 236 (D. Mass. 2016) (permitting Second Amendment challenge to firearms licensing law to proceed against official who denied license application).

Accordingly, Judge Watches's motion to dismiss based on immunity is denied.[10]

Defendant Governor Cuomo also moves to dismiss Sibley's claims against him based on Eleventh Amendment immunity.  "Under *Ex parte Young*, the state officer against whom a suit is

---

[10] Judge Watches also raises judicial immunity as a ground for dismissal, but that doctrine applies to individual capacity claims, and here, Sibley has only sued Watches in his official capacity.

brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *Dairy Mart Convenience Stores, Inc. v. Nickel (In re Dairy Mart Convenience Stores, Inc.)*, 411 F.3d 367, 372-73 (2d Cir. 2005).  Here, Sibley merely alleges that Governor Cuomo is authorized to charge Sibley with a violation of N.Y. Penal Law § 265.01(1).  ECF No. 56 ¶ 25.  Merely alleging that an official has the general duty to enforce or execute the law is insufficient to overcome Eleventh Amendment immunity.  *See Wang v. Pataki*, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001); *Aron*, 48 F. Supp. 3d at 369.  Accordingly, Sibley's first and second claims are DISMISSED as to Defendant Cuomo based on Eleventh Amendment immunity.

## CONCLUSION

For the reasons stated, Defendants' motions to dismiss are GRANTED, and Sibley's motion to expedite, for judicial notice, and for a preliminary injunction is denied as MOOT.[11] Sibley's first and second claims are DISMISSED WITHOUT PREJUDICE but without leave to amend.  *See Liu v. United States Cong.*, No. 19-3054, 2020 U.S. App. LEXIS 33950, at *14 (2d Cir. Oct. 28, 2020) (explaining that dismissals for lack of standing must be without prejudice). The Clerk of Court is directed to terminate Defendants Baker, Corlett, and Cuomo as parties.

The Court will grant Sibley a final chance to amend only to replead his third claim against Judge Watches and only to cure the defects identified herein. *See Wright v. Ernst & Young, LLP*, No. 97 Civ. 2189 (SAS), 1997 U.S. Dist. LEXIS 13630, 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997) ("Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted. . . ."), *aff'd*, 152 F.3d 169 (2d Cir. 1998).  No new claims or parties may be

---

[11] Additionally, the motion for preliminary injunction seeks injunctive relief related to Sibley's right to possess a handgun in his home. ECF No. 65 at 1. The Court previously dismissed Sibley's claims related to in-home possession. Thus, a preliminary injunction related to in-home possession is not available. *See Wine v. Chapdelaine*, No. 3:18-cv-704 (VAB), 2020 U.S. Dist. LEXIS 126708, at *28 (D. Conn. July 19, 2020) (denying motion for preliminary injunction that was unrelated to plaintiff's remaining underlying claim); *DeBeers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (holding that a preliminary injunction is "appropriate to grant intermediate relief of the same character as that which may be granted finally").

added.  If Sibley wishes to amend, he shall file a Fourth Amended Complaint by November 30, 2020.  Judge Watches shall file any responsive motion or pleading within 15 days thereafter.

Additionally, because the only potentially remaining claim is related to the Article 78 proceeding pending in state court, the parties shall brief the Court on whether abstention is appropriate.[12]  *See, e.g.*, *Fender v. Wash. Cty.*, No. 14cv0142, 2014 U.S. Dist. LEXIS 52120, at *5 (W.D. Pa. Apr. 15, 2014) (explaining abstention doctrines pursuant to *Pullman*, *Burford*, and *Younger*,[13] and applying *Pullman* abstention where the resolution of a question of state law could potentially obviate the need for federal adjudication of plaintiff's constitutional claims); *Davis v. Grimes*, 9 F. Supp. 3d 12, 34 (D. Mass. 2014) (directing supplemental briefing on *Pullman* abstention); *Cayuse, LLC v. United States*, No. 2:14-CV-8093 (ES)(JAD), 2017 U.S. Dist. LEXIS 43435, at *16-17 (D.N.J. Mar. 24, 2017) (applying *Younger* abstention to firearms license challenge where application was pending in state court).  *But see Franza v. Stanford*, No. 16-CV-7635 (KMK), 2018 U.S. Dist. LEXIS 24385, at *30 (S.D.N.Y. Feb. 14, 2018) (denying abstention even though Article 78 proceeding was pending in state court).

Judge Watches shall incorporate his position on abstention  into his response to the Fourth Amended Complaint.  Sibley shall respond to Judge Watches' filing within 15 days, and Watches may reply within 15 days.

If Sibley fails to file a Fourth Amended Complaint by November 30, 2020, this case will be dismissed without further order of the Court, and the Clerk of Court shall close this case. Dismissal will be without prejudice to Sibley's ability to present his constitutional claims to the New York state court in his Article 78 proceeding.  *See Deacon's Bench, Inc. v. Hoffman*, 477

---

[12] The Court recognizes that both Sibley and Watches renounced abstention in response to the Third Amended Complaint.  However, abstention may be an  appropriate course of action.

[13] *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Younger v. Harris*, 401 U.S. 37 (1971).

N.Y.S.2d 447, 449 (App. Div. 3d Dep't 1984) ("[W]hen a complaint is dismissed for legal insufficiency or other defect in pleading, it does not act as a bar to commencement of a new action for the same relief unless the dismissal was expressly made on the merits . . ."); *Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010) ("[A] dismissal of an action by a New York court may not be considered a dismissal on the merits if it does not specifically state that the dismissal is on the merits") (citation and internal quotation marks omitted); *cf. McKinney v. New York*, 433 N.Y.S.2d 193, 196 (App. Div. 2nd Dept. 1980) ("[A] dismissal at the pleading stage is res judicata where the action is sought to be recommenced on the same pleading.").

IT IS SO ORDERED.

Dated: November 16, 2020
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court