IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
SEP - 1 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

Montgomery Blair Sibley,

     Plaintiff,

vs.

Chauncey J. Watches, *et al.*,

     Defendants.

_____/

Case No.: 6:19-cv-06517-FPG

**SIBLEY'S MOTION TO AMEND FOURTH AMENDED COMPLAINT**

  Plaintiff, Montgomery Blair Sibley ("Sibley"), pursuant to Federal Rules of Civil Procedure, Rules 15 and this Court's Order of August 22, 2022 [D.E. #93] moves to amend the Fourth Amended Verified Complaint. Allowing Sibley to file the Proposed Fifth Amended Verified Complaint for Declaratory Relief, Preliminary and Permanent Injunction, Damages and Other Equitable Relief would serve justice and promote judicial efficiency. Further, there would be no substantial or undue prejudice, bad faith, undue delay, or futility.

  The Fifth Amended Complaint seeks to: (i) restate legal claims based upon the Second Amendment clarification contained in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, No. 20-843 (June 23, 2022), (ii) add new claims given the July 1, 2022, enactment of the ironically-named "Concealed Carry Improvement Act" ("CCIA"), and (iii) add two new sets of Defendants given the Orders entered by the Justices of the Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department and the Judges of the New York Court of Appeals on Sibley's Pistol Permit Application.

## I.      FIRST & SECOND CLAIMS

In the First and Second Claims to the Proposed Fifth Amended Complaint, an unsigned copy of which is attached hereto pursuant to Local Rule 15(a), Sibley seeks Declaratory Relief in his claims against Defendant Watches given the holding in *Bruen* which radically changes the law regarding New York's "may issue" handgun licencing schemes.  In particular, the First Claim challenges the "good moral character" requirement of New York Penal Law, Section 400.00(1)(b).  Likewise, the Second Claim challenges the Defendant Watches' refusal to: (i) disclose the Sheriff's report on Sibley and (ii) permit Sibley's requested documentary discovery and subpoenas.

## II.     THIRD CLAIM

In the Third Claim, Sibley seeks Declaratory and Injunctive Relief by stating a claim against Defendants Governor Kathleen Hochul, Attorney Letitia James and New York State Police Superintendent Kevin P. Bruen given the holding of the Supreme Court in *Bruen*, claiming that New York Penal Law §265.01(1) & (2) coupled with the procedures found at New York Penal Law §400.00 *et seq.* are unconstitutional as New York does not have a "compelling governmental interest" to criminalize Sibley's handgun and cane sword possession both in his home and in public which, coupled with New York's permitting scheme which is calculated toward Second Amendment abusive ends, renders that "right" abused by §265.01(1) & (2) and §400.00 meaningless.

### III.   FOURTH & FIFTH CLAIMS

In the Fourth Claim, Sibley again seeks Declaratory and Injunctive relief against

Defendants Governor Kathleen Hochul, Attorney Letitia James and New York State Police

Superintendent Kevin P. Bruen challenged the done-in-one-day enactment of the CCIA with its

far-reaching implications to New Yorker's right to self-defense alleging it violated the New York

Constitution, Article III, §14 requirements of the so called "message of necessity" and notice of

the final form of the Bill to the members and the U.S. Constitution, Article IV, §4's requirement

of a Republican form of Government in New York.

In the Fifth Claim, Sibley again seeks Declaratory and Injunctive relief against

Defendants Governor Kathleen Hochul, Attorney Letitia James and New York State Police

Superintendent Kevin P. Bruen that the CCIA's: (i) "good moral character" requirement, (ii)

Personal and Social Media Disclosure requirement, (iii) Character References requirement, (iv)

Vague and Subjective Standards, (v) Sensitive Location requirements and (vi) Training

requirements, singularity and collectively violate Sibley's fundamental and federal constitutional

rights.

### IV.   SIXTH & SEVENTH CLAIMS

In the Sixth Claim, Sibley sues Defendants Erin M. Peradotto, John V. Centra, John M.

Curran, Brian F. DeJoseph who are the Justices of the Supreme Court of the State of New York,

Appellate Division, Fourth Judicial Department who entered the Memorandum and Order of

**May 12, 2021,** which affirmed Defendant Watches' denial to Sibley of his pistol permit in which

they <u>refused</u> to acknowledge or address Sibley's procedural due process arguments.

In the Seventh Claim, Sibley sues Defendants Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley Troutman who are the Judges of the New York Court of Appeals who entered the **December 16, 2021**, Order in which these Defendants refused to hear Sibley's appeal claiming there were no "substantial constitutional" issues vesting subject matter jurisdiction in the Court of Appeals.

## V.   CONCLUSION

Federal Rules of Civil Procedure, Rule 15(a)(2) states: "Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Moreover, FRCP, Rule 15(d) states: "Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time."

Here, Sibley must be permitted to amend the Fourth Amended Complaint to state claims as detailed above due to: (i) the holding in *Bruen*, (ii) the enactment and content of the CCIA, and (iii) the Appellate and Court of Appeals decisions on Sibley's pistol permit application, all four of which represent a significant occurrence <u>after</u> the date of the filing of the Fourth Amended Complaint Sibley seeks to amend.

4

To do otherwise, and thus force Sibley to refile against these defendants, would be manifestly <u>unjust</u> for it would force Sibley back to square one and continue the improper criminalization of his fundamental right to self defense with a handgun at home and abroad.

Moreover, a sense of urgency compels this Court to allow Sibley to proceed with his new claims. Expressly recognized by the Second Circuit in the Remand order at footnote #1 was the recently enacted CCIA which was a hastily and ill-advised response to *Bruen* and will become effective on **September 1, 2022**. Sibley seeks to challenge that gun-licensing scheme (which Defendant Watches raised in the Second Circuit and will surely raise here arguing that Sibley's claims are now moot) as, *inter alia*,

As such, Sibley's claim must be permitted to be timely heard that there is no proper New York State judicial review of an administrative officer's reliance upon undisclosed information when deciding to terminate Sibley's Second Amendment rights upon secret evidence. Noteworthy in this regard is Justice Thomas's statement in *Bruen*: "That said, because any permitting scheme can be put toward abusive ends, **we do not rule out constitutional challenges** to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." (*Bruen*, f/n #9). Here, Sibley seeks to raise the "abusive ends" of New York's handgun issue regime both as presently configured and to the **September 1, 2022**, even more abusive regime on the horizon.

Accordingly, Sibley seeks leave to amend the Fourth Amended Complaint to add parties and new theories based upon the change in circumstances occasioned by the *Bruen* decision, New York's enactment of the CCIA  and the subsequent proceedings before the Fourth Department and Court of Appeals.

WHEREFORE, Sibley respectfully asks that the Court grant leave to file the attached

Proposed Fifth Amended Complaint.

> **MONTGOMERY BLAIR SIBLEY**
> Plaintiff
> P.O. Box 341
> Odessa, N.Y. 14869
> (607) 301-0967
> montybsibley@gmail.com

By: _____
         MONTGOMERY BLAIR SIBLEY

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing will be sent via the Court's CM/ECF filing system when docketed by the Clerk to Alexandria Twinwm, Counsel for Defendant Watches, NYS Office of the Attorney General, The Capitol, Albany, NY 12224.

By: _____
         MONTGOMERY BLAIR SIBLEY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

Montgomery Blair Sibley,

    Plaintiff,

vs.

Chauncey J. Watches, Kathleen Hochul,
Letitia James, Kevin P. Bruen, Erin M.
Peradotto, John V. Centra, John M. Curran,
Brian F. DeJoseph, Janet DiFiore, Jenny
Rivera, Michael J, Garcia, Rowan D.
Wilson, Anthony Cannataro, Madeline
Singas and Shirley Troutman,

    Defendants.

_____/

Case No.: 19-CV-6517

***PROPOSED***

**FIFTH AMENDED VERIFIED COMPLAINT FOR
DECLARATORY RELIEF, PRELIMINARY AND
PERMANENT INJUNCTION, DAMAGES AND
OTHER EQUITABLE RELIEF**

**JURY TRIAL DEMANDED
ADVISORY JURY TRIAL REQUESTED**

Plaintiff, Montgomery Blair Sibley ("Sibley"), sues Defendants Chauncey J. Watches,

Kathleen Hochul, Letitia James, Kevin P. Bruen, Erin M. Peradotto, John V. Centra, John M.

Curran, Brian F. DeJoseph, Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson,

Anthony Cannataro, Madeline Singas and Shirley Troutman, and, additionally pursuant to 28

U.S.C. §1746, states that the factual matters stated herein are true under penalty of perjury,

alleging as follows:

## INTRODUCTION

By this suit, Sibley seeks:

- <u>First Claim</u>: A Declaratory Judgment declaring that Section 400.00(1)(b)'s "good
  moral character" requirement was unconstitutional as applied to Sibley as it
  required the <u>prohibited</u>: (i) "appraisal of facts", (ii) "exercise of judgment", to
  (iii) result in "the formation of an opinion";

- <u>Second Claim</u>: A Declaratory Judgment declaring that Section 400.00 is unconstitutional as interpreted and applied by Defendant Watches to Sibley as it violated due process guarantees;

- <u>Third Claim</u>: A Declaratory Judgment that New York Penal Law §265.01(1) & (2) coupled with the procedures found at New York Penal Law §400.00 are unconstitutional as New York does not have a "compelling governmental interest" to criminalize Sibley's handgun and cane sword possession both in his home and in public;

- <u>Fourth Claim</u>: A Declaratory Judgment that the enactment of the "Concealed Carry Improvement Act" ("CCIA") violated New York Constitution, Article III, §14 and the U.S. Constitution, Article IV, §4;

- <u>Fifth Claim</u>: A Declaratory Judgment that the recently enacted CCIA is unconstitutional and violates the First, Second, Fifth and Fourteenth Amendments to the United States Constitution and an order preliminarily and permanently enjoining the recently enacted, ironically-named CCIA;

- <u>Sixth Claim</u>: A Declaratory Judgment that Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph violated Sibley's Constitutional rights by refusing to decide the issues brought before them thus entitling Sibley to nominal, compensatory and punitive damages as a result;

- <u>Seventh Claim</u>: A Declaratory Judgment that Defendants Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley Troutman violated Sibley's Constitutional rights by improperly limiting the scope of their subject matter jurisdiction thus entitling Sibley to nominal, compensatory and punitive damages as a result.

### JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S. Code §1331, §2201, §2202 and 42 U.S.C. § 1983.

2.    Venue in this court is proper pursuant to 28 U.S. Code §1391 as a substantial part of the events or omissions giving rise to the claims herein occurred in Steuben County, New York.

2

**PARTIES**

3.      Sibley, is *sui generis* and a "natural born Citizen" of the United States as he was

born in Rochester, New York, the child of two United States citizens, Harper Sibley, Jr. and

Beatrice Blair Sibley and has continuously resided in the United States since his birth. Sibley at

all times relevant herein resided in the city of Corning, Steuben County, New York. Sibley:

A.  Is twenty-one years of age or older (N.Y. Penal Law §400.00(1)(a));

B.  Has not been convicted anywhere of a felony or a serious offense or is not the
    subject of an outstanding warrant of arrest issued upon the alleged commission of
    a felony or serious offense (N.Y. Penal Law §400.00(1)(c));

C.  Is not a fugitive from justice (N.Y. Penal Law §400.00(1)(d));

D.  Is not an unlawful user of or addicted to any controlled substance as defined in
    section 21 U.S.C. §802 (N.Y. Penal Law §400.00(1)(e));

E.  Is a U.S. Citizen who has not renounced his citizenship nor served in the Armed
    Forces (N.Y. Penal Law §400.00(1)(f),(g) & (h));

F.  Has never suffered any mental illness (N.Y. Penal Law §400.00(1)(i));

G.  Has not been involuntarily committed to a facility under the jurisdiction of an
    office of the department of mental hygiene nor has been civilly confined in a
    secure treatment facility (N.Y. Penal Law §400.00(1)(j));

H.  Has not had a license revoked or who is not under a suspension or ineligibility
    order issued pursuant to the provisions of section 530.14 of the Criminal
    Procedure Law or section eight hundred forty-two-a of the Family Court Act
    (N.Y. Penal Law §400.00(1)(k));

I.  Has not had a guardian appointed for him pursuant to any provision of state law,
    based on a determination that as a result of marked subnormal intelligence, mental
    illness, incapacity, condition or disease, he or she lacks the mental capacity to
    contract or manage his or her own affairs (N.Y. Penal Law §400.00(1)(m)).

4.      Defendant Chauncey J. Watches: (i) is a N.Y. Penal Law §265.00(10)

Pistol/Revolver Licensing Officer for Steuben County, New York and at all times relevant was

3

acting under color of state law, (ii) is sued solely in his official capacity and (iii) whose public

office address is: 3 E. Pulteney Square, Bath, Steuben County, N.Y. 14810.

5.     Defendant Her Excellency Kathleen Hochul: (i) is the Governor of New York

State and at all times relevant was acting under color of state law, (ii) is sued solely in her official

capacity. and (iii) whose public office address is: NYS State Capitol Building Albany, NY

12224.

6.     Defendant Letitia James: (i) is the Attorney General of the State of New York and

at all times relevant was acting under color of state law, (ii) is sued solely in her official capacity

and (iii) whose public office address is: NYS Office of the Attorney General, The Capitol,

Albany, NY 12224.

7.     Defendant Kevin P. Bruen: (i) is the Superintendent of the New York State Police

and at all times relevant was acting under color of state law, (ii) is sued solely in his official

capacity as Superintendent of the New York State Police, (iii) whose public office address is

New York State Police, 1220 Washington Ave., Albany, New York 12226.

8.     Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F.

DeJoseph ("Fourth Department Defendants"): (i) are Justices of the Supreme Court of the State

of New York, Appellate Division, Fourth Judicial Department and at all times relevant were

acting under color of state law, (ii) are sued both personally and in their official capacities and

(iii) whose public office address is 50 East Avenue, Suite 200, Rochester, New York 14604.

9.     Defendants Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson,

Anthony Cannataro, Madeline Singas and Shirley Troutman ("Court of Appeal Defendants"): (i)

are Judges of the New York Court of Appeals and at all times relevant were acting under color of

state law, (ii) are sued both personally and in their official capacities and (iii) whose public office

address is: 20 Eagle Street, Albany, New York 12207.

### PREVIOUS LAWSUITS

10.     With the exception of a FOIL lawsuit against Defendant Licencing Officer

Watches dismissed in Steuben County Supreme Court, there are no previous lawsuits between

the instant parties or regarding the same facts involved in this case.

### GENERAL ALLEGATIONS

11.     Since the early **1970s**, Sibley has owned and possessed handguns receiving in the

**1980s** licenses to carry concealed such handguns in both New York and Florida.  In or about

**2009**, Sibley moved to the District of Columbia where he continued to possess his handguns in

his residence.  Likewise, Sibley has possessed, in his home and when in public, since the early

**1970s**, a cane sword having concealed within it a blade that may be used as a sword or stiletto for

self-defense.

12.     In **November 2017**, Sibley relocated to Corning, New York, transporting his

handguns to his new residence. Additionally, in **November 2017**, Sibley was licensed by the

N.Y. State Department of Environmental Conservation, Division of Fish, Wildlife and Marine

Resources, Special Licenses Unit as a Nuisance Wildlife Control Operator, and issued License

#2799.  Sibley continues to hold that Nuisance Wildlife Control Operator License to this day.

13.     In **April 2018**, Sibley obtained his N.Y. Hunter Education Certificate of

Qualification.

14.     On **July 18, 2018**, Sibley filed his State of New York Pistol/Revolver License

Application ("Application") with the Clerk of Steuben County. An un-executed copy of the

redacted-for-privacy Application and Receipt is attached hereto as Exhibit "A".  Notably, Sibley, though not required, disclosed the make, model and serial number of the two handguns in his possession on the Application.  Sibley's Application was referred to the Defendant Licensing Officer for processing.  The Application included Sibley's fingerprints which triggered a series of background checks with the New York State Division of Criminal Justice Services, the Federal Bureau of Investigation, and the New York State Department of Mental Hygiene which, upon information and belief, all came back negative for any criminal or mental health history.

15.     Five months later, on **December 28, 2018**, Sibley was interviewed in person by Steuben County Deputy Sheriff McCoy regarding his Application.  A few days later, Deputy McCoy advised Sibley by telephone that he must either: (i) surrender his handguns to the Sheriff or a licensed firearms dealer or (ii) remove the handguns from New York pending determination of his Application.  Deputy McCoy further advised that Sibley's possession of his handguns in his residence was a crime pursuant to N.Y. Penal Law §265 *et seq*.  Accordingly, Sibley removed his handguns and cane sword from New York.

16.     On or about **March 8, 2019**, Sibley legally purchased a shotgun from a Federal Firearms Licensee in New York after passing the requisite Federal NICS background check. That shotgun remains in Sibley's possession in his home.

17.     On or about **May 16, 2019**, the Defendant Watches *ex parte* contacted Sibley's employer by telephone seeking information about Sibley's activities as a New York Nuisance Wildlife Control Operator.

18.    On **May 29, 2019** – three hundred fifteen (315) days or 10 ½ months after Sibley

filed his application – the Defendant Watches sent Sibley a letter <u>denying</u> Sibley a

Pistol/Revolver License.  In that letter, the Defendant Watches stated in pertinent part:

- That  the Defendant Watches had reviewed Sibley's application and "the
  investigation submitted by the Steuben County Sheriff's Department";

- "The basis for the denial results from concerns about your being sufficiently
  responsible to possess and care for a pistol";

- "[T]he Court is concerned that your history demonstrates that you place your own
  interest above the interests of society";

- "You do have the right to request a hearing with regard to the denial of your
  application."

A copy of the Defendant Watches's **May 29, 2019**, letter is attached hereto as Exhibit "B".

19.    On **June 14, 2019**, Sibley responded to the **May 29, 2019**, letter from the

Defendant Watches stating in sum and substance:

- That he was requesting a hearing on the denial;

- Requesting copies of all written investigation reports and/or objections from any
  police authority or person reported to the Defendant Watches;

- Requesting the sum and substance of any orally-communicated information
  received by the Defendant Watches regarding Sibley's application;

- Requesting copies of any legal or educational authorities or State Administrative
  Procedure Act, §102(14) Guidance Documents used to process Sibley's
  application; and

- Advising that within thirty (30) days of receiving the above-information, Sibley
  would advise on the time needed to gather evidence to respond at the requested
  hearing.

A copy of Sibley's **June 14, 2019**, letter is attached hereto as Exhibit "C".

20.    In response, on **August 15, 2019**, the Defendant Watches wrote Sibley stating:

- "Pursuant to your request I have scheduled a hearing on **July 31, 2019** at 10:30 a.m. in Courtroom C at the Steuben County Courthouse, 3 E. Pulteney Square, Bath, New York";

- "You should be prepared to proceed on that date with any evidence which you intend to present to the Court including testimony from you or any other witness concerning your application"; and

- "I have reviewed your requests for information and documents and find them to be without legal basis and therefore they are denied."

A copy of the Defendant Watches's **June 25, 2019**, letter is attached hereto as Exhibit "D".

21.     On **October 25, 2019**, the Defendant Watches wrote Sibley stating: "As you know your concealed pistol permit application was denied subject to an evidentiary hearing. In preparation for your January 10, 2020 hearing, please be advised that the court will address several relevant issues" and then went on to list seven (7) areas for "discussion. A copy of the Defendant Watches's **October 25, 2019**, letter is attached hereto as Exhibit "E".

22.     On **November 12, 2019**, Sibley responded to the **October 25, 2019**, letter of the Defendant Watches  In his letter, Sibley objected to the lack of requisite "Notice" and then requested the documents that had been reviewed by the Court in order to arrive at its seven (7) area for "discussion". A copy of Sibley's **November 12, 2019**, letter is attached hereto as Exhibit "F". To date, Defendant Watches has <u>not</u> responded to Sibley's **November 12, 2019**, letter.

23.     On **January 10, 2020**, an evidentiary hearing was held before Defendant Watches at which Defendant Watches refused to recuse himself and then made factual statements on the record but did not allow cross-examination of him by Sibley.

24.     On **March 9, 2020**, Defendant Watches issued his Decision <u>denying</u> to Sibley a pistol license. A copy of the **March 9, 2020**, Decision is attached hereto as Exhibit "G".  In that

Decision, Defendant Watches rested his <u>sole</u> reason for denying Sibley's Application that he "has failed to demonstrate his good moral character."

    25.      On or about **March 20, 2020**, Sibley filed his Article 78 "Notice of Petition" with the Supreme Court of New York, Fourth Department.  Among the relief sought in that Petition was:

    A.   Declaring that Defendant Watches' March 9, 2020, Decision denying to Sibley a pistol license was: (i) a result of Defendant Watches' failure to perform a duty enjoined upon him by law; (ii) a result of Defendant Watches proceeding without or in excess of jurisdiction; (iii) a determination made in violation of lawful procedure; (iv) affected by an error of law; (v) arbitrary and capricious; (vi) an abuse of discretion, and/or (vii) unsupported by substantial evidence;

    B.   Declaring that New York's Pistol License law violates Federal and New York State constitutional constraints;

    C.   Annulling and vacating the March 9, 2020, Decision denying to Sibley a Pistol License;

    D.   Directing forthwith that Defendant Watches grant unconditionally Sibley's Pistol License Application.

    26.      On or about **May 7, 2021**, the Fourth Department Defendants entered their Memorandum and Order on Sibley's Petition <u>ignoring</u> Sibley's due process claim that Defendant Watches received information about Sibley he obtained *ex parte* from the Steuben County Sheriff's Department which Defendant Watches: (i) <u>relied</u> upon in denying Sibley's Application and (ii) <u>refused</u> to reveal to Sibley.  A copy of that Memorandum and Order is attached hereto as Exhibit "H".  Sibley raised that refusal in his Motion for Rehearing which the Fourth Department Defendants denied without the requested *ratio decidendi* on **July 9, 2021**.  A copy of the **July 9, 2021,** Order is attached hereto as Exhibit "I".

    27.      On **July 14, 2021**, Sibley filed his Notice of Appeal to the New York Court of

Appeals. On **December 16, 2021,** the Court of Appeal Defendants entered their Order

dismissing Sibley's appeal stating: "no substantial constitutional question is directly involved"

notwithstanding that the Fourth Department Defendants in their Memorandum and Order of **May**

**7, 2021,** expressly held:

- "With respect to petitioner's **challenge to the constitutionality** of the pistol licensing application statutes . . .";

- ". . . the alleged procedural errors that he raises in the petition did not deprive him of his right to **due process** during the pistol license application review process";

- "We further conclude that petitioner **was not denied due process** when respondent communicated with petitioner's employer and the Sheriff's Office . . .";

- "We also reject petitioner's contention that he was **denied due process** because respondent failed to disclose the substance of his conversation with petitioner's employer";

- "There is **no violation of due process** where, as here, petitioner was given notice of the information respondent obtained from the employer, and was given the chance to address that information at the hearing";

- "We further reject petitioner's contention that the failure to hold a hearing before respondent made his initial determination to deny the application **violated petitioner's right to due process**";

- "We further reject petitioner's contention that the failure to hold a hearing before respondent made his initial determination to deny the application **violated petitioner's right to due process**";

- "We further reject petitioner's contention that he was **deprived of due process** based on the length of time it took to process the application";

- "Thus, because respondent is not responsible for the delay in the determination of petitioner's application, he **did not deprive petitioner of due process**";

- "Thus, "petitioner's contention[s] that[, inter alia,] certain aspects of the licensing eligibility requirements of Penal Law § 400.00 (1) **unconstitutionally infringe** upon his right to bear arms under the Second Amendment" are not properly before us ".

(Emphasis added).  A copy of the Court of Appeals Defendants' **December 16, 2021**, Order is attached hereto as Exhibit "J".  Patently, the Fourth Department Defendant's **May 7, 2021**, Memorandum and Order "directly involved the construction of the constitution of the state or of the United States" and thus the Court of Appeals Defendants had subject-matter jurisdiction.  On **December 23, 2021**, Sibley filed his Motion for Reargument.  On **April 28, 2022**, the Court of Appeals Defendants entered their Order denying Sibley's Motion for Reargument.  A copy of the **April 28, 2022**, Order is attached hereto as Exhibit "K".

28.     On **July 1, 2022**, the New York Assembly and Senate, after putatively receiving a New York Constitution, Article III, §14 required "message of necessity" from Defendant Hochul – which, after a diligent search, is not available on-line – took the extraordinary action of passing SB51001, the so-called "Concealed Carry Improvement Act" ("CCIA"). On **July 1, 2022**, the New York Assembly and Senate took the following action:

- Referred the CCIA (S51001)To Rules;
- Ordered To Third Reading Cal.1;;
- Passed Senate;
- Delivered To Assembly;
- Referred To Codes;
- Substituted For A41001;
- Passed Assembly;
- Delivered To and Signed By Defendant Governor Hochul.

Upon information and belief, and after an opportunity for discovery, Sibley will establish that: (i) the message-of-necessity failed to contain objective facts which necessitated an immediate vote upon the CCIA nor (ii) that the CCIA was not meaningfully "upon the desks of the members in final form, not necessarily printed, before its final passage".  A copy of the CCIA is attached hereto as Exhibit "L".

29.     The  CCIA has now introduced a number of unprecedented and blatantly

11

unconstitutional impediments to Sibley's exercise of his constitutional right to armed

self-defense both in and outside his home.  Patently, the CCIA is New York's attempt to flout the

Supreme Court's holding in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, No. 20-843 (June

23, 2022). Instead of complying with that decision, the Assembly and Senate, with the

Governor's approval, have promulgated several clearly unconstitutional new infringements of the

fundamental right to keep and bear arms.  In particular:

      A.    <u>Good Moral Character</u>: The CCIA removed the now-unconstitutional

"proper cause" requirement from Section 400.00 in the prior statute. In its place, the CCIA

defines the malleable – and thus <u>prohibited</u> – subjective term "good moral character" to now

mean "having the essential character, temperament and judgment necessary to be entrusted with

a weapon and to use it only in a manner that does not endanger oneself or others . . . ".

      B.    <u>Personal and Social Media Disclosures</u>: In addition to requiring an

applicant to demonstrate "good moral character," the CCIA imposes a litany of demands on

those seeking a New York carry permit, including a requirement that the applicant "shall meet in

person with the licensing officer for an interview and shall, in addition to any other information

or forms required by the license application submit to the licensing officer the following

information:

      i.    Names and contact information for the applicant's current spouse, or domestic partner, any other adults residing in the applicant's home, including any adult children of the applicant, and whether or not there are minors residing, full time or part time, in the applicant's home;

      ii.    Names and contact information of no less than four character references who can attest to the applicant's good moral character and that such applicant has not engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or others;

      iii.    Certification of completion of the training;

iv.     A list of former and current social media accounts of the  applicant from the past three years to confirm the information regarding the applicants [sic] character and conduct; and

v.     Such other information required by the licensing officer that is reasonably necessary and related to the review of the licensing application.

C.     <u>Character References</u>: Applicants must provide four character references to the government as a condition of exercising Second Amendment rights. The CCIA demands that "character references" attest that the applicant "has not engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or others."

E.     <u>Sensitive Locations</u>. The CCIA next creates a new Section 265.01-e entitled "Criminal Possession of a firearm, rifle or shotgun in a sensitive location." The list of twenty (20) "sensitive locations" contained in this section is extensive, and serves to bar the carrying of firearms in most public places. Significantly, unlawful carry in any of these 20 categories of "sensitive locations" is a Class E Felony, conviction of which leads to the loss of Second Amendment rights. Although some of these "sensitive locations" must be marked conspicuously with signage, many are not required to be so marked, leaving carry license holders in peril of unintentionally violating the statute in a place they have no idea constitutes a "sensitive location".

In addition to these numerous "sensitive locations," the CCIA also criminalizes the carry of firearms in what it calls "a restricted location," defined in "§ 265.01-d Criminal possession of a weapon in a restricted location" which states: "A person is guilty of criminal possession of a weapon in a restricted location when such person possesses a firearm, rifle, or shotgun and enters

into or remains on or in private property where such person knows or reasonably should know that the owner or lessee of such property has not permitted such possession by clear and conspicuous signage indicating that the carrying of firearms, rifles, or shotguns on their property is permitted or has otherwise given express consent. Violation of this prohibition, like the prohibition on "sensitive locations," is a "class E felony" conviction of which leads to the loss of Second Amendment rights for life. In other words, the CCIA makes all private property in New York state a "restricted location" by default, with a property owner (such as a storekeeper) required to "conspicuously" post signage indicating that concealed carry is allowed.

        F.     <u>Training Requirements</u>: The CCIA's licensing scheme adds a slew of new requirements to the demands placed on a carry license applicant, which will disproportionately affect individuals who cannot devote the new "minimum of sixteen hours of in-person live curriculum" that New York demands all handgun license applicants acquire. This course also requires two hours of live-fire training, apparently resulting in a total training demand of 18 hours. Prior to this new law, only a four-hour course was required, with many trainers offering the course for approximately $75.00. Notably, the filing and fingerprint fees are already $428.25. The new 16-hour course, with an additional two hours live-fire, is estimated to run in approximately the $400 dollar range, plus the cost of ammunition for "live fire" (perhaps $50 or more), not to mention the significant time investment required for individuals to take off potentially three days of work to complete a training requirement that is now four and half times what was previously required. Prior to losing *Bruen*, New York did not require such an extensive and expensive training requirement. Rather, for many years, New York has deemed four hours sufficient to train individuals to carry firearms in public. **EXhibit "state policy requirement**

document"

30.     The Supreme Court of New York, Fourth Department, by its Order of **February 6, 2009,** held: "Montgomery Blair Sibley, who was admitted to practice as an attorney and counselor at law by this Court on **February 16, 1982,** be immediately suspended from practice as an attorney and counselor at law until further order of the Court, without leave to apply for reinstatement until such time as he has been reinstated to the practice of law in Florida . . .".

31.     In his 40 year legal career, Sibley has filed approximately five thousand (5,000) legal pleadings.

32.     The cane sword or sword-stick has been popular throughout history as a concealed weapon for both men and women. It was in common usage in the United States in the Eighteenth and Nineteenth Centuries.

FIRST CLAIM
FOR
DECLARATORY RELIEF
DEFENDANT CHAUNCEY J. WATCHES

33.     Sibley re-alleges paragraphs 1 through 32 and incorporates them herein by reference.

34.     18 U.S.C. §1983 provides a cause of action against state actors who deprive individuals of their federal constitutional rights under color of state law. As a result of the Supreme Court's decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, Section 400.00(1)(b)'s "good moral character" requirement was unconstitutional as applied to Sibley as it requires the prohibited: (i) "appraisal of facts", (ii) "exercise of judgment", to (iii) result in "the formation of an opinion" that Sibley has "good moral character".

35.     In so much as the only basis Defendant Watches found to deny Sibley his pistol

license was his putative lack of "good moral character", Sibley is now entitled to have his pistol license issued forthwith.

WHEREFORE, Sibley requests that judgment be entered in his favor and against Defendant Chauncey J. Watches as follows:

A.     An order declaring that the "good moral character" requirement of the pre-CCIA N.Y. Penal Law Section §400.00(1)(b) is unconstitutional as it violates the Second Amendment to the United States Constitution as articulated in *Bruen* and as such Defendant Watches must immediately issue Sibley's requested pistol license.

B.     Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

C.     Retaining jurisdiction to enter such other Declaratory and/or Injunctive relief as appropriate; and

D.     Such other and further relief as the Court deems just and equitable.

## SECOND CLAIM
### FOR
### DECLARATORY RELIEF
### DEFENDANT CHAUNCEY J. WATCHES

36.     Sibley re-alleges paragraphs 1 through 32 and incorporates them herein by reference.

37.     18 U.S.C. §1983 provides a cause of action against state actors who deprive individuals of their federal constitutional rights under color of state law. Sibley did <u>not</u> have the opportunity to review the Sheriff's report on Sibley upon which Defendant Watches expressly relied upon to make his determination to <u>deny</u> Sibley his pistol license as Defendant Watches expressly <u>refused</u> to disclose that report to Sibley despite Sibley's request for that report. As a result, Sibley's due process rights were violated as he was not given proper "notice".

38.     Defendant Watches' <u>refusal</u> to grant Sibley's requests for information and documents denied Sibley's due process rights to be "heard".

WHEREFORE, Sibley requests that judgment be entered in his favor and against Defendant Chauncey J. Watches as follows:

A.     An order declaring that the Defendant Watches' refusal: (i) to disclose the Sheriff's Report and/or (ii) grant Sibley's request for information and documents violated Sibley's due process rights and directing Defendant Watches to: (i) re-open Sibley's pistol license hearing after disclosing the Sheriff's Report to Sibley and granting Sibley's requests for information and documents;

B.     Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

C.     Retaining jurisdiction to enter such other Declaratory and/or Injunctive relief as appropriate; and

D.     Such other and further relief as the Court deems just and equitable.

**THIRD CLAIM**
**FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**
**DEFENDANTS KATHLEEN HOCHUL,**
**LETITIA JAMES AND KEVIN P. BRUEN**

39.     Sibley re-alleges paragraphs 1 through 32 and incorporates them herein by reference.

40.     18 U.S.C. §1983 provides a cause of action against state actors who deprive individuals of their federal constitutional rights under color of state law. Defendants Kathleen Hochul, Letitia James and Kevin P. Bruen have, are and have the continuing ability to deprive Sibley of his federal constitutional rights as they are authorized to charge Sibley with violation of

§265.01(1) thus <u>preventing</u> Sibley from exercising his Second Amendment right by a continuing

threat of criminal prosecution by these Defendants for Sibley's desire to "keep and bear arms".

  41.  Given the holding of the Supreme Court in *Bruen*, New York Penal Law

§265.01(1) & (2) coupled with the procedures found at New York Penal Law §400.00 are

unconstitutional as New York does not have a "compelling governmental interest" to criminalize

Sibley's handgun and cane sword possession both in his home and in public which, coupled with

New York's permitting scheme which is calculated toward Second Amendment abusive ends, is

unconstitutional.

  WHEREFORE, Sibley requests that judgment be entered in his favor and against

Defendants Kathleen Hochul, Letitia James and Kevin P. Bruen as follows:

  A.  An order declaring that New York does not have a "compelling governmental

interest" to criminalize Sibley's handgun and cane sword possession both in his home and in

public which, coupled with New York's permitting scheme which is calculated toward Second

Amendment abusive ends, is unconstitutional;

  B.  Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

  C.  Retaining jurisdiction to enter such other Declaratory and/or Injunctive relief as

appropriate; and

  D.  Such other and further relief as the Court deems just and equitable.

**FOURTH CLAIM**
**FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**
**DEFENDANTS KATHLEEN HOCHUL, LETITIA JAMES AND KEVIN P. BRUEN**

  42.  Sibley realleges paragraphs 1 through 32 and incorporates them herein by

reference.

43.     The enactment of the CCIA violated the requirement of the New York

Constitution, Article III, §14 of the so-called "message of necessity" and the notice of the final

form of the CCIA to the members.  Moreover, the enactment of the CCIA trespassed upon the

U.S. Constitution, Article IV, §4 requirement of a Republican form of Government as New York

was <u>not</u> acting as a  representative democracy when it trampled on minority rights which *de facto*

if not *de jure* <u>denied</u> representative government by erosion of fundamental democratic norms and

practices.

WHEREFORE, Sibley requests that judgment be entered in his favor and against

Defendants Kathleen Hochul, Letitia James and Kevin P. Bruen as follows:

A.      An order declaring that the enactment of the CCIA violated New York

Constitution, Article III, §14 and/or  violated Article IV, §4 of the United States Constitution;

B.      An order preliminarily and permanently enjoining Defendants Kathleen Hochul,

Letitia James and Kevin P. Bruen, their officers, agents, servants, employees, and all persons in

active concert or participation with them who receive actual notice of the injunction, from

enforcing the CCIA to ban the acquisition, possession, carrying or use of handguns and/or sword

canes;

C.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

D.      Retaining jurisdiction to enter such other Declaratory and/or Injunctive relief as

appropriate; and

E.      Such other and further relief as the Court deems just and equitable.

FIFTH CLAIM
FOR
DECLARATORY AND INJUNCTIVE RELIEF
DEFENDANTS KATHLEEN HOCHUL,
LETITIA JAMES AND KEVIN P. BRUEN

44.　　Sibley re-alleges paragraphs 1 through 32 and incorporates them herein by reference.

45.　　18 U.S.C. §1983 provides a cause of action against state actors who deprive individuals of their federal constitutional rights under color of state law. Defendants Kathleen Hochul, Letitia James and Kevin P. Bruen have, are and have the continuing ability to deprive Sibley of his federal constitutional rights as they are authorized to charge Sibley with violation of §265.01(1) thus preventing Sibley from exercising his Second Amendment right by a continuing threat of criminal prosecution by these Defendants for his desire to "keep and bear arms".

46.　　Given the holding of the Supreme Court in *Bruen*, the CCIA's new requirement of "good moral character" – which requires "having the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others" – on its face and as applied to Sibley is unconstitutional as such a determination requires the *Bruen* prohibited: (i) "appraisal of facts", (ii) "exercise of judgment", to (iii) result in "the formation of an opinion".

47.　　The laws, customs, practices and policies of Defendants Kathleen Hochul, Letitia James and Kevin P. Bruen as authorized by New York Penal Law §400.00 are unconstitutional as New York does not have a "compelling governmental interest" to criminalize Sibley's handgun and cane sword possession both in his home and in public which ban the acquisition, possession, carrying, licensing and use of "arms" thus prohibiting Sibley from acquiring, possessing and

using "arms" in common historical use such as handguns and/or sword canes. As such they violate Sibley's Second Amendment rights facially and as applied against Sibley, damaging Sibley in violation of 42 U.S.C. §1983. Sibley is therefore entitled to preliminary and permanent injunctive relief against such laws, customs, policies, and practices.

48.     The CCIA's: (i) "good moral character" requirement, (ii) Personal and Social Media Disclosure requirement, (iii) Character References requirement, (iv) Vague and Subjective Standards, (v) Sensitive Location requirements and (vi) Training requirements, singularity and collectively violate Sibley's fundamental and federal constitutional rights.

49.     Sibley has the right to speak and associate with others anonymously and to keep and bear arms.  The Personal and Social Media Disclosure requirement precludes Sibley from exercising both his First Amendement right to association simultaneously with his Second Amendment right to "keep and bear arms" and thus constitutes an invasion of Sibley privacy, and generates a substantial risk of discriminatory enforcement. The Personal and Social Media Disclosure requirement is thus unconstitutional under the First and Second Amendments to the U.S. Constitution, as incorporated against the states by the Fourteenth Amendment.

50.     Sibley  has the right to "keep and bear arms". His exercise of this right is not contingent on the approval of four other people. The Character References requirement is thus unconstitutional under the Second Amendment to the U.S. Constitution, as incorporated against the states by the Fourteenth Amendment.

51.     A law that unnecessarily, intentionally, and unreasonably restricts Sibley's right to "keep and bear arms" as the (i) Vague and Subjective Standards, (ii) Sensitive Location requirements and (iii) Training Requirements do is unconstitutional under the Second

Amendment to the U.S. Constitution, as incorporated against the states by the Fourteenth Amendment.

WHEREFORE, Sibley requests that judgment be entered in his favor and against Defendants Kathleen Hochul, Letitia James and Kevin P. Bruen as follows:

A.      An order declaring that both N.Y. Penal Laws §265.01 and the CCIA are unconstitutional and violate the Second Amendment to the United States Constitution;

B.      An order preliminarily and permanently enjoining Defendants Chauncey J. Watches, Kathleen Hochul, Letitia James and Kevin P. Bruen, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing N.Y. Penal Law § 265.01 to ban Sibley's acquisition, possession, carrying or use of handguns and/or sword canes;

C.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

D.      Retaining jurisdiction to enter such other Declaratory and/or Injunctive relief as appropriate; and

E.      Such other and further relief as the Court deems just and equitable.

### SIXTH CLAIM
#### FOR
#### DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES
#### DEFENDANTS ERIN M. PERADOTTO, JOHN V. CENTRA,
#### JOHN M. CURRAN, BRIAN F. DEJOSEPH

52.     Sibley realleges paragraphs 1 through 32 and incorporates them herein by reference.

53.     Defendants Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph, state officers who were acting under the color of state law, violated Sibley's United

States Constitution rights to "petition" and be "heard" by <u>refusing</u> to acknowledge or address the significant issue raised in Sibley's Petition to the Supreme Court, Fourth Department that Defendant Watches had relied upon information received *ex parte* which he <u>refused</u> to disclose to Sibley through requested to do so.  Defendant Watches' reliance upon *ex parte* information was patently unconstitutional as it is axiomatic that the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.

54.     Fundamental rights, Due Process and the limitations of inherent judicial powers prevent the Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph from <u>ignoring</u> significant legal issues brought before them.  To <u>ignore</u> properly raised issues by <u>not</u> acting on them is <u>not</u> a "judicial act" thus subjecting these Defendants to personal liability. Judges do <u>not</u> have the jurisdiction to <u>ignore</u> their Constitutional obligation to "say what the law is" thus allowing the arbitrary and capricious development of the law and by denying access to judicial resolution of contested issues to some, but not all, litigants.

55.     The Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph could not, as the legislature may, avoid Sibley's *ex parte* issue because it approached the confines of the Constitution. With whatever doubts, with whatever difficulties Sibley's case may be attended, Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph must decide the issues in it. Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph had no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.  The one or the other would be treason to the constitution.

56.     Sibley lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy, against Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph.

WHEREFORE, Sibley request that judgment be entered in his favor and against Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph as follows:

A.      An order declaring that the Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph have a constitutional obligation to decide issues properly brought before them;

B.      An order preliminarily and permanently enjoining Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph, from refusing to address legal issues brought before them;

C.      Nominal, Compensatory and Punitive damages in excess of seventy-five thousand dollars ($75,000) singularly and collectively from Defendants Erin M. Peradotto, John V. Centra, John M. Curran, Brian F. DeJoseph for their aforedescribed constitutional violations of Sibley's rights;

D.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

D.      Retaining jurisdiction to enter such other Declaratory and/or Injunctive relief as appropriate; and

E.      Such other and further relief as the Court deems just and equitable.

24

SEVENTH CLAIM

FOR

DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES
DEFENDANTS JANET DIFIORE, JENNY RIVERA, MICHAEL J, GARCIA,
ROWAN D. WILSON, ANTHONY CANNATARO, MADELINE SINGAS AND SHIRLEY TROUTMAN

57.     Sibley realleges paragraphs 1 through 32 and incorporates them herein by reference.

58.     Defendants Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley Troutman declined to hear Sibley's appeal from the Fourth Department upon their claim that: "no substantial constitutional question is directly involved".  Significantly, the Appellate Division, Fourth Department's **May 7, 2021**, Memorandum and Order on ten (10) occasions "directly involved the construction of the constitution of the state or of the United States".

59.     However, CPLR §5601(b) states: "Constitutional grounds.  An appeal may be taken to the court of appeals as of right: 1. from an order of the appellate division which finally determines an action where there is directly involved the construction of the constitution of the state or of the United States." Notably, §5601(b)(1) does <u>not</u> include the adjective "substantial" in its description of the right to appeal to the Court of Appeals. The putative grafting of such a qualification seeking to <u>avoid</u> subject matter jurisdiction is not statutorily unauthorized, but in fact can be properly characterized as "treason to the Constitution" as it appears Defendants Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley Troutman are seeking to <u>deny</u> the Court of Appeal's subject matter jurisdiction by its unauthorized limitation of the definition of its subject matter jurisdiction to only "substantial" constitutional questions.

25

60.     Improperly limiting the subject matter jurisdiction of the New York Court of Appeals is <u>not</u> a "judicial act". Defendants Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley Troutman had no more right to decline the exercise of jurisdiction which was given, than to usurp that which is not given. The one or the other would be treason to the constitution.

61.     Sibley lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy, against Defendants Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley Troutman.

WHEREFORE, Sibley request that judgment be entered in his favor and against Defendants Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley Troutman as follows:

A.     An order declaring that Defendants Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley Troutman may <u>not</u> *sua sponte* amend CPLR §5601(b)(1) to include the word "substantial" to modify CPLR §5601(b)'s grant of subject matter jurisdiction;

B.     An order preliminarily and permanently enjoining Defendants Janet DiFiore, Jenny Rivera, Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley Troutman, from *sua sponte* amending CPLR §5601(b)(1) to include the word "substantial" to modify CPLR §5601(b)'s grant of subject matter jurisdiction;

C.     Nominal, Compensatory and Punitive damages in excess of seventy-five thousand dollars ($75,000) singularly and collectively from Defendants Janet DiFiore, Jenny Rivera,

Michael J, Garcia, Rowan D. Wilson, Anthony Cannataro, Madeline Singas and Shirley

Troutman for their aforedescribed constitutional violations of Sibley's rights;

      D.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

      D.      Retaining jurisdiction to enter such other Declaratory and/or Injunctive relief as

appropriate; and

      E.      Such other and further relief as the Court deems just and equitable.

**ADVISORY JURY TRIAL REQUESTED**

**JURY TRIAL DEMANDED**

      I declare under penalty of perjury that the foregoing is true and correct.

                                  **MONTGOMERY BLAIR SIBLEY**
                                    Plaintiff
                                    P.O. Box 341
                                    Odessa, N.Y. 14869
                                    (607) 301-0967
                                    montybsibley@gmail.com

                              By:     _____
                                      **MONTGOMERY BLAIR SIBLEY**

Sibley v. Watches *et al.*
Case No.: 19-CV-6517
Exhibit List

| Exhibit "A" | Application and Receipt |
| Exhibit "B" | Defendant Watches' May 29, 2019 letter |
| Exhibit "C" | Sibley's June 14, 2019, letter |
| Exhibit "D" | Defendant Watches' June 25, 2019, letter |
| Exhibit "E" | Defendant Watches' October 25, 2019, letter |
| Exhibit "F" | Sibley's November 12, 2019, letter |
| Exhibit "G" | Defendant Watches' March 9, 2020, Decision |
| Exhibit "H" | May 7, 2021, Fourth Department Decision |
| Exhibit "I" | July 9, 2021, Fourth Department Order |
| Exhibit "J" | December 16, 2021, Court of Appeals Order |
| Exhibit "K" | April 28, 2022, Court of Appeals Order |
| Exhibit "L" | Senate Bill S51001 "Concealed Carry Improvement Act" |

*INSTRUCTIONS:* Print or type in black ink only

| NYSID Number | PPB 3 (Rev. 06/17) | County of Issue |
|---|---|---|
| License Number | **STATE OF NEW YORK** | **Steuben** |
| Date of Issue | **PISTOL /REVOLVER LICENSE APPLICATION** | Expiration Date |

Last Name: S I B L E Y    Suffix:

First Name: M O N T G O M E R Y    MI: B   Date of Birth – MM DD YYYY   NY Driver's License (or NY Non-Driver ID) No.

| Gender | Social Security | Race | Height | Weight | Eyes | Hair | Citizen of U.S.A |
|---|---|---|---|---|---|---|---|
| M | | W | ft 6 in 0 | 190 | BLUE | GRAY | ☒ YES ☐ NO |

Physical Address (Street number, street name, apartment number, city, state, zip code)
189 CHEMUNG STREET, #3, CORNING, NY 14830

Mailing Address (if different from physical address)
SAME

| Primary Phone Number | Secondary Phone Number | Email Address |
|---|---|---|
| 607-301-0967 | | MBSIBLEY@GMAIL.COM |

| Employed By | Present Occupation | Nature of Business |
|---|---|---|
| MERIDIAN BIRD REMOVAL | NUISANCE WILDLIFE CONTROL OPERATOR | NUISANCE WILDLIFE CONTROL |

Business Address (Street number, street name, apartment number, city, state, zip code)
17 N Franklin St, Christiansburg, VA 24073

I hereby apply for a Pistol / Revolver License to: (Check only one) ☒ Carry Concealed ☐ * Possess on Premises ☐ * Possess / Carry During Employment

( * ) Premise Address or Employer Name and Address must be provided below:

| Employer Name (if Carry During Employment) | Address or Other Location  (Street number, street name, apartment number, city, state, zip code) |
|---|---|
| MERIDIAN BIRD REMOVAL | 17 N Franklin St, Christiansburg, VA 24073 |

A license is required for the following reasons:
PERSONAL SAFETY AND FOR USE IN EMPLOYMENT WHEN I MUST DISPATCH WILDLIFE

Give four character references who by their signature attest to your good moral character.

| Last, First, MI | Street Address. (Street number, street name, apartment number, city, state, zip code) | Signature |
|---|---|---|
| Nicol, Kathleen | | |
| Schonberg, Rita | | |
| Siegel, John    607A | | |
| Solomon, Paul | | |

Have you ever been arrested, summoned, charged or indicted anywhere for any offense, including DWI (except traffic infractions)? ☐ YES  ☐ NO
If Yes, furnish the following information:

| | | | | |
|---|---|---|---|---|

| | YES | NO |
|---|---|---|
| Are you a fugitive from justice? | ☐ | ☒ |
| Are you an unlawful user of or addicted to any controlled substance as defined in section 21 U.S.C. 802? | ☐ | ☒ |
| Are you an alien illegally or unlawfully in the United States? | ☐ | ☒ |
| Are you an alien admitted to the United States who does not qualify for the exceptions under 18 U.S.C. 922 (y)(2)? | ☐ | ☒ |
| Have you been discharged from the Armed Forces under dishonorable conditions? | ☐ | ☒ |
| Have you ever renounced your United States citizenship? | ☐ | ☒ |
| Have you ever suffered any mental illness? | ☐ | ☒ |
| Have you ever been involuntarily committed to a mental health facility? | ☐ | ☒ |
| Have you ever had a pistol / revolver license revoked? | ☐ | ☒ |
| Are you under any firearms suspension or ineligibility order issued pursuant to the provisions of section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act? | ☐ | ☒ |
| Have you had a guardian appointed for you pursuant to any provision of state law, based on a determination that as a result of marked subnormal intelligence, mental illness, incapacity, condition or disease you lack the mental capacity to contract or manage your own affairs? | ☐ | ☒ |
| Are you aware of any good cause for the denial of the license? | ☐ | ☒ |
| Are you prohibited from possessing firearms under federal law, including having been convicted in any court of a misdemeanor crime of domestic violence or being under indictment for a crime punishable by imprisonment for a term exceeding one year? | ☐ | ☒ |

If the answer to any of the questions above is YES, explain here:

Exhibit "A"

**For applicants under twenty-one years of age only:**
Have you been honorably discharged from the United States Army, Navy, Marine Corps, Air Force or Coast Guard, or the National Guard of the State of New York?   ☐ YES   ☐ NO

---

|  |
|---|
| **Photograph Of Applicant Taken Within 30 Days** |
| — |
| **Full Face Only** |

**Knowingly providing false information will be sufficient cause to deny this application and constitutes a crime punishable by fine, imprisonment, or both. I am aware that the following conditions affect any license which may be issued to me:**

1. No license issued as a result of this application is valid in the City of New York.
2. Any license issued as a result of this application will be valid only for a pistol or revolver specifically described in the license properly issued by the licensing officer.
3. If I permanently change my address, notice of such change and my new address must be forwarded to the Superintendent of the State Police and in Nassau County and Suffolk County, to the licensing officer of that county, within 10 days of such change.
4. Any license issued as a result of this application is subject to revocation at any time by the licensing officer or any judge or justice of a court of record.

Jurat:

Signed and sworn before me

This _____ day of _____ , 20 _____

at _____ , New York

_____        _____        _____
Signature of Applicant                          Signature of Officer Administering Oath                Title of Officer

*APPLICATION NOT VALID UNLESS SWORN*

---

**Fingerprints submitted electronically by:**

Name _____   Rank _____   Organization _____

Date Submitted _____

---

**Investigation Report – All information provided by this applicant has been verified:**

Name _____   Rank _____   Organization _____

_____
Signature of Investigating Officer

---

**This application is  Approved – Disapproved (Strike out one)**        **The following restriction(s) is (are) applicable to this license:**

_____
Title and Signature of Licensing Officer

---

**If Licensing Officer authorizes the possession of a pistol, revolver or single shot firearm(s) at the time of issue of original license, furnish the following information:**

| Manufacturer | Pistol / Revolver / Single Shot | Model | Frame Only | Caliber(s) | Serial Number | Property Of |
|---|---|---|---|---|---|---|
| Ruger | Pistol | .22 cal auto pistol | ☐ | .22 | 14-62509 | Montgomery Sibley |
| Browning | Pistol | BDA .380 auto pistol | ☐ | .380 | 425PX04051 | Montgomery Sibley |
|  |  |  | ☐ |  |  |  |
|  |  |  | ☐ |  |  |  |

Duplicate of this application must be filed with the Superintendent of State Police within 10 days of issuance as required by Penal Law Section 400.00 SUBD.5.

This form is approved by Superintendent of the State Police as required by Penal Law section 400.00, SUBD. 3.

# STEUBEN COUNTY CLERK
## JUDITH M. HUNTER

*Receipt*

Receipt Date: 07/18/2018 09:43:11 AM
RECEIPT # 20180069770

Recording Clerk: LM
Cash Drawer: CASH5
Rec'd Frm: MONTGOMERY SIBLEY
Rec'd In Person

Misc Fees
Pistol Permit - New          $10.00
Pistol Permit Photo Fee      $10.00

Receipt Summary
TOTAL RECEIPT:  ---->         $20.00
TOTAL RECEIVED: ---->         $20.00
                            _____
CASH BACK:      ---->          $0.00

PAYMENTS
Cash ->                       $20.00

3 EAST PULTENEY SQUARE, BATH, NY 14810                    Phone # (607) 664-2563



**STEUBEN COUNTY**
**COUNTY & FAMILY COURT**
**CHAMBERS**
**3 E. PULTENEY SQUARE**
**BATH NY 14810**

(607) 622-8192
Fax (607) 622-8241

Hon. Chauncey J. Watches
County and Family Court Judge

Vivian E. Strache, Esq.
Court Attorney

May 29, 2019

Mr. Montgomery Sibley
189 Chemung Street #3
Corning, NY 14830

RE:   NYS Pistol Permit Application

Dear Mr. Sibley:

Your application to obtain a pistol permit has been submitted to me for my consideration.  I have reviewed your application and the investigation submitted by the Steuben County Sheriff's Department. The possession of a pistol permit license is a serious responsibility and a privilege.  Therefore, the Court takes each application very seriously.

Your application for a pistol permit is denied.  This decision is based upon concerns expressed in the Sheriff's investigation.  The basis for the denial results from concerns about your being sufficiently responsible to possess and care for a pistol; the Court is concerned that your history demonstrates that you place your own interest above the interests of society

You do have the right to request a hearing with regard to the denial of your application.  If you want a hearing you must submit a written request to the Pistol Permit Clerk within thirty (30) days of the date of this denial.  The purpose of the hearing would be to allow you to testify and for you to present any other witness(es) that you believe could address the concerns mentioned in the foregoing and show that you should now be entitled to a pistol permit license.  The County will also be able to present witnesses concerning the results of their investigation.

If after thirty (30) days, you fail to request a hearing, the denial will be deemed final.

Very truly yours,

Chauncey J. Watches
County Court Judge

CJW/rac

Exhibit "B"

# Montgomery Blair Sibley

189 Chemung Street
Corning, N.Y. 14830
607-301-0967
mbsibley@gmail.com

June 14, 2019

USPS Tracking #: 9590940241208092937555
Licensing Officer Chauncey J. Watches
3 E. Pulteney Square
Bath, N.Y. 14810

Re:   *NYS Pistol Permit Application*

Greetings:

I am in receipt of that certain letter dated May 29, 2019, from you in your capacity as a New York Consolidated Laws, Penal Law §265.00(10) Licensing Officer to me. I have this day requested a hearing from the Steuben County Pistol Permit Clerk in regards to the denial of my Pistol Permit Application; a copy of that request is attached hereto. Please note my new telephone number above for any telephonic communcations.

Prior to advising you regarding my desired scheduling and duration of the above-referenced hearing, I am requesting from you copies of all written investigation reports and/or objections from any police authority or person reported to you as the §265.00(10) Licensing Officer purusant to NY CLS Penal §400.00(4). Additionally, please identify to me any orally communicated information you received regarding my application including, without limitation: (i) the name(s) and professional capacity of the reporting individual(s), (ii) the date and time of the report(s), (iii) the sum and substance of such report(s) and (iv) copies of any notes you made regarding the oral information you recieved in this regard. Finally, to the extent you consulted or were guided by any legal or educational authorities or State Administrative Procedure Act, §102(14) Guidance Documents or its like to process my application, please identify and provide copies of such documents.

Within thirty (30) days of receiving this information from you, I will advise you on: (i) the time I will need to gather my evidence in response to the information you have received pursuant to NY CLS Penal § 400.00(4), (ii) the subpoenas and/or depositions I will be requesting from you pursuant to NY CLS St Admin P Act, §304(2), (iii) the number of witnesses I expect to call at the hearing, and (iv) consequently, the time I will be requesting for the hearing.

Yours,

Exhibit "C"



**STEUBEN COUNTY**
**COUNTY & FAMILY COURT**
**CHAMBERS**
**3 E. PULTENEY SQUARE**
**BATH NY 14810**

(607) 622-8192
Fax (607) 622-8241

Hon. Chauncey J. Watches
County and Family Court Judge

Vivian C. Strache, Esq.
Court Attorney

June 25, 2019

Montgomery Sibley
189 Chemung Street #3
Corning, NY 14830

RE:  NYS Pistol Permit Application

Dear Mr. Sibley:

I am in receipt of your letter dated June 14, 2019 concerning the denial of your application to obtain a pistol permit. Pursuant to your request I have scheduled a hearing on July 31, 2019 at 10:30 a.m. in Courtroom C at the Steuben County Courthouse, 3 E. Pulteney Square, Bath, New York. You should be prepared to proceed on that date with any evidence which you intend to present to the Court including testimony from you or any other witness concerning your application.

I have reviewed your requests for information and documents and find them to be without legal basis and therefore they are denied.

Very truly yours,

Chauncey J. Watches
Steuben County Court Judge

CJW/mc

cc:  Steuben County Pistol Permit Clerk

Exhibit "D"



**STEUBEN COUNTY**
**COUNTY & FAMILY COURT**
**CHAMBERS**
**3 E. PULTENEY SQUARE**
**BATH NY 14810**

(607) 622-8192
Fax (607) 622-8241

Hon. Chauncey J. Watches
County and Family Court Judge

Vivian C. Strache, Esq.
Court Attorney

October 25, 2019

Montgomery Sibley
189 Chemung Street
Corning, New York 14830

Re:  New York State Pistol Permit Application

Dear Mr. Sibley:

As you know your concealed pistol permit application was denied subject to an evidentiary hearing.  In preparation for your January 10, 2020 hearing, please be advised that the court will address several relevant issues, including, but not limited to the following topics:

1. Discussion of your Florida civil contempt and incarceration;
2. Discussion of your history of vexatious litigation, including a list of all proceedings in which you have been sanctioned;
3. Discussion of your suspensions and other disciplinary action taken regarding your license to practice law in any and all jurisdictions and courts in which you previously practiced;
4. Discussion of your possession in New York State of two handguns and a cane sword without a valid permit;
5. Discussion of your need for a handgun in furtherance of your employment;
6. Discussion of the circumstances involving your prior pistol permits in Florida and New York;
7. Discussion of how your repeated and continuous failure to follow court orders in multiple courts and jurisdictions demonstrates good moral character.

Sincerely,

Chauncey J. Watches
Steuben County Court Judge

CJW/rac

cc:     Steuben County Attorney Office
        Steuben County Sheriff's Department
        Steuben County Pistol Permit Clerk

                            Exhibit "E"

# Montgomery Blair Sibley

189 Chemung Street
Corning, N.Y. 14830
607-301-0967
montybsibley@gmail.com

November 12, 2019

Licencing Officer Chauncey J. Watches
3 E. Pulteney Square
Bath, N.Y. 14810

       Re:   *Montgomery Blair Sibley NYS Pistol Permit Application*

Greetings:

       I am in receipt of that certain letter dated **October 25, 2019,** from you in your capacity as a NY Penal Law §265.00(10) Licencing Officer to me. In response:

       First: It is Black Letter Law that I am entitled to "Notice" which this Court has yet to provide to me in the manner which is due given the seriousness of this proceeding. In *In re Gault*, 387 U.S. 1, 33-34 (1967) the Court made this clear: "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must **set forth the alleged misconduct with particularity**. *In re Gault*, 387 U.S. 1, 33-34 (1967)(Emphasis added). *Accord: Wolff v. McDonnell*, 418 U.S. 539, 564 (1974)("Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to **clarify what the charges are, in fact**.")(Emphasis added)

       In that regard, adopting the numbering in your aforementioned letter:

       #1:    Please provide access to or copies of whatever materials you received regarding #1 so that I might be adequately prepared to address that complicated, family court matter which stretched over the better part of a decade and spawned well over two dozen trial and appellate matters. Otherwise, this hearing will take at least one (1) additional day to allow me to present the issues of my first divorce.

       #2:    Please provide access to or copies of whatever materials you received regarding #2 so that I might be adequately prepared to address the hundreds of lawsuits I have appeared as either party or counsel. Otherwise, this hearing will take at least one (1) additional day.

       #3:    Please provide access to or copies of whatever materials you received regarding #3 so that I might be adequately prepared to address the fifteen (15) jurisdictions in which I have

Licencing Officer Chauncey J. Watches
November 12, 2019
Page 2

been involved in "suspensions or disciplinary actions". Otherwise, this hearing will take at least one (1) additional day.

#4:     I will be pleased to address the issues in #4 with the understanding this is <u>not</u> a "discussion" but an adjudicatory proceeding under the N.Y. Administrative Procedures Act. If you are conducting this hearing under some other legal or anomalous authority, please promptly advise me of the same as such a fundamental misunderstanding by me due to lack of "notice" of the nature of this proceeding raises both procedural and substantive due process considerations. In particular, N.Y. St. Admin. P. Act, §306 has a lower standard for admissible evidence then a judicial proceeding. As such, I cannot adequately prepare for the hearing until I am given "notice" of which rules of evidence and procedure the hearing will be utilizing and the claimed authority for such rules.

#5:     I will be pleased to address the issues in #5 per #4 *supra*.

#6:     I will be pleased to address the issues in #6 per #4 *supra*.

#7:     Without conceding that "good moral character" is a proper inquiry in this proceeding for, *inter alia*, the constraints placed by law upon this proceeding by CPL § 530.14, please provide access to or copies of whatever materials you received regarding #7 so that I might be adequately prepared to address this issue. Otherwise, this hearing will take at least one (1) additional day.

<u>Second</u>: Pursuant to the Black Letter Law that a judge is incompetent to testify in a proceeding over which he or she is presiding and by the attached Second Motion to Disqualify, I am once again moving to disqualify you as I intend to call you as a witness at the **January 10, 2020,** hearing.

I look forward to your prompt reply to the foregoing.

Yours,



cc:     w/enclosures

        Steuben County Attorney Office
        Steuben County Sheriff's Department
        Steuben County Pistol Permit Clerk

STATE OF NEW YORK COUNTY COURT

COUNTY OF STEUBEN

In the Matter of the Pistol Permit of

Montgomery Sibley,

         Applicant.

DECISION

Index No. 2019-7PP

Pistol Permit #C35494

Appearances:   Montgomery Sibley, Corning, New York

     Montgomery Sibley submitted a pistol permit application dated July 18, 2018 to the Steuben County Clerk's Office.  The application was forwarded to the Steuben County Sheriff's Office for review and received by the Court May 8, 2019.  The Court denied the application May 29, 2019.  The denial was based on: 1) concern about Mr. Sibley's ability to responsibly possess and care for a pistol; and, 2) concern that Mr. Sibley's history demonstrates that he puts his own interests above the interests of society.  The Court informed Mr. Sibley that he could request a hearing to allow him to testify and present any witnesses to address the Court's concerns.  Upon receipt of Mr. Sibley's request, the Court scheduled the hearing for July 31, 2019.  The Court received further correspondence from Mr. Sibley objecting to the July date and requesting that the hearing be scheduled for January 10, 2020 in the morning for 90 minutes.  The Court accommodated Mr. Sibley's request and the hearing was held on January 10, 2020.

     At the hearing, the Court provided Mr. Sibley the opportunity to present witnesses, testify and introduce written evidence.  Mr. Sibley chose to testify and submit a binder

Exhibit "G"

consisting of 45 documents totaling 250 pages, marked and admitted as Petitioner's Exhibit 1. At the end of his testimony, Mr. Sibley indicated he had nothing further to add and the Court noted that a written decision would be issued.

Penal Law § 400 governs the issuance of pistol permits. The relevant requirement in this matter is that the applicant be "of good moral character". Penal Law § 400 1. (b). Good cause exists to deny a permit where the applicant lacks "the essential temperament or character which should be present in one entrusted with a dangerous [weapon]..., or that he or she does not possess the maturity, prudence, carefulness, good character, temperament, demeanor and judgment necessary to have a pistol permit." *Matter of Gurnett v. Bargnesi*, 147 AD3d 1319 [4th Dept. 2017] [internal quotation marks omitted].

Western civilization has long recognized that good moral character is the ideal state of a person's beliefs and values that provides the most benefit to a healthy and worthy society. Good moral character is more than having an unblemished criminal record. A person of good moral character behaves in an ethical manner and provides the Court, and ultimately society, reassurance that he can be trusted to make good decisions. Aldo Leopold said that "ethical behavior is doing the right thing when no one else is watching – even when doing the wrong thing is legal." Given the nature of the responsibility involved with the handling of a dangerous weapon, the Court must be assured of the applicant's ability to follow the law and abide by rules and regulations necessary to protect the safety of the individual and society. The Court must also have a basis to trust that the applicant's character is such that he will behave in an ethical manner where there are no written rules. The evidence presented does not provide the Court with assurance that Mr. Sibley can follow specific laws, rules and regulations let alone behave in an ethical and responsible manner necessary to be granted a pistol permit. In short, Mr. Sibley has failed to demonstrate his good moral character.

The Court first notes that Mr. Sibley has been suspended from the practice of law in the State of Florida, the District of Columbia and the State of New York as well as various federal courts. This gives the Court pause in considering Mr. Sibley's application. The Preamble to the New York Rules of Professional Conduct notes that a lawyer, as a member of the legal profession, is an officer of the legal system with special responsibility for the quality of justice. A lawyer has a duty to uphold the legal process and demonstrate respect for the legal system as well as further the public's understanding of and confidence in the rule of law and the justice system. Because Mr. Sibley has failed to maintain these duties as an officer of the legal system, the Court lacks confidence that Mr. Sibley will follow both the explicit and implicit rules inherent in the responsibility of a pistol permit holder.

Even assuming, arguendo, that Mr. Sibley has somehow rehabilitated himself from the circumstances that led to his disbarment, his testimony at the hearing belies any such notion. During his testimony, Mr. Sibley argued that although his actions as an attorney may have been vexatious and meritless they were not frivolous. This is a distinction without a difference[1] and factually incorrect. In 2006, the Florida Supreme Court held that Mr. Sibley's "frivolous and abusive filings must immediately come to an end" and found sanctions appropriate. *Sibley v. Fla. Judicial Qualifications Comm'n,* 973 So.2d 425, 427 [2006]. Even after his disbarment, Mr. Sibley has continued to pursue frivolous litigation in various courts. As recently as 2018, Mr. Sibley was sanctioned by the United States District Court for the District of Maryland for his "frivolous and vexatious litigation strategy." *CarMax Auto Superstores, Inc. v. Sibley,* 2018 U.S. Dist. LEXIS 169864, *9 [Md. October 2, 2018].

---

[1] *See also In Re Sibley,* 2010 D.C. App. LEXIS 89, **26 [2010] ["We reject the distinction that respondent seeks to draw between "meritless" claims and "frivolous" claims."]

Finally, this Court agrees with the Fourth Department's assessment of Mr. Sibley: "Respondent, by his conduct, has demonstrated his disregard and disrespect for the judiciary as well as his absence of remorse." 61 A.D.3d 85, 87 [4th Dept. 2009]. Given these circumstances, the Court is unable to find Mr. Sibley to be of good moral character.

Based on Mr. Sibley's application, the testimony presented to the Court, the evidence received and upon due deliberation, the Court confirms the denial of the pistol permit application of Montgomery Sibley. Upon his readmission to the bar of New York, Mr. Sibley may submit a new application for a pistol permit.

This constitutes the decision of the Court.

Dated:  March 9, 2020

Bath, New York

ENTER:

HON. CHAUNCEY J. WATCHES
County Court Judge

# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

**325**

**OP 20-00556**

PRESENT: CENTRA, J.P., PERADOTTO, CURRAN, AND DEJOSEPH, JJ.

---

IN THE MATTER OF MONTGOMERY BLAIR SIBLEY,
PETITIONER,

V                                                    MEMORANDUM AND ORDER

CHAUNCEY JOSEPH WATCHES, RESPONDENT.

---

MONTGOMERY BLAIR SIBLEY, PETITIONER PRO SE.

LETITIA JAMES, ATTORNEY GENERAL, ALBANY (FRANK BRADY OF COUNSEL), FOR
RESPONDENT.

---

Proceeding pursuant to CPLR article 78 (initiated in the
Appellate Division of the Supreme Court in the Fourth Judicial
Department pursuant to CPLR 506 [b] [1]) to review a determination of
respondent. The determination denied the application of petitioner
for a pistol license.

It is hereby ORDERED that the determination is unanimously
modified on the law and the petition is granted in part by annulling
that part of the determination that enjoined petitioner from
reapplying for a pistol license until he is readmitted to the New York
State bar, and as modified the determination is confirmed without
costs.

Memorandum: Petitioner commenced this CPLR article 78 proceeding
seeking, inter alia, to annul the determination denying his pistol
license application. Contrary to petitioner's contention, the alleged
procedural errors that he raises in the petition did not deprive him
of his right to due process during the pistol license application
review process. Initially, we reject his contention that respondent
should have complied with the State Administrative Procedure Act
(SAPA) in determining petitioner's application. We note that SAPA
applies only to agencies of the state government and not to local
officials such as respondent here (*see* State Administrative Procedure
Act § 102 [1]; *Matter of Tefft v Hutchinson*, 93 AD3d 1332, 1333 [4th
Dept 2012]). Indeed, we further note that the relevant statutes
governing review of pistol license applications contemplate that local
officials—rather than state officials—are to review pistol license
applications (*see* Penal Law §§ 265.00 [10]; 400.00 [3] [a]).

We further conclude that petitioner was not denied due process
when respondent communicated with petitioner's employer and the
Sheriff's Office because those communications were necessary for

*Exhibit "H"*

respondent to comply with his responsibility under Penal Law § 400.00 (1) to investigate whether "all statements in a proper application for a license are true" before issuing a license. Respondent needed to communicate with petitioner's employer to investigate petitioner's claim in his application that he needed a pistol for his job. Additionally, we note that the statute requires that "there shall be an investigation of all statements required in the application by the duly constituted police authorities of the locality where such application is made," and that the Sheriff's Office was required to communicate with respondent and "report the results [of its investigation] to the licensing officer" (§ 400.00 [4]). Thus, we reject petitioner's contention that those communications constituted improper ex parte communications that required respondent to disqualify himself from considering the application.

We also reject petitioner's contention that he was denied due process because respondent failed to disclose the substance of his conversation with petitioner's employer. That contention is belied by the record. At the hearing, respondent informed petitioner about the substance of that conversation—i.e., that petitioner's employer said that having a pistol would be helpful, but was not necessary, for petitioner's work. There is no violation of due process where, as here, petitioner was given notice of the information respondent obtained from the employer, and was given the chance to address that information at the hearing (see generally Matter of Curts v Randall, 110 AD3d 1452, 1452 [4th Dept 2013]; Matter of La Grange v Bruhn, 276 AD2d 974, 975 [3d Dept 2000]). Indeed, we note that petitioner introduced evidence at the hearing to support his position that he needed a pistol to do his job.

We further reject petitioner's contention that the failure to hold a hearing before respondent made his initial determination to deny the application violated petitioner's right to due process. Under Penal Law § 400.00 (4-a), a "licensing officer must either deny the application for reasons specifically and concisely stated in writing or grant the application and issue the license applied for. If the licensing officer denies the application, [t]he petitioner must be given the specific reasons for the denial . . . and be given an opportunity to respond to the objections to [his] application" (Matter of Parker v Randall, 120 AD3d 946, 947 [4th Dept 2014] [internal quotation marks omitted]; see Matter of Savitch v Lange, 114 AD2d 372, 373 [2d Dept 1985]). Here, respondent complied with due process and Penal Law § 400.00 (4-a) because, in his initial determination, respondent provided petitioner with a specific reason for the denial of the application and allowed petitioner to request a hearing to address respondent's concerns. There is no requirement under Penal Law § 400.00 that respondent conduct an evidentiary hearing prior to making a determination, provided, inter alia, that petitioner has an adequate opportunity to respond to that determination (see generally Matter of Chomyn v Boller, 137 AD3d 1705, 1706 [4th Dept 2016], lv denied 28 NY3d 908 [2016]).

We also reject petitioner's contention that he lacked notice of

the issues to be considered at the hearing and that respondent did not articulate the reasons for his denial of the application (*see generally Matter of Cuda v Dwyer*, 107 AD3d 1409, 1409 [4th Dept 2013]; *Matter of Vale v Eidens*, 290 AD2d 612, 613 [3d Dept 2002]).  The record squarely contradicts that contention.  Several months before the hearing, respondent sent petitioner a letter notifying him of multiple areas of concern about petitioner's application. Furthermore, respondent's decision denying the application provided specific reasons for that determination (*see generally Parker*, 120 AD3d at 947).

We further reject petitioner's contention that he was deprived of due process based on the length of time it took to process the application (*see* Penal Law § 400.00 [4-a]).  Petitioner submitted his application in July 2018, at which point it was referred to the Sheriff's Office for the investigation required by Penal Law § 400.00 (4).  That investigation was not completed until May 2019.  Respondent made his initial determination denying the application three weeks later.  Although a "police authority" is required to "report the results [of its investigation] to the licensing officer without unnecessary delay" (§ 400.00 [4]), petitioner never sought to compel the Sheriff's Office to speed up the investigation so respondent could process the application, and there is no evidence in the record that respondent unduly delayed his initial determination.  Further, most of the delay about which petitioner complains, which occurred between respondent's initial determination in May 2019 and his final determination in March 2020, was caused by petitioner.  Indeed, petitioner himself requested several adjournments of the hearing, and ultimately requested that the hearing be held in January 2020.  Thus, because respondent is not responsible for the delay in the determination of petitioner's application, he did not deprive petitioner of due process.

With respect to petitioner's challenge to the constitutionality of the pistol licensing application statutes—i.e., Penal Law §§ 400.00 (1) and 265.00 (10)—we note that "[a] declaratory judgment action is the proper vehicle for [such a] challeng[e]" (*Matter of Velez v DiBella*, 77 AD3d 670, 671 [2d Dept 2010]; *see Matter of Nelson v Stander*, 79 AD3d 1645, 1647 [4th Dept 2010]).  Petitioner "may not seek declaratory relief in this original proceeding pursuant to CPLR article 78 . . . [because] this Court lacks jurisdiction to consider a declaratory judgment action in the absence of a proper appeal from a court order or judgment" (*Matter of Jefferson v Siegel*, 28 AD3d 1153, 1154 [4th Dept 2006] [internal quotation marks omitted]; *see Nelson*, 79 AD3d at 1647; *Matter of Cram v Town of Geneva*, 182 AD2d 1102, 1102-1103 [4th Dept 1992]).  Thus, "petitioner's contention[s] that[, inter alia,] certain aspects of the licensing eligibility requirements of Penal Law § 400.00 (1) unconstitutionally infringe upon his right to bear arms under the Second Amendment" are not properly before us (*Matter of Jackson v Anderson*, 149 AD3d 933, 934 [2d Dept 2017]).

We reject petitioner's contention that respondent's determination denying his application was arbitrary or capricious.  "The State has a substantial and legitimate interest and[,] indeed, a grave

responsibility, in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument" (*Matter of Galletta v Crandall*, 107 AD3d 1632, 1632 [4th Dept 2013] [internal quotation marks omitted]).  A licensing officer, such as respondent, "has broad discretion to grant or deny a permit under Penal Law § 400.00 (1)" (*Parker*, 120 AD3d at 947), " 'and may do so for any good cause' " (*Galletta*, 107 AD3d at 1632).  A licensing officer's factual findings and credibility determinations are entitled to great deference (*see generally Cuda*, 107 AD3d at 1410).

Here, we cannot conclude that respondent abused his discretion or acted irrationally in denying the application on the ground that petitioner lacked good moral character (*see Matter of Zeltins v Cook*, 176 AD3d 1574, 1575 [4th Dept 2019]; *Matter of Moreno v Cacace*, 61 AD3d 977, 978-979 [2d Dept 2009]).  Specifically, respondent's determination is amply supported by evidence in the record establishing petitioner's significant history of pursuing vexatious and frivolous litigation, which often resulted in the imposition of sanctions, and his willful failure to pay child support arrears, which resulted in him being held in civil contempt in Florida and incarcerated for 78 days.  Respondent also properly considered that petitioner's behavior resulted in his suspension from the Florida Bar (*see Florida Bar v Sibley*, 979 So 2d 221, 221 [Fla 2008], *reh denied* 995 So 2d 346 [Fla 2008], *cert denied* 555 US 830 [2008]), and the reciprocal suspension of his law license in New York (*Matter of Sibley*, 61 AD3d 85, 87 [4th Dept 2009], *appeal dismissed* 12 NY3d 849 [2009], *reconsideration denied* 12 NY3d 911 [2009], *cert denied* 558 US 808 [2009]), and several other jurisdictions (*see e.g. Matter of Discipline of Sibley*, 559 US 1002, 1002 [2010]; *Matter of Sibley*, 564 F3d 1335, 1337 [DC Cir 2009], *cert dismissed* 558 US 943 [2009]; *Matter of Sibley*, 990 A2d 483, 486 [DC 2010], *cert dismissed* 562 US 806 [2010]).  Further, respondent properly considered evidence that petitioner lacked remorse for his frivolous conduct, showed contempt for the judicial system, and failed to comprehend the nature of his conduct in court (*see generally Zeltins*, 176 AD3d at 1575).

Although respondent did not err in denying the application, we nonetheless also conclude that respondent was without authority to enjoin petitioner from reapplying for a pistol licence until he is readmitted to the New York State bar.  Respondent did not impose that injunction in his capacity as a County Court judge, but rather while acting as a licensing officer (Penal Law § 265.00 [10]) in a quasi-judicial capacity (*see Matter of Goldstein v Schwartz*, 185 AD3d 929, 930 [2d Dept 2020]).  Thus, the issuance of an injunction was "beyond the scope of [respondent's] powers to either deny or grant the application" (*id.; see* Penal Law § 400.00 [4-a]).  We therefore modify the determination accordingly.

Entered:  May 7, 2021

Mark W. Bennett
Clerk of the Court

SUPREME COURT OF THE STATE OF NEW YORK
### Appellate Division, Fourth Judicial Department

**MOTION NO. 325/21**
**OP 20-00556**
PRESENT: CENTRA, J.P., PERADOTTO, CURRAN, AND DEJOSEPH, JJ.

IN THE MATTER OF MONTGOMERY BLAIR SIBLEY, PETITIONER,

                V

CHAUNCEY JOSEPH WATCHES, RESPONDENT.

      Petitioner having moved for reargument of or, in the
alternative, leave to appeal to the Court of Appeals from the
order of this Court entered May 7, 2021,

      Now, upon reading and filing the papers with respect to the
motion, and due deliberation having been had thereon,

      It is hereby ORDERED that the motion is denied.

Entered: July 9, 2021

                                  Mark W. Bennett
                                  Clerk of the Court

Exhibit "I"

# *State of New York*
## *Court of Appeals*

*Decided and Entered on the*
*sixteenth day of December, 2021*

**Present,** Hon. Janet DiFiore, *Chief Judge, presiding.*

Mo. No. 2021-731
In the Matter of Montgomery Blair Sibley,
        Appellant,
    v.
Chauncey Joseph Watches,
        Respondent.

Appellant having appealed and moved for leave to appeal to the Court of

Appeals and for ancillary relief in the above cause;

Upon the papers filed and due deliberation, it is

ORDERED, on the Court's own motion, that the appeal is dismissed, without

costs, upon the ground that no substantial constitutional question is directly involved;

and it is further

ORDERED, that the motion for leave to appeal is denied; and it is further

ORDERED, that the motion for ancillary relief is dismissed as academic.

John P. Asiello
Clerk of the Court

Exhibit "J"

# *State of New York*
## *Court of Appeals*

*Decided and Entered on the*
*twenty-eighth day of April, 2022*

**Present**, Hon. Janet DiFiore, *Chief Judge, presiding.*

Mo. No. 2022-43
In the Matter of Montgomery Blair Sibley,
     Appellant,
      v.
Chauncey Joseph Watches,
     Respondent.

Appellant having moved for reargument &c. in the above cause;

Upon the papers filed and due deliberation, it is

ORDERED, that the motion for reargument &c. is denied.

Judge Troutman took no part.

Heather Davis
Deputy Clerk of the Court

Exhibit "K"

# STATE OF NEW YORK

1

Extraordinary Session

## IN SENATE

July 1, 2022

Introduced by  Sens. STEWART-COUSINS, MYRIE, KAVANAGH -- (at request of
the Governor) -- read twice and ordered printed, and when  printed  to
be committed to the Committee on Rules

AN  ACT  to amend the penal law, the general business law, the executive
law, the civil practice law and rules and the state  finance  law,  in
relation to licensing and other provisions relating to firearms

**The  People  of the State of New York, represented in Senate and Assem-
bly, do enact as follows:**

```
1      Section 1. The section heading and subdivisions 1,  1-a,  2,  4,  4-a,
2   4-b, 10 and 11 of section 400.00 of the penal law, subdivisions 1 and 10
3   as  amended  by chapter 1 of the laws of 2013, paragraph (c) of subdivi-
4   sion 1 as amended by chapter 60 of the laws of 2018,  paragraph  (j)  of
5   subdivision 1 as amended by chapter 208 of the laws of 2022, subdivision
6   1-a  as  added by section 2 of part N of chapter 55 of the laws of 2020,
7   subdivision 2 as amended by chapter 212 of the laws of 2022, subdivision
8   4 as amended by chapter 242 of the laws of  2019,  subdivision  4-a  as
9   added  by  chapter  233 of the laws of 1980, subdivision 4-b as added by
10   chapter 446 of the laws of 1997, paragraph  (c)  of  subdivision  10  as
11   added  by  chapter 212 of the laws of 2022, subdivision 11 as amended by
12   chapter 207 of the laws of 2022, are amended and a new  subdivision  4-c
13   is added to read as follows:
14   [~~Licenses  to  carry,  possess,  repair and dispose of~~] _Licensing and other
15   provisions relating to_ firearms.
16      1. Eligibility. No license shall be issued or renewed pursuant to this
17   section except by the licensing officer, and then  only  after  investi-
18   gation  and  finding  that  all statements in a proper application for a
19   license are true. No license shall be issued or renewed  except  for  an
20   applicant  (a) twenty-one years of age or older, provided, however, that
21   where such applicant has  been  honorably  discharged  from  the  United
22   States  army,  navy,  marine  corps,  air  force  or coast guard, or the
23   national guard of the state of New York, no such age  restriction  shall
```

EXPLANATION--Matter in **italics** (underscored) is new; matter in brackets
[–] is old law to be omitted.

LBD12053-04-2

Exhibit "L"

1  apply;  (b)  of  good  moral  character**, which, for the purposes of this**
2  **article, shall mean having  the  essential  character,  temperament  and**
3  **judgement  necessary to be entrusted with a weapon and to use it only in**
4  **a  manner that does not endanger oneself or others**; (c) who has not been
5  convicted anywhere of a felony or a serious offense or who  is  not  the
6  subject  of  an  outstanding  warrant  of arrest issued upon the alleged
7  commission of a felony or serious offense; (d) who  is  not  a  fugitive
8  from  justice;  (e)  who  is  not an unlawful user of or addicted to any
9  controlled substance as defined in section 21 U.S.C. 802; (f)  who  being
10  an alien (i) is not illegally or unlawfully in the United States or (ii)
11  has  not  been  admitted  to the United States under a nonimmigrant visa
12  subject  to the exception in 18 U.S.C. 922(y)(2); (g) who  has  not  been
13  discharged from the Armed Forces under dishonorable conditions; (h) who,
14  having  been a citizen of the United States, has not renounced his or her
15  citizenship;  (i) who has stated whether he or she has ever suffered any
16  mental illness; (j) who has not been involuntarily committed to a facil-
17  ity under the jurisdiction of an office  of  the  department  of  mental
18  hygiene  pursuant  to article nine or fifteen of the mental hygiene law,
19  article seven hundred thirty or section 330.20 of the criminal procedure
20  law **or substantially similar laws of  any  other  state**,  section  four
21  hundred  two  or five hundred eight of the correction law, section 322.2
22  or 353.4 of the family court act, has not been  civilly  confined  in  a
23  secure  treatment facility pursuant to article ten of the mental hygiene
24  law, or has not been the subject of a report made  pursuant  to  section
25  9.46 of the mental hygiene law; (k) who has not had a license revoked or
26  who  is  not under a suspension or ineligibility order issued pursuant to
27  the provisions of section 530.14  of  the  criminal  procedure  law  or
28  section  eight  hundred  forty-two-a of the family court act; (l) in the
29  county of Westchester, who has successfully completed a firearms  safety
30  course  and  test  as evidenced by a certificate of completion issued in
31  his or her name and endorsed and affirmed under the penalties of perjury
32  by a duly authorized instructor, except that: (i) persons who are honor-
33  ably discharged from the United States army, navy, marine corps or coast
34  guard, or of the national guard of the state of New  York,  and  produce
35  evidence  of  official  qualification  in  firearms  during  the term of
36  service are not required to have completed those hours  of  a  firearms
37  safety  course pertaining to the safe use, carrying, possession, mainte-
38  nance and storage of a firearm; [~~and~~] (ii) persons who were licensed  to
39  possess  a  pistol or revolver prior to the effective date of this para-
40  graph are not required to have completed a firearms  safety  course  and
41  test**, provided,  however, persons with a license issued under paragraph**
42  **(f) of subdivision two of this section prior to  the  effective  date  of**
43  **the  laws  of two thousand twenty-two which amended this paragraph shall**
44  **be required to complete the training required by subdivision nineteen of**
45  **this section prior to the recertification of  such  license;  and  (iii)**
46  **persons applying for a license under paragraph (f) of subdivision two of**
47  **this  section  on or after the effective date of the chapter of the laws**
48  **of two thousand twenty-two which amended this  paragraph  who  shall  be**
49  **required to complete the training required under subdivision nineteen of**
50  **this section for such license**; (m) who has not had a guardian appointed
51  for him or her pursuant to any provision of state law, based on a deter-
52  mination that as a  result  of  marked  subnormal  intelligence,  mental
53  illness, **incompetency,** incapacity, condition or disease, he or she lacks
54  the  mental  capacity to contract or manage his or her own affairs; [~~and~~
55  ~~(n) concerning whom no good cause exists for the denial of the license.~~]
56  **(n) for a license issued under paragraph (f) of subdivision two of  this**

1   section,  that the applicant has not been convicted within five years of
2   the date of the application of any of the following: (i)    assault    in
3   the    third  degree, as defined in section 120.00 of this chapter; (ii)
4   misdemeanor  driving  while intoxicated,  as  defined  in  section  eleven
5   hundred ninety-two of the vehicle and traffic law; or (iii) menacing, as
6   defined  in section 120.15 of this chapter; and (o) for a license issued
7   under paragraph (f) of subdivision two of this section,  the  applicant
8   shall  meet  in  person with the licensing officer for an interview and
9   shall, in addition to any other information or  forms  required  by  the
10  license application submit to the licensing officer the following infor-
11  mation:      (i)  names  and  contact  information for    the    applicant's
12  current  spouse,  or domestic  partner, any other adults residing in the
13  applicant's home, including any adult children  of  the  applicant,  and
14  whether or not there are minors residing, full time or part time, in the
15  applicant's  home;  (ii)  names  and contact information of no less than
16  four character references who    can  attest to the    applicant's    good
17  moral  character and that such applicant has not engaged in any acts, or
18  made any statements  that suggest they are likely to engage  in  conduct
19  that  would result in harm to themselves or others;  (iii)  certification
20  of completion of the training required in subdivision nineteen  of  this
21  section;  (iv)  a  list of former and current social media accounts  of
22  the applicant from the past  three  years  to  confirm  the  information
23  regarding  the  applicants character and conduct as required in subpara-
24  graph (ii) of this paragraph; and (v) such other information required by
25  the  licensing officer that is reasonably necessary and related to the
26  review of the licensing application.
27      1-a.  No  person  shall engage in the business of gunsmith or dealer in
28  firearms unless licensed pursuant  to  this  section.  An  applicant  to
29  engage  in  such  business shall also be a citizen of the United States,
30  more than twenty-one years of age and **shall be required to** maintain  a
31  place of business in the city or county where the license is issued. For
32  such  business,  if  the applicant is a firm or partnership, each member
33  thereof shall comply with all of the  requirements  set  forth  in  this
34  subdivision  and if the applicant is a corporation, each officer thereof
35  shall so comply.
36      [1-a.] 1-b. For purposes of subdivision one of this  section,  serious
37  offense shall include an offense in any jurisdiction or the former penal
38  law  that includes all of the essential elements of a serious offense as
39  defined by subdivision seventeen of  section  265.00  of  this  chapter.
40  Nothing in this subdivision shall preclude the denial of a license based
41  on  the  commission  of,  arrest  for or conviction of an offense in any
42  other jurisdiction which does not include all of the essential  elements
43  of a serious offense.
44      2.  Types  of  licenses.  A license for gunsmith or dealer in firearms
45  shall  be issued to engage in such business. A license for a semiautomat-
46  ic rifle, other than an assault weapon or disguised gun, shall be issued
47  to purchase or take possession of such a [firearm] **semiautomatic  rifle**
48  when such transfer of ownership occurs on or after the effective date of
49  [the]  chapter **two hundred twelve** of the laws of two thousand twenty-two
50  that amended this subdivision. A license for a pistol or revolver, other
51  than an assault weapon or a disguised gun, shall be issued to  (a)  have
52  and  possess  in  his dwelling by a householder; (b) have and possess in
53  his place of business by a merchant or storekeeper; (c) have  and  carry
54  concealed  while so employed by a messenger employed by a banking insti-
55  tution or express company; (d) have and carry concealed by a justice  of
56  the  supreme  court in the first or second judicial departments, or by a

```
 1  judge of the New York city civil court or the  New  York  city  criminal
 2  court;  (e)  have  and  carry  concealed  while so employed by a regular
 3  employee of an institution of the state, or of any county, city, town or
 4  village,  under  control  of a commissioner of correction of the city or
 5  any warden, superintendent or head keeper of any state prison,  peniten-
 6  tiary,  workhouse,  county jail or other institution for the detention of
 7  persons convicted or accused of crime or held as witnesses  in  criminal
 8  cases,  provided that application is made therefor by such commissioner,
 9  warden, superintendent or head keeper; (f)  have  and  carry  concealed,
10  without  regard  to  employment  or  place  of possession **subject to the**
11  **restrictions of state and federal law**, by any person [~~when proper cause~~
12  ~~exists for the issuance thereof~~]; and (g) have, possess, collect and
13  carry antique pistols which are defined as follows: (i) any single shot,
14  muzzle loading pistol with a matchlock, flintlock,  percussion  cap,  or
15  similar  type  of ignition system manufactured in or before [~~1898~~] **1898**,
16  which is not designed for using rimfire or conventional centerfire fixed
17  ammunition; and (ii) any replica of any pistol described in clause  (i)
18  hereof if such replica[~~--~~]**:**
19      (1)  is  not  designed or redesigned for using rimfire or conventional
20  centerfire fixed ammunition, or
21      (2) uses rimfire or conventional centerfire fixed ammunition which  is
22  no  longer  manufactured  in  the United States and which is not readily
23  available in the ordinary channels of commercial trade.
24      4. Investigation. Before a license is issued or renewed,  there  shall
25  be an investigation of all statements required in the application by the
26  duly  constituted police authorities of the locality where such applica-
27  tion is made, including but not limited to such records as may be acces-
28  sible to the division of state police or division  of  criminal  justice
29  services  pursuant  to section 400.02 of this article. For that purpose,
30  the records of the  appropriate  office  of  the  department  of  mental
31  hygiene  concerning  previous or present mental illness of the applicant
32  shall be available for inspection by the investigating  officer  of  the
33  police  authority.  Where the applicant is domiciled in a foreign state,
34  the investigation shall include inquiry of the foreign state for records
35  concerning the previous or present mental illness of the applicant, and,
36  to the extent necessary for inspection by the investigating officer, the
37  applicant shall execute a waiver of confidentiality of  such  record  in
38  such form as may be required by the foreign state. In order to ascertain
39  any  previous  criminal  record, the investigating officer shall take the
40  fingerprints and physical descriptive  data  in  quadruplicate  of  each
41  individual by whom the application is signed and verified. Two copies of
42  such  fingerprints  shall  be  taken on standard fingerprint cards eight
43  inches square, and one copy may be taken on a  card  supplied  for  that
44  purpose  by the federal bureau of investigation; provided, however, that
45  in the case of a corporate applicant that  has  already  been  issued  a
46  dealer  in firearms license and seeks to operate a firearm dealership at
47  a second or subsequent location, the original fingerprints on  file  may
48  be  used  to  ascertain  any criminal record in the second or subsequent
49  application unless any of the corporate officers have changed since  the
50  prior  application, in which case the new corporate officer shall comply
51  with procedures governing an initial application for such license.  When
52  completed,  one  standard card shall be forwarded to and retained by the
53  division of criminal justice services in the  executive  department,  at
54  Albany.  A search of the files of such division and written notification
55  of the results of the search **shall be forwarded** to  the  investigating
56  officer **and** shall  be made without unnecessary delay. Thereafter, such
```

S. 1                                5

 1  division shall notify the licensing officer and  the  executive  depart-
 2  ment,  division  of  state police, Albany, of any criminal record of the
 3  applicant filed therein subsequent to the search of its files. A  second
 4  standard  card,  or  the  one supplied by the federal bureau of investi-
 5  gation, as the case may be, shall be forwarded to that bureau at  Wash-
 6  ington  with  a  request  that  the  files of the bureau be searched and
 7  notification of the results of the search be made to  the  investigating
 8  police  authority.  Of the remaining two fingerprint cards, one shall be
 9  filed with the executive department, division of state  police,  Albany,
10  within  ten  days  after  issuance  of  the license, and the other **shall**
11  remain on file with the investigating police authority. No such  finger-
12  prints may be inspected by any person other than a peace officer, who is
13  acting  pursuant  to  his  or  her  special duties, or a police officer,
14  except on order of a judge or justice of a court of record  either  upon
15  notice  to  the  licensee or without notice, as the judge or justice may
16  deem appropriate. Upon  completion  of  the  investigation,  the  police
17  authority  shall  report  the  results  to the licensing officer without
18  unnecessary delay.
19    4-a. <u>Appeals from denial of an application, renewal,  recertification</u>
20  <u>or  license  revocation.  If an application for a license is denied, not</u>
21  <u>renewed, not recertified, or revoked, the licensing officer shall  issue</u>
22  <u>a  written  notice  to  the applicant setting forth the reasons for such</u>
23  <u>denial. An applicant may, within ninety days of receipt of such  notice,</u>
24  <u>request  a  hearing to appeal the denial to the appeals board created by</u>
25  <u>the division of criminal justice  services  and  the  superintendent  of</u>
26  <u>state police. An individual may be represented by counsel at any appear-</u>
27  <u>ance  before  the  appeals board and shall be afforded an opportunity to</u>
28  <u>present additional evidence in  support  of  their  application.    The</u>
29  <u>commissioner  of  criminal  justice  services and the superintendent of</u>
30  <u>state police shall  promulgate  rules  and  regulations  governing  such</u>
31  <u>appeals process.</u>
32    **4-b.** Processing  of  license  applications. Applications for licenses
33  shall be accepted for processing by the licensing officer at the time of
34  presentment. Except upon written notice  to  the  applicant  specifically
35  stating  the  reasons  for any delay, in each case the licensing officer
36  shall act upon any application for a license pursuant  to  this  section
37  within  six  months of the date of presentment of such an application to
38  the appropriate authority. Such delay may only be  for  good  cause  and
39  with  respect  to  the  applicant.  In  acting  upon an application, the
40  licensing officer shall either deny the application for reasons  specif-
41  ically  and  concisely  stated  in  writing or grant the application and
42  issue the license applied for.
43    [~~4-b.~~] **4-c.** Westchester county firearms safety course certificate.  In
44  the  county  of  Westchester,  at the time of application, the licensing
45  officer to which the license application is made shall provide a copy of
46  the safety course booklet to each license applicant. Before such license
47  is issued, such licensing  officer  shall  require  that  the  applicant
48  submit  a  certificate  of  successful completion of a firearms safety
49  course and test issued in his or her name  and  endorsed  and  affirmed
50  under the penalties of perjury by a duly authorized instructor.
51    10.  License:  expiration,  certification and renewal. (a) Any license
52  for gunsmith or dealer in firearms and, in the city of  New  York,  any
53  license  to  carry  or  possess a pistol or revolver, issued at any time
54  pursuant to this section or prior to the first  day  of  July,  nineteen
55  hundred  sixty-three  and not limited to expire on an earlier date fixed
56  in the license, shall<u>, except as otherwise provided in paragraph (d)  of</u>

1  **this subdivision,** expire  not  more than three years after the date of
2  issuance. In  the  counties  of  Nassau,  Suffolk  and  Westchester,  any
3  license  to  carry  or  possess a pistol or revolver, issued at any time
4  pursuant  to  this  section  or prior to the first day of July, nineteen
5  hundred sixty-three and not limited to expire on an earlier  date  fixed
6  in  the  license, shall expire not more than five years after the date of
7  issuance; however, in the county of Westchester, any such license  shall
8  be  certified  prior to the first day of April, two thousand, in accord-
9  ance with a schedule to be contained in regulations promulgated  by  the
10 commissioner  of  the  division  of criminal justice services, and every
11 such license shall**, except as otherwise provided in paragraph  (d)  of**
12 **this  subdivision,**  be  recertified  every  five  years thereafter. For
13 purposes of this section certification  shall  mean  that  the  licensee
14 shall  provide  to the licensing officer the following information only:
15 current name, date of birth, current address, and the make, model, cali-
16 ber and serial number of all firearms currently possessed. Such  certif-
17 ication  information  shall be filed by the licensing officer in the same
18 manner as an amendment. Elsewhere than in the city of New York  and  the
19 counties  of  Nassau,  Suffolk  and Westchester, any license to carry or
20 possess a pistol or revolver,  issued  at  any  time  pursuant  to  this
21 section  or prior to the first day of July, nineteen hundred sixty-three
22 and not previously revoked or cancelled, shall be in  force  and  effect
23 until  revoked  as herein provided. Any license not previously cancelled
24 or revoked shall remain in full force and effect for thirty days  beyond
25 the  stated  expiration date on such license. Any application to renew a
26 license that has not previously expired, been revoked or cancelled shall
27 thereby extend the term of the license until disposition of the applica-
28 tion by the licensing officer. In the case of a license for gunsmith  or
29 dealer  in  firearms,  in  counties having a population of less than two
30 hundred thousand inhabitants,  photographs  and  fingerprints  shall  be
31 submitted on original applications and upon renewal thereafter [**only**] at
32 [~~six~~] **three**  year  intervals.  Upon satisfactory proof that a currently
33 valid original license has been despoiled,  lost  or  otherwise  removed
34 from  the  possession of the licensee and upon application containing an
35 additional photograph of the licensee, the licensing officer shall issue
36 a duplicate license.
37     (b) All licensees shall be recertified to the division of state police
38 every five years thereafter**, except as otherwise provided in  paragraph**
39 **(d) of this subdivision**. Any license issued before the effective date of
40 the  chapter of the laws of two thousand thirteen which added this para-
41 graph shall be recertified by the licensee on or before January  thirty-
42 first,  two  thousand eighteen, and not less than one year prior to such
43 date, the state police shall send a notice to all  license  holders  who
44 have  not  recertified  by such time. Such recertification shall be in a
45 form as approved by the superintendent  of  state  police,  which  shall
46 request the license holder's name, date of birth, gender, race, residen-
47 tial address, social security number, firearms possessed by such license
48 holder,  email address at the option of the license holder and an affir-
49 mation that such  license  holder  is  not  prohibited  from  possessing
50 firearms.  The form may be in an electronic form if so designated by the
51 superintendent of state police. Failure  to  recertify  shall  act  as  a
52 revocation of  such license. If the New York state police discover as a
53 result of the recertification process that a licensee failed to  provide
54 a  change  of  address,  the New York state police shall not require the
55 licensing officer to revoke such license.

1    (c) A license to purchase or take possession of a semiautomatic  rifle
2   as  defined  in  subdivision  two of this section shall be recertified to
3   the applicable licensing officer every five years following the issuance
4   of such license. Failure to renew such a license shall  be  a  violation
5   punishable  by  a fine not to exceed two hundred fifty dollars, and such
6   failure to renew shall be  considered  by  the  licensing  officer  when
7   reviewing  future license applications by the license holder pursuant to
8   this chapter.
9    __(d) Licenses issued under paragraph (f) of  subdivision  two  of  this__
10  __section  shall  be  recertified or renewed in the same form and manner as__
11  __otherwise required by this subdivision, provided however, that  such__
12  __licenses shall be recertified or renewed every three years following the__
13  __issuance  of  such  license.  For licenses issued prior to the effective__
14  __date of this paragraph that were issued more than three years  prior  to__
15  __such  date, or will expire in less than one year from such date shall be__
16  __recertified or renewed within one year of such date.__
17    11. License: revocation and suspension. (a) The conviction of a licen-
18  see anywhere of a felony or serious offense or a licensee  at  any  time
19  becoming  ineligible to obtain a license [~~under this section shall oper-~~
20  ~~ate as~~]__, including engaging in conduct__ that would have resulted  in  the
21  __denial  of  a license, under this section shall operate as or be grounds__
22  __for,__ a revocation of the license. A license may be revoked or  suspended
23  as  provided  for  in  section  530.14 of the criminal procedure law or
24  section eight hundred forty-two-a of the family court act. Except for  a
25  license issued pursuant to section 400.01 of this article, a license may
26  be revoked and cancelled at any time in the city of New York, and in the
27  counties  of Nassau and Suffolk, by the licensing officer, and elsewhere
28  than in the city of New York by any judge  or  justice  of  a  court  of
29  record;  a license issued pursuant to section 400.01 of this article may
30  be revoked and cancelled at any time by the  licensing  officer  or  any
31  judge  or justice of a court of record. A license to engage in the busi-
32  ness of dealer may be revoked or suspended  for  any  violation  of  the
33  provisions  of  article  thirty-nine-BB of the general business law. The
34  official revoking a license shall give written  notice  thereof  without
35  unnecessary delay to the executive department, division of state police,
36  Albany,  and  shall  also notify immediately the duly constituted police
37  authorities of the locality.  __The licensing officer  shall  revoke  any__
38  __license  issued  in  which  an applicant knowingly made a material false__
39  __statement on the application.  Notice of a revocation under this  subdi-__
40  __vision  shall  be  issued in writing and shall include the basis for the__
41  __determination, which shall  be  supported  by  a  preponderance  of  the__
42  __evidence. Such notice shall also include information regarding the abil-__
43  __ity  to  appeal  such  decision in accordance with subdivision four-a of__
44  __this section.__
45    (b) Whenever the director of community services or his or her designee
46  makes a report pursuant to section 9.46 of the mental hygiene law,  the
47  division  of  criminal  justice  services shall convey such information,
48  whenever it determines that the person named in the report  possesses  a
49  license  issued  pursuant  to this section, to the appropriate licensing
50  official, who shall issue an order suspending or revoking such license.
51    (c) In any instance in  which  a  person's  license  is  suspended  or
52  revoked  under  paragraph  (a)  or  (b) of this subdivision, such person
53  shall surrender such license to the appropriate licensing  official  and
54  any  and  all  firearms,  rifles, or shotguns owned or possessed by such
55  person shall be surrendered to an appropriate law enforcement agency  as
56  provided  in  subparagraph  (f)  of  paragraph  one  of subdivision a of

1    section 265.20 of this chapter. In  the  event  such  license,  firearm,
2    shotgun,  or  rifle  is not surrendered, such items shall be removed and
3    declared a nuisance and any  police  officer  or  peace  officer  acting
4    pursuant  to  his  or her special duties is authorized to remove any and
5    all such weapons.
6        § 2. Section 837 of the executive law is  amended  by  adding  a  new
7    subdivision 23 to read as follows:
8        23.  (a)  In  conjunction with the superintendent of the state police,
9    promulgate policies and procedures with  regard  to  standardization  of
10   firearms  safety training required under subdivision nineteen of section
11   400.00 of the penal law, which shall  include  the  approval  of  course
12   materials and promulgation of proficiency standards for live fire train-
13   ing; and
14       (b)  In conjunction with the superintendent of state police, create an
15   appeals board for the purpose of hearing appeals as provided in subdivi-
16   sion four-a of section 400.00 of the penal law and promulgate rules  and
17   regulations governing such appeals.
18       § 3. The executive law is amended by adding a new section 235 to read
19   as follows:
20       § 235. Firearms safety training, and licensing appeals. 1. The  super-
21   intendent shall, in conjunction with the commissioner of the division of
22   criminal  justice  services,  promulgate  policies  and procedures with
23   regard to standardization of firearms  safety  training  required  under
24   subdivision  nineteen  of  section  400.00 of the penal law, which shall
25   include the approval of course materials and the promulgation of  profi-
26   ciency standards for live fire training.
27       2.  The  superintendent,  in  conjunction with the commissioner of the
28   division of criminal justice services, shall create an appeals board for
29   the purpose of hearing appeals as  provided  in  subdivision  four-a  of
30   section  400.00  of  the  penal law and promulgate rules and regulations
31   governing such appeals.
32       § 4. The penal law is amended by adding a new section 265.01-e to read
33   as follows:
34       § 265.01-e Criminal possession of a  firearm,  rifle  or  shotgun  in  a
35                   sensitive location.
36       1.  A  person  is guilty of criminal possession of a firearm, rifle or
37   shotgun in a sensitive location when such person  possesses  a  firearm,
38   rifle  or shotgun in or upon a sensitive location, and such person knows
39   or reasonably should know such location is a sensitive location.
40       2. For the purposes of this section, a sensitive location shall mean:
41       (a) any place owned or under the control  of  federal, state  or  local
42   government,  for  the  purpose  of  government  administration, including
43   courts:
44       (b) any location providing health,  behavioral  health,  or  chemical
45   dependance care or services;
46       (c) any place of worship or religious observation;
47       (d) libraries, public playgrounds, public parks, and zoos;
48       (e)  the  location of any program licensed, regulated, certified, fund-
49   ed, or approved by the office of  children  and  family  services  that
50   provides  services  to  children,  youth,  or  young adults, any legally
51   exempt childcare provider; a childcare program for  which  a  permit  to
52   operate  such  program  has  been issued by the department of health and
53   mental hygiene pursuant to the health code of the city of New York;
54       (f) nursery schools, preschools, and summer camps;

1   (g) the location of any program licensed, regulated, certified, oper-
2   ated, or funded by the office for people with developmental disabili-
3   ties;
4   (h) the location of any program licensed, regulated, certified, oper-
5   ated, or funded by office of addiction services and supports;
6   (i) the location of any program licensed, regulated, certified, oper-
7   ated, or funded by the office of mental health;
8   (j) the location of any program licensed, regulated, certified, oper-
9   ated, or funded by the office of temporary and disability assistance;
10  (k) homeless shelters, runaway homeless youth shelters, family shel-
11  ters, shelters for adults, domestic violence shelters, and emergency
12  shelters, and residential programs for victims of domestic violence;
13  (l) residential settings licensed, certified, regulated, funded, or
14  operated by the department of health;
15  (m) in or upon any building or grounds, owned or leased, of any educa-
16  tional institutions, colleges and universities, licensed private career
17  schools, school districts, public schools, private schools licensed
18  under article one hundred one of the education law, charter schools,
19  non-public schools, board of cooperative educational services, special
20  act schools, preschool special education programs, private residential
21  or non-residential schools for the education of students with disabili-
22  ties, and any state-operated or state-supported schools;
23  (n) any place, conveyance, or vehicle used for public transportation
24  or public transit, subway cars, train cars, buses, ferries, railroad,
25  omnibus, marine or aviation transportation; or any facility used for or
26  in connection with service in the transportation of passengers,
27  airports, train stations, subway and rail stations, and bus terminals;
28  (o) any establishment issued a license for on-premise consumption
29  pursuant to article four, four-A, five, or six of the alcoholic beverage
30  control law where alcohol is consumed and any establishment licensed
31  under article four of the cannabis law for on-premise consumption;
32  (p) any place used for the performance, art entertainment, gaming, or
33  sporting events such as theaters, stadiums, racetracks, museums, amuse-
34  ment parks, performance venues, concerts, exhibits, conference centers,
35  banquet halls, and gaming facilities and video lottery terminal facili-
36  ties as licensed by the gaming commission;
37  (q) any location being used as a polling place;
38  (r) any public sidewalk or other public area restricted from general
39  public access for a limited time or special event that has been issued a
40  permit for such time or event by a governmental entity, or subject to
41  specific, heightened law enforcement protection, or has otherwise had
42  such access restricted by a governmental entity, provided such location
43  is identified as such by clear and conspicuous signage;
44  (s) any gathering of individuals to collectively express their consti-
45  tutional rights to protest or assemble;
46  (t) the area commonly known as Times Square, as such area is deter-
47  mined and identified by the city of New York; provided such area shall
48  be clearly and conspicuously identified with signage.
49  3. This section shall not apply to:
50  (a) consistent with federal law, law enforcement who qualify to carry
51  under the federal law enforcement officers safety act, 18 U.S.C. 926C;
52  (b) persons who are police officers as defined in subdivision thirty-
53  four of section 1.20 of the criminal procedure law;
54  (c) persons who are designated peace officers by section 2.10 of the
55  criminal procedure law;

1   (d) persons who were employed as police officers as defined in subdi-
2   vision thirty-four of section 1.20 of the criminal procedure law but are
3   retired;
4   (e) security guards as defined by and registered under article seven-A
5   of the general business law, who have been granted a special armed
6   registration card, while at the location of their employment and during
7   their work hours as such a security guard;
8   (f) active-duty military personnel;
9   (g) persons licensed under paragraph (c), (d) or (e) of subdivision
10  two of section 400.00 of this chapter while in the course of his or her
11  official duties;
12  (h) a government employee under the express written consent of such
13  employee's supervising government entity for the purposes of natural
14  resource protection and management;
15  (i) persons lawfully engaged in hunting activity, including hunter
16  education training; or
17  (j) persons operating a program in a sensitive location out of their
18  residence, as defined by this section, which is licensed, certified,
19  authorized, or funded by the state or a municipality, so long as such
20  possession is in compliance with any rules or regulations applicable to
21  the operation of such program and use or storage of firearms.
22  Criminal possession of a firearm, rifle or shotgun in a sensitive
23  location is a class E felony.
24  § 5. The penal law is amended by adding a new section 265.01-d to read
25  as follows:
26  § 265.01-d Criminal possession of a weapon in a restricted location.
27  1. A person is guilty of criminal possession of a weapon in a
28  restricted location when such person possesses a firearm, rifle, or
29  shotgun and enters into or remains on or in private property where such
30  person knows or reasonably should know that the owner or lessee of such
31  property has not permitted such possession by clear and conspicuous
32  signage indicating that the carrying of firearms, rifles, or shotguns on
33  their property is permitted or has otherwise given express consent.
34  2. This section shall not apply to:
35  (a) police officers as defined in section 1.20 of the criminal proce-
36  dure law;
37  (b) persons who are designated peace officers as defined in section
38  2.10 of the criminal procedure law;
39  (c) persons who were employed as police officers as defined in section
40  1.20 of the criminal procedure law, but are retired;
41  (d) security guards as defined by and registered under article seven-A
42  of the general business law who has been granted a special armed regis-
43  tration card, while at the location of their employment and during their
44  work hours as such a security guard;
45  (e) active-duty military personnel;
46  (f) persons licensed under paragraph (c), (d) or (e) of subdivision
47  two of section 400.00 of this chapter while in the course of his or her
48  official duties; or
49  (g) persons lawfully engaged in hunting activity.
50  Criminal possession of a weapon in a restricted location is a class E
51  felony.
52  § 6. Subdivision a of section 265.20 of the penal law is amended by
53  adding a new paragraph 3-a to read as follows:
54  3-a. Possession of a pistol or revolver by a person undergoing live-
55  fire range training pursuant to section 400.00 of this chapter while

1  such person is undergoing such training and is supervised by a duly
2  authorized instructor.
3  § 7. Section 400.02 of the penal law, as amended by chapter 244 of the
4  laws of 2019, is amended to read as follows:
5  § 400.02 Statewide license and record database.
6  1. There shall be a statewide license and record database which shall
7  be created and maintained by the division of state police the cost of
8  which shall not be borne by any municipality. Records assembled or
9  collected for purposes of inclusion in such database shall not be
10 subject to disclosure pursuant to article six of the public officers
11 law. [Records] All records containing granted license applications from
12 all licensing authorities shall be [periodically] monthly checked by the
13 division of criminal justice services in conjunction with the division
14 of state police against criminal conviction, criminal indictment, mental
15 health, extreme risk protection orders, orders of protection, and all
16 other records as are necessary to determine their continued accuracy as
17 well as whether an individual is no longer a valid license holder. The
18 division of criminal justice services shall also check pending applica-
19 tions made pursuant to this article against such records to determine
20 whether a license may be granted. All state and local agencies shall
21 cooperate with the division of criminal justice services, as otherwise
22 authorized by law, in making their records available for such checks.
23 The division of criminal justice services, upon determining that an
24 individual is ineligible to possess a license, or is no longer a valid
25 license holder, shall notify the applicable licensing official of such
26 determination and such licensing official shall not issue a license or
27 shall revoke such license and any weapons owned or possessed by such
28 individual shall be removed consistent with the provisions of subdivi-
29 sion eleven of section 400.00 of this article. Local and state law
30 enforcement shall have access to such database in the performance of
31 their duties. Records assembled or collected for purposes of inclusion
32 in the database established by this section shall be released pursuant
33 to a court order.
34 2. There shall be a statewide license and record database specific for
35 ammunition sales which shall be created and maintained by the division
36 of state police the cost of which shall not be borne by any municipality
37 no later than thirty days upon designating the division of state police
38 as the point of contact to perform both firearm and ammunition back-
39 ground checks under federal and state law. Records assembled or
40 collected for purposes of inclusion in such database shall not be
41 subject to disclosure pursuant to article six of the public officers
42 law. All records containing granted license applications from all
43 licensing authorities shall be monthly checked by the division of crimi-
44 nal justice services in conjunction with the division of state police
45 against criminal conviction, criminal indictments, mental health,
46 extreme risk protection orders, orders of protection, and all other
47 records as are necessary to determine their continued accuracy as well
48 as whether an individual is no longer a valid license holder. The divi-
49 sion of criminal justice services shall also check pending applications
50 made pursuant to this article against such records to determine whether
51 a license may be granted. All state and local agencies shall cooperate
52 with the division of criminal justice services, as otherwise authorized
53 by law, in making their records available for such checks. No later than
54 thirty days after the superintendent of the state police certifies that
55 the statewide license and record database established pursuant to this
56 section and the statewide license and record database established for

1  ammunition  sales  are  operational  for the purposes of this section, a
2  dealer in firearms licensed pursuant to section 400.00 of this  article,
3  a  seller of ammunition as defined in subdivision twenty-four of section
4  265.00  of  this  chapter shall not transfer any ammunition to any other
5  person who is not a dealer in firearms as defined in subdivision nine of
6  such section 265.00 or a seller of ammunition as defined in  subdivision
7  twenty-four of section 265.00 of this chapter, unless:
8    (a) before  the  completion  of  the transfer, the licensee or seller
9  contacts the statewide license and  record  database  and  provides  the
10 database  with  information sufficient to identify such dealer or seller
11 transferee based on information on the transferee's identification docu-
12 ment as defined in paragraph (c) of this subdivision,  as  well  as  the
13 amount,  caliber, manufacturer's name and serial number, if any, of such
14 ammunition;
15   (b) the licensee or seller is provided with  a  unique  identification
16 number; and
17   (c)  the  transferor  has  verified  the identity of the transferee by
18 examining a valid state identification document of the transferee issued
19 by the department of motor vehicles or if the transferee is not a  resi-
20 dent of the state of New York, a valid identification document issued by
21 the  transferee's  state or country of residence containing a photograph
22 of the transferee.
23   § 8. Subdivisions 2 and 6 of section 400.03 of the penal law, as added
24 by chapter 1 of the laws of 2013, are amended to read as follows:
25   2. Any seller of ammunition or dealer in firearms shall keep [a record
26 book] either an electronic record, or dataset, or an  organized
27 collection  of  structured  information, or data, typically stored elec-
28 tronically in a computer system approved as to form by  the  superinten-
29 dent  of state police. In the record [book] shall be entered at the time
30 of every transaction involving ammunition the date, name,  age,  occupa-
31 tion  and residence of any person from whom ammunition is received or to
32 whom ammunition is delivered, and the amount,  calibre,  manufacturer's
33 name  and  serial number, or if none, any other distinguishing number or
34 identification mark on such ammunition. [The record book shall be  main-
35 tained  on the premises mentioned and described in the license and shall
36 be open at all reasonable hours for inspection  by  any  peace  officer,
37 acting  pursuant  to  his  or her special duties, or police officer. Any
38 record produced pursuant to this section and any transmission thereof to
39 any government agency shall  not  be  considered  a  public  record  for
40 purposes of article six of the public officers law.]
41   6.  If  the  superintendent  of state police certifies that background
42 checks of ammunition purchasers may be conducted  through  the  national
43 instant  criminal  background  check system  or through the division of
44 state police once the division has been designated point of contact, use
45 of that system by a dealer or seller  shall  be  sufficient  to  satisfy
46 subdivisions  four  and  five  of  this section and such checks shall be
47 conducted through such system, provided that a  record  of  such  trans-
48 action  shall  be  forwarded to the state police in a form determined by
49 the superintendent.
50   § 9. Section 265.45 of the penal law, as amended by chapter 133 of the
51 laws of 2019, is amended to read as follows:
52 § 265.45 Failure to safely store rifles, shotguns, and firearms  in  the
53           first degree.
54   1.  No  person who owns or is custodian of a rifle, shotgun or firearm
55 who resides with an individual who: (i) is under [sixteen]  eighteen
56 years of age; (ii) such person knows or has reason to know is prohibited

1  from  possessing  a rifle, shotgun or firearm pursuant to a temporary or
2  final extreme risk protection order issued under  article  sixty-three-A
3  of  the civil practice law and rules or 18 U.S.C. § 922(g) (1), (4), (8)
4  or  (9);  or (iii) such person knows or has reason to know is prohibited
5  from possessing a rifle, shotgun or firearm based on a conviction for  a
6  felony  or a serious offense, shall store or otherwise leave such rifle,
7  shotgun or firearm out of his or her  immediate  possession  or  control
8  without  having  first securely locked such rifle, shotgun or firearm in
9  an appropriate safe storage depository or rendered it incapable of being
10 fired by use of a gun locking device appropriate to that weapon.
11    **2. No person shall store or  otherwise  leave  a  rifle,  shotgun,  or**
12 **firearm out of his or her immediate possession or control inside a vehi-**
13 **cle without first removing the ammunition from and securely locking such**
14 **rifle,  shotgun,  or firearm in an appropriate safe storage depository out**
15 **of sight from outside of the vehicle.**
16    **3.** For purposes of this section "safe storage depository" shall mean a
17 safe or other secure container which, when locked, is incapable of being
18 opened without the key, **keypad,** combination or other unlocking mechanism
19 and  is  capable  of  preventing  an  unauthorized person from obtaining
20 access to and possession of the weapon contained therein  **and  shall  be**
21 **fire,  impact,  and tamper resistant.** Nothing in this section shall be
22 deemed to affect, impair or supersede any special or local act  relating
23 to  the  safe storage of rifles, shotguns or firearms which impose addi-
24 tional requirements on the owner or custodian of such weapons.  **For  the**
25 **purposes  of  subdivision  two  of  this section, a glove compartment or**
26 **glove box shall not be considered an appropriate safe storage  deposito-**
27 **ry.**
28    **4.**  It shall not be a violation of this section to allow a person less
29 than [~~sixteen~~] **eighteen** years of age access to: (i) a firearm, rifle  or
30 shotgun for lawful use as authorized under paragraph seven or seven-e of
31 subdivision  or  section  265.20  of this article, or (ii) a rifle or
32 shotgun for lawful use as authorized by article eleven of the  environ-
33 mental  conservation  law  when such person less than [~~sixteen~~] **eighteen**
34 years of age is the holder of a hunting license or permit and such rifle
35 or shotgun is used in accordance with such law.
36    Failure to safely store rifles, shotguns, and firearms  in  the  first
37 degree is a class A misdemeanor.
38    § 10. The penal law is amended by adding a new section 400.30 to read
39 as follows:
40 **§ 400.30 Application.**
41    **Nothing in this article shall be construed to impair  or  in  any  way**
42 **prevent  the enactment or application of any local law, code, ordinance,**
43 **rule or regulation that is more restrictive  than  any  requirement  set**
44 **forth in or established by this article.**
45    §  11.  Section 270.20 of the penal law, as added by chapter 56 of the
46 laws of 1984, and subdivision 1 as amended by chapter 317 of the laws of
47 2001, is amended to read as follows:
48 § 270.20 Unlawful wearing of [~~a~~] body [~~vest~~] **armor**.
49    1. A person is guilty of the unlawful wearing of [~~a~~] body [~~vest~~] **armor**
50 when acting either alone or with one or more other persons  he  commits
51 any  violent  felony offense defined in section 70.02 while possessing a
52 firearm, rifle or shotgun and in the course of  and  in  furtherance  of
53 such crime he **or she** wears [~~a~~] body [~~vest~~] **armor**.
54    2.  For  the purposes of this section [~~a~~] "body [~~vest~~] **armor**" means [~~a~~
55 ~~bullet-resistant soft body armor providing, as a minimum standard,  the~~
56 ~~level  of  protection  known as threat level I which shall mean at least~~

1 ~~seven layers of bullet-resistant material providing protection from~~
2 ~~three shots of one hundred fifty-eight grain lead ammunition fired from~~
3 ~~a .38 calibre handgun at a velocity of eight hundred fifty feet per~~
4 ~~second]__ any product that is a personal protective body covering intended__
5 __to protect against gunfire, regardless of whether such product is to be__
6 __worn alone or is sold as a complement to another product or garment.__
7    The unlawful wearing of [a] body [~~vest~~] __armor__ is a class E felony.
8    § 12. Section 270.21 of the penal law, as added by chapter 210 of the
9 laws of 2022, is amended to read as follows:
10 § 270.21 Unlawful purchase of [a] body [~~vest~~] __armor__.
11    A person is guilty of the unlawful purchase of [a] body [~~vest~~] __armor__
12 when, not being engaged or employed in an eligible profession, they
13 knowingly purchase or take possession of [a] body [~~vest~~] __armor__, as such
14 term is defined in subdivision two of section 270.20 of this article.
15 This section shall not apply to individuals or entities engaged or
16 employed in eligible professions, which shall include police officers as
17 defined in section 1.20 of the criminal procedure law, peace officers as
18 defined in section 2.10 of the criminal procedure law, persons in mili-
19 tary service in the state of New York or military or other service for
20 the United States, and such other professions designated by the depart-
21 ment of state in accordance with section one hundred forty-four-a of the
22 executive law.
23    Unlawful purchase of [a] body [~~vest~~] __armor__ is a class A misdemeanor
24 for a first offense and a class E felony for any subsequent offense.
25    § 13. Section 270.22 of the penal law, as added by chapter 210 of the
26 laws of 2022, is amended to read as follows:
27 § 270.22 Unlawful sale of [a] body [~~vest~~] __armor__.
28    A person is guilty of the unlawful sale of [a] body [~~vest~~] __armor__ when
29 they sell, exchange, give or dispose of [a] body [~~vest~~] __armor__, as such
30 term is defined in subdivision two of section 270.20 of this article, to
31 an individual whom they know or reasonably should have known is not
32 engaged or employed in an eligible profession, as such term is defined
33 in section 270.21 of this article.
34    Unlawful sale of [a] body [~~vest~~] __armor__ is a class A misdemeanor for
35 the first offense and a class E felony for any subsequent offense.
36    § 14. Section 396-eee of the general business law, as added by chapter
37 210 of the laws of 2022, is amended to read as follows:
38    § 396-eee. Unlawful sale or delivery of body [~~vests~~] __armor__. 1. No
39 person, firm or corporation shall sell or deliver body [~~vests~~] __armor__ to
40 any individual or entity not engaged or employed in an eligible profes-
41 sion, and except as provided in subdivision [~~three~~] __two__ of this section,
42 no such sale or delivery shall be permitted unless the transferee meets
43 in person with the transferor to accomplish such sale or delivery.
44    2. The provisions of subdivision one of this section regarding in
45 person sale or delivery shall not apply to purchases made by __federal,__
46 state__,__ or local government agencies for the purpose of furnishing such
47 body [~~vests~~] __armor__ to employees in eligible professions.
48    3. For the purposes of this section, "body [~~vest~~] __armor__" shall have
49 the same meaning as defined in subdivision two of section 270.20 of the
50 penal law.
51    4. Any person, firm or corporation that violate the provisions of this
52 section shall be guilty of a violation punishable by a fine in an amount
53 not to exceed five thousand dollars for the first offense and in an
54 amount not to exceed ten thousand dollars for any subsequent offense.
55    § 15. Section 144-a of the executive law, as added by chapter 210 of
56 the laws of 2022, is amended to read as follows:

1     § 144-a. Eligible professions for the purchase, sale, and use of body
2  [~~vests~~] armor. The secretary of state in consultation with the  division
3  of  criminal  justice  services,  the  division of homeland security and
4  emergency services, the department of corrections and  community  super-
5  vision,  the  division  of  the  state police, and the office of general
6  services shall promulgate rules and regulations  to  establish  criteria
7  for  eligible  professions requiring the use of [~~a~~] body [~~vest~~] armor, as
8  such term is defined in subdivision two of section 270.20 of  the  penal
9  law. Such professions shall include those in which the duties may expose
10 the individual to serious physical injury that may be prevented or miti-
11 gated  by  the  wearing  of  [~~a~~] body [~~vest~~] armor.  Such rules and regu-
12 lations shall also include a process by which an  individual  or  entity
13 may  request  that  the  profession in which they engage be added to the
14 list of eligible professions, a process by which  the  department  shall
15 approve  such  professions, and a process by which individuals and enti-
16 ties may present  proof  of  engagement  in  eligible  professions  when
17 purchasing [~~a~~] body [~~vest~~] armor.
18    § 16. The executive law is amended by adding a new section 228 to read
19 as follows:
20    § 228. National instant criminal background checks. 1.  (a) The divi-
21 sion is hereby authorized and directed to serve  as  a  state  point  of
22 contact  for implementation of 18 U.S.C. sec. 922 (t), all federal regu-
23 lations and applicable guidelines  adopted  pursuant  thereto,  and  the
24 national  instant  criminal  background check system for the purchase of
25 firearms and ammunition.
26    (b) Upon receiving a  request  from  a  licensed  dealer  pursuant  to
27 section  eight  hundred  ninety-six or eight hundred ninety-eight of the
28 general business law, the division shall initiate a background check  by
29 (i)  contacting  the  National  Instant Criminal Background Check System
30 (NICS) or its successor to initiate a national  instant  criminal  back-
31 ground  check,  and  (ii)  consulting the statewide firearms license and
32 records database established pursuant to subdivision  three  of  this
33 section,  in order to determine if the purchaser is a person described in
34 sections  400.00  and  400.03 of the penal law, or is prohibited by state
35 or federal law from possessing,  receiving,  owning,  or  purchasing  a
36 firearm or ammunition.
37    2.  (a) The division shall report the name, date of birth and physical
38 description of any person prohibited from possessing a firearm  pursuant
39 to  18  U.S.C. sec. 922(g) or (n) to the national instant criminal back-
40 ground check system index, denied persons files.
41    (b) Information provided pursuant to this section shall remain  privi-
42 leged  and  confidential,  and  shall  not  be disclosed, except for the
43 purpose of enforcing federal or state  law  regarding  the  purchase  of
44 firearms or ammunition.
45    (c)  Any  background  check  conducted  by  the division, or delegated
46 authority, of any applicant for a permit, firearms  identification  card
47 license,  ammunition  sale,  or  registration,  in  accordance  with the
48 requirements of section 400.00 of the penal law, shall not be considered
49 a public record and shall not be disclosed to any person not  authorized
50 by  law or this chapter to have access to such background check, includ-
51 ing the applicant. Any application for a permit, firearms identification
52 card, ammunition sale, or license, and any document reflecting the issu-
53 ance or denial of such permit, firearms identification card, or license,
54 and any permit, firearms identification card,  license,  certification,
55 certificate,  form  of  register,  or registration statement, maintained by
56 any  state  or  municipal  governmental  agency,  shall  not  be  considered  a

S. 1                                    16

1  public record and shall not be disclosed to any person not authorized by
2  law to have access to such documentation, including the applicant,
3  except on the request of persons acting in their governmental capacities
4  for purposes of the administration of justice.
5      3. The division shall create and maintain a statewide firearms license
6  and records database which shall contain records held by the division
7  and any records that it is authorized to request from the division of
8  criminal justice services, office of court administration, New York
9  state department of health, New York state office of mental health, and
10 other local entities. Such database shall be used for the certification
11 and recertification of firearm permits under section 400.02 of the penal
12 law, assault weapon registration under subdivision sixteen-a of section
13 400.00 of the penal law, and ammunition sales under section 400.03 of
14 the penal law. Such database shall also be used to initiate a national
15 instant criminal background check pursuant to subdivision one of this
16 section upon request from a licensed dealer. The division may create and
17 maintain additional databases as needed to complete background checks
18 pursuant to the requirements of this section.
19     4. The superintendent shall promulgate a plan to coordinate background
20 checks for firearm and ammunition purchases pursuant to this section and
21 to require any person, firm or corporation that sells, delivers or
22 otherwise transfers any firearm or ammunition to submit a request to the
23 division in order to complete the background checks in compliance with
24 federal and state law, including the National Instant Criminal Back-
25 ground Check System (NICS), in New York state. Such plan shall include,
26 but shall not be limited to, the following features:
27     (a) The creation of a centralized bureau within the division to
28 receive and process all background check requests, which shall include a
29 contact center unit and an appeals unit. Staff may include but is not
30 limited to: bureau chief, supervisors, managers, different levels of
31 administrative analysts, appeals specialists and administrative person-
32 nel. The division shall employ and train such personnel to administer
33 the provisions of this section.
34     (b) Procedures for carrying out the duties under this section, includ-
35 ing hours of operation.
36     (c) An automated phone system and web-based application system,
37 including a toll-free telephone number and/or web-based application
38 option for any licensed dealer requesting a background check in order to
39 sell, deliver or otherwise transfer a firearm which shall be operational
40 every day that the bureau is open for business for the purpose of
41 responding to requests in accordance with this section.
42     5. (a) Each licensed dealer that submits a request for a national
43 instant criminal background check pursuant to this section shall pay a
44 fee imposed by the bureau for performing such background check. Such fee
45 shall be allocated to the background check fund established pursuant to
46 section ninety-nine-pp of the state finance law. The amount of the fee
47 shall not exceed the total amount of direct and indirect costs incurred
48 by the bureau in performing such background check.
49     (b) The bureau shall transmit all moneys collected pursuant to this
50 paragraph to the state comptroller, who shall credit the same to the
51 background check fund.
52     6. On January fifteenth of each calendar year, the bureau shall submit
53 a report to the governor, the temporary president of the senate, and the
54 speaker of the assembly concerning:

 1      a.  the  number  of employees used by the bureau in the preceding year
 2  for  the  purpose  of  performing  background  checks  pursuant  to  this
 3  section;
 4      b.  the  number  of  background  check requests received and processed
 5  during  the  preceding calendar year, including the  number  of  "proceed"
 6  responses and the number and reasons for denials;
 7      c.  the  calculations  used to determine the amount of the fee imposed
 8  pursuant to this paragraph.
 9      7. Within sixty days of the effective date of this section, the super-
10  intendent  shall  notify each licensed dealer holding a  permit  to  sell
11  firearms  of  the  requirement  to submit a request to the division to
12  initiate  a background check pursuant to this  section  as  well  as  the
13  following means to be used to apply for background checks:
14      i.  any  person, firm or corporation that sells, delivers or otherwise
15  transfers firearms shall obtain a  completed  ATF  4473  form  from  the
16  potential  buyer  or  transferee  including name, date of birth, gender,
17  race, social security number, or other identification  numbers  of  such
18  potential  buyer or transferee and shall have inspected proper identifi-
19  cation including an identification containing a photograph of the poten-
20  tial buyer or transferee.
21      ii. it shall be unlawful for any person, in connection with the  sale,
22  acquisition  or  attempted acquisition of a firearm from any transferor,
23  to willfully make any false, fictitious oral or written statement or  to
24  furnish  or exhibit any false, fictitious, or misrepresented identifica-
25  tion that is intended or likely to deceive such transferor with  respect
26  to  any fact material to the lawfulness of the sale or other disposition
27  of such firearm under federal or state law. Any person who violates  the
28  provisions  of  this subparagraph shall be guilty of a class A misdemea-
29  nor.
30      8. Any potential buyer or transferee shall have thirty days to  appeal
31  the denial of a background check, using a form established by the super-
32  intendent.   Upon receipt of an appeal, the division shall provide such
33  applicant a reason for a denial within thirty days.  Upon receipt of the
34  reason for denial,  the  appellant may appeal to the attorney general.
35      § 17. Subdivision 2 of section 898 of the  general  business  law,  as
36  added by chapter 129 of the laws of 2019, is amended to read as follows:
37      2.  Before  any sale, exchange or disposal pursuant to this article, a
38  national instant criminal background check must be completed by a dealer
39  who [~~consents~~] shall submit a request to the division of  state  police
40  pursuant  to  section  two hundred twenty-eight of the executive law to
41  conduct such check[~~, and upon completion of such background check, shall~~
42  ~~complete a document, the form of which shall be approved by  the  super-~~
43  ~~intendent  of state police, that identifies and confirms that such check~~
44  ~~was performed~~]. Before a dealer who [~~consents~~] has submitted a  request
45  to  the  division of state police to conduct a national instant criminal
46  background check delivers a firearm, rifle or  shotgun  to  any  person,
47  either  (a) NICS shall have issued a "proceed" response [~~to the dealer~~],
48  or (b) thirty calendar days shall have elapsed since the date the dealer
49  [~~contacted~~] submitted a request to  the  division  of  state  police  to
50  contact the  NICS  to  initiate  a national instant criminal background
51  check and NICS has not notified the [~~dealer~~] division  of  state  police
52  that the transfer of the firearm, rifle or shotgun to such person should
53  be denied.
54      § 18.  Paragraph  (c)  of subdivision 1 of section 896 of the general
55  business law, as added by chapter 189 of the laws of 2000, is amended to
56  read as follows:

1     (c) coordinate with the division of state police to provide access  at
2  the  gun  show  to  [a  firearm dealer licensed under federal law who is
3  authorized to] perform a national instant criminal background check
4  [where  the  seller  or transferor of a firearm, rifle or shotgun is not
5  authorized  to  conduct such a check by (i) requiring firearm exhibitors
6  who are firearm dealers licensed under federal law and who  are  author-
7  ized  to conduct a national instant criminal background check to provide
8  such a check at cost or (ii) designating a specific location at the  gun
9  show where a firearm dealer licensed under federal law who is authorized
10  to  conduct a national instant criminal background check will be present
11  to perform such a check at cost] prior to any firearm sale or  transfer.
12  Any  firearm  dealer licensed under federal law who [performs] submits a
13  request to the division of state police to perform  a  national  instant
14  criminal  background  check pursuant to this paragraph shall provide the
15  seller or transferor of the firearm, rifle or shotgun with a copy of the
16  United States Department of Treasury, Bureau  of  Alcohol,  Tobacco  and
17  Firearms  Form  ATF  F 4473 and such dealer shall maintain such form and
18  make such form available for inspection by law enforcement agencies  for
19  a period of ten years thereafter.
20     § 19.  Subdivision  6 of section 400.03 of the penal law, as added by
21  chapter 1 of the laws of 2013, is amended to read as follows:
22     6. If the superintendent of state  police  certifies  that  background
23  checks  of  ammunition  purchasers may be conducted through the national
24  instant criminal background check system, [use  of  that  system  by]  a
25  dealer  or  seller  shall contact the division of state police to conduct
26  such check which  shall be sufficient to satisfy subdivisions four and
27  five  of  this  section [and such checks shall be conducted through such
28  system, provided that a record of such transaction shall be forwarded to
29  the state police in a form determined by the superintendent].
30     § 20. The penal law is amended by adding a new section 400.06 to  read
31  as follows:
32     § 400.06 National instant criminal background checks.
33     1.  Any dealer in firearms that sells, delivers or otherwise transfers
34  any firearm shall contact the division of state  police  to  conduct  a
35  national  instant  criminal  background  check  pursuant  to section two
36  hundred twenty-eight of the executive law.
37     2. Failure to comply with the requirements of this section is a  class
38  A misdemeanor.
39     § 21.  The state finance law is amended by adding a new section 99-pp
40  to read as follows:
41     § 99-pp. Background check fund. 1. There is hereby established in  the
42  joint  custody of the state comptroller and commissioner of taxation and
43  finance a special fund to be known as the "background check fund".
44     2. Such fund shall consist of  all  revenues  received  by  the  comp-
45  troller,  pursuant to the provisions of section two hundred twenty-eight
46  of the executive law and all other moneys appropriated thereto from  any
47  other  fund or source pursuant to law. Nothing contained in this section
48  shall prevent the state from receiving grants, gifts or bequests for the
49  purposes of the fund as defined in this section and depositing them into
50  the fund according to law.
51     3. The moneys of the background check fund, following appropriation by
52  the legislature, shall be allocated for the direct costs associated with
53  performing background checks pursuant to  section  two  hundred  twenty-
54  eight of the executive law.
55     4. The state comptroller may invest any moneys in the background check
56  fund  not  expended  for the purpose of this section as provided by law.

1  The state comptroller shall credit any interest and income derived  from
2  the deposit and investment of moneys in the background check fund to the
3  background check fund.
4      5.  (a)  Any unexpended and unencumbered moneys remaining in the back-
5  ground check fund at the end of a fiscal year shall remain in the  back-
6  ground check fund and shall not be credited to any other fund.
7      (b)  To the extent practicable, any such remaining funds shall be used
8  to reduce the amount of the fee described in subdivision two of  section
9  two hundred twenty-eight of the executive law.
10     § 22. Subdivision 19 of section 265.00 of the penal law, as amended by
11 chapter 150 of the laws of 2020, is amended to read as follows:
12     19. "Duly authorized instructor" means (a) a duly commissioned officer
13 of  the United States army, navy, marine corps or coast guard, or of the
14 national guard of the state of New York; or (b) a duly  qualified  adult
15 citizen  of  the  United States who has been granted a certificate as an
16 instructor in small arms practice issued by the United States army, navy
17 or marine corps, or by the adjutant general of this state,  or by  the
18 division  of  criminal justice services, or by the national rifle associ-
19 ation of America, a not-for-profit corporation duly organized under the
20 laws of this state; (c) by a person duly qualified and designated by the
21 department  of environmental conservation [under paragraph c of subdivi-
22 sion three of section 11-0713 of the environmental conservation law]  as
23 its  agent in the giving of instruction and the making of certifications
24 of qualification in responsible hunting practices; or  (d)  a  New  York
25 state 4-H certified shooting sports instructor.
26     § 23.  Subdivision 18 of section 400.00 of the penal law, as added by
27 chapter 135 of the laws of 2019, is amended and a new subdivision 19  is
28 added to read as follows:
29     18.  Notice.  Upon the  issuance  of a license, the licensing officer
30 shall issue therewith, and such licensee shall attest to the receipt of,
31 the following [notice] information and notifications:  (a)  the  grounds
32 for which the license issued may be revoked, which shall include but not
33 be  limited  to  the  areas  and locations for which the licenses issued
34 under paragraph (f) of subdivision two  of  this  section  prohibits  the
35 possession  of  firearms,  rifles,  and  shotguns, and that a conviction
36 under sections 265.01-d and 265.01-e of this chapter  are  felonies  for
37 which licensure will be revoked;
38     (b)  a notification regarding the requirements for safe storage which
39 shall be in conspicuous and legible twenty-four point type on eight  and
40 one-half inches by eleven inches paper stating in bold print the follow-
41 ing:
42     WARNING:  RESPONSIBLE  FIREARM  STORAGE  IS THE LAW IN NEW YORK STATE.
43 WHEN STORED IN A HOME FIREARMS, RIFLES, OR SHOTGUNS MUST EITHER  BE
44 STORED  WITH A GUN LOCKING DEVICE OR IN A SAFE STORAGE DEPOSITORY OR NOT
45 BE LEFT OUTSIDE THE IMMEDIATE POSSESSION AND CONTROL  OF  THE  OWNER  OR
46 OTHER  LAWFUL  POSSESSOR IF A CHILD UNDER THE AGE OF EIGHTEEN RESIDES IN
47 THE HOME OR IS PRESENT, OR IF THE OWNER  OR  POSSESSOR  RESIDES  WITH  A
48 PERSON  PROHIBITED FROM POSSESSING A FIREARM UNDER STATE OR FEDERAL LAW.
49 FIREARMS SHOULD BE STORED [UNLOADED AND LOCKED] BY REMOVING THE  AMMUNI-
50 TION  FROM AND SECURELY LOCKING SUCH FIREARM IN A LOCATION SEPARATE FROM
51 AMMUNITION. LEAVING FIREARMS ACCESSIBLE TO A CHILD OR  OTHER  PROHIBITED
52 PERSON  MAY SUBJECT YOU TO IMPRISONMENT, FINE, OR BOTH. WHEN STORED IN A
53 VEHICLE OUTSIDE THE OWNER'S IMMEDIATE POSSESSION OR CONTROL,  FIREARMS,
54 RIFLES,  AND  SHOTGUNS  MUST  BE  STORED  IN AN APPROPRIATE SAFE STORAGE
55 DEPOSITORY AND OUT OF SIGHT FROM OUTSIDE OF THE VEHICLE.

1    (c) any other information necessary to ensure such licensee is aware
2  of their responsibilities as a license holder.
3    Nothing in this subdivision shall be deemed to affect, impair or
4  supersede any special or local law relating to providing notice regard-
5  ing the safe storage of rifles, shotguns or firearms.
6    19. Prior to the issuance or renewal of a license under paragraph (f)
7  of subdivision two of this section, issued or renewed on or after the
8  effective date of this subdivision, an applicant shall complete an
9  in-person live firearms safety course conducted by a duly authorized
10  instructor with curriculum approved by the division of criminal justice
11  services and the superintendent of state police, and meeting the follow-
12  ing requirements: (a) a minimum of sixteen hours of in-person live
13  curriculum approved by the division of criminal justice services and the
14  superintendent of state police, conducted by a duly authorized instruc-
15  tor approved by the division of criminal justice services, and shall
16  include but not be limited to the following topics: (i) general firearm
17  safety; (ii) safe storage requirements and general secure storage best
18  practices; (iii) state and federal gun laws; (iv) situational awareness;
19  (v) conflict de-escalation; (vi) best practices when encountering law
20  enforcement; (vii) the statutorily defined sensitive places in subdivi-
21  sion two of section 265.01-e of this chapter and the restrictions on
22  possession on restricted places under section 265.01-d of this chapter;
23  (viii) conflict management; (ix) use of deadly force; (x) suicide
24  prevention; and (xi) the basic principles of marksmanship; and (b) a
25  minimum of two hours of a live-fire range training course. The applicant
26  shall be required to demonstrate proficiency by scoring a minimum of
27  eighty percent correct answers on a written test for the curriculum
28  under paragraph (a) of this subdivision and the proficiency level deter-
29  mined by the rules and regulations promulgated by the division of crimi-
30  nal justice services and the superintendent of state police for the
31  live-fire range training under paragraph (b) of this subdivision. Upon
32  demonstration of such proficiency, a certificate of completion shall be
33  issued to such applicant in the applicant's name and endorsed and
34  affirmed under the penalties of perjury by such duly authorized instruc-
35  tor. An applicant required to complete the training required herein
36  prior to renewal of a license issued prior to the effective date of this
37  subdivision shall only be required to complete such training for the
38  first renewal of such license after such effective date.
39    § 24. Subdivisions 11 and 12 of section 265.00 of the penal law are
40  amended to read as follows:
41    11. "Rifle" means a weapon designed or redesigned, made or remade, and
42  intended to be fired from the shoulder and designed or redesigned and
43  made or remade to use the energy of the explosive [in a fixed metallic
44  cartridge] to fire only a single projectile through a rifled bore for
45  each single pull of the trigger using either: (a) fixed metallic
46  cartridge; or (b) each projectile and explosive charge are loaded indi-
47  vidually for each shot discharged. In addition to common, modern usage,
48  rifles include those using obsolete ammunition not commonly available in
49  commercial trade, or that load through the muzzle and fire a single
50  projectile with each discharge, or loading, including muzzle loading
51  rifles, flintlock rifles, and black powder rifles.
52    12. "Shotgun" means a weapon designed or redesigned, made or remade,
53  and intended to be fired from the shoulder and designed or redesigned
54  and made or remade to use the energy of the explosive [in a fixed shot-
55  gun shell] to fire through a smooth or rifled bore either a number of
56  ball shot or a single projectile for each single pull of the trigger

S. 1                                 21

1  using either: (a) a fixed shotgun shell; or (b) a projectile or number
2  of ball shot and explosive charge are loaded individually for each shot
3  discharged.  In addition to common, modern usage, shotguns include those
4  using obsolete ammunition not commonly available in commercial trade, or
5  that load through the muzzle and fires ball shot with each discharge, or
6  loading, including muzzle loading shotguns, flintlock shotguns, and
7  black powder shotguns.
8      § 25. Severability. If any clause, sentence, paragraph or section of
9  this act shall be adjudged by any court of competent jurisdiction to be
10 invalid, the judgment shall not affect, impair or invalidate the remain-
11 der thereof, but shall be confined in its operation to the clause,
12 sentence, paragraph or section thereof directly involved in the contro-
13 versy in which the judgment shall have been rendered.
14     § 26. This act shall take effect on the first of September next
15 succeeding the date on which it shall have become a law; provided,
16 however:
17     (a) the amendments to subdivision 1 and subdivision 4-b of section
18 400.00 of the penal law made by section one of this act shall apply only
19 to licenses for which an application is made on or after the effective
20 date of this act;
21     (b) if chapter 208 of the laws of 2022 shall not have taken effect on
22 or before such date then the amendments made to paragraph (j) of subdi-
23 vision one of section 400.00 of the penal law made by section one of
24 this act shall take effect on the same date and in the same manner as
25 such chapter of the laws of 2022, takes effect;
26     (c) the amendments to sections 270.20, 270.21 and 270.22 of the penal
27 law made by sections eleven, twelve and thirteen of this act, the amend-
28 ments to section 396-eee of the general business law as amended by
29 section fourteen of this act, and the amendments to section 144-a of the
30 executive law as amended by section fifteen of this act, shall take
31 effect on the same date and in the same manner as chapter 210 of the
32 laws of 2022, takes effect;
33     (d) if chapter 207 of the laws of 2022 shall not have taken effect on
34 or before such date then the amendments to subdivision 11 of section
35 400.00 of the penal law made by section one of this act shall take
36 effect on the same date and in the same manner as such chapter of the
37 laws of 2022, takes effect;
38     (e) if chapter 212 of the laws of 2022 shall not have taken effect on
39 or before such date then the amendments to subdivision 2 of section
40 400.00 of the penal law made by section one of this act shall take
41 effect on the same date and in the same manner as such chapter of the
42 laws of 2022, takes effect;
43     (f) sections sixteen, seventeen, eighteen, nineteen, twenty, twenty-
44 one and twenty-two shall take effect July 15, 2023; and
45     (g) subdivision 4-a of section 400.00 of the penal law, as amended by
46 section one of this act, shall take effect April 1, 2023.